**EXHIBIT F**

**<u>SALE ORDER</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| U.S. ENERGY SYSTEMS, INC., *et al.*, | ) Case No. 08-10054 (RDD) |
| | ) |
| Debtors.[1] | ) (Jointly Administered) |

## ORDER (A) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE USEB DEBTORS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (B) AUTHORIZING AND APPROVING THE ASSET PURCHASE AGREEMENT; (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (D) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion"),[2] dated January 21, 2009 of U.S.

Energy Biogas Corp. ("USEB"), Biogas Financial Corp., Power Generation (Suffolk), Inc.,

Resources Generating Systems, Inc., Suffolk Biogas, Inc., USEB Assignee, LLC, ZFC Energy,

Inc., ZMG Inc., and Oceanside Energy, Inc. (collectively, the "USEB Debtors"), each a debtor

and debtor-in-possession in the above-captioned cases, for entry of an order (the "Sale Order")

(A) approving the sale (the "Sale") of substantially all of the assets (the "Biogas Assets") of the

USEB Debtors free and clear of all liens, claims, encumbrances and interests (collectively, the

"Encumbrances"), except to the extent set forth in the Asset Purchase Agreement (such excepted

interests referred to herein as the "Permitted Encumbrances"), pursuant to Sections 105, 363 and

365 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy

Code"), and Rules 2002, 6004, 6006, 9014 and 9019 of the Federal Rules of Bankruptcy

---

[1]  The other Debtors are the following:  U.S. Energy Overseas Investments, LLC, GBGH, LLC, U.S. Energy Biogas Corp., Biogas Financial Corp., Power Generation (Suffolk), Inc., Resources Generating Systems, Inc., Suffolk Biogas, Inc., USEB Assignee, LLC, ZFC Energy, Inc., ZMG Inc., and Oceanside Energy, Inc.

[2]  Capitalized terms used but not defined in this Order shall have the meanings given to such terms in the Motion or the Asset Purchase Agreement.

Procedures (the "Bankruptcy Rules"); (B) authorizing and approving the Asset Purchase

Agreement; (C) authorizing the assumption and assignment of certain executory contracts and

unexpired leases (the "Assumed and Assigned Agreements") identified by the USEB Debtors

and more fully described in sections 1.1 and 1.2 and of the Asset Purchase Agreement; and (D)

granting related relief; and the USEB Debtors having determined that the highest and otherwise

best offer for the sale of Biogas Assets submitted at the Auction was made by Silver Point

Finance, LLC ("Silver Point" or the "Purchaser") in the form of the Asset Purchase Agreement,

dated as of January 23, 2009 by and between the USEB Debtors and Silver Point (as may be

amended from time to time, the "Asset Purchase Agreement"); and the Court having held a

hearing on [●], 2009 (the "Sale Hearing") to approve the Sale of the Biogas Assets pursuant to

the terms and conditions of the Asset Purchase Agreement, and the Court having considered (i)

the Motion, (ii) the proposed Sale by the USEB Debtors to the Purchaser pursuant to the Asset

Purchase Agreement, a copy of which is attached hereto as Exhibit A, and the exhibits and

schedules thereto (collectively with the Asset Purchase Agreement, the "Sale Documents"); (iii)

the arguments of counsel made, and the evidence submitted, proffered or adduced, at the Sale

Hearing, and (iv) the record in these chapter 11 cases, of which the Court took judicial notice at

the Sale Hearing; and the Court having determined that the relief requested in the Motion, the

Sale to the Purchaser in accordance with the Sale Documents, and the provisions of this Sale

Order is in the best interests of the USEB Debtors, their estates, their creditors, and other parties

in interest; and it appearing that reasonable and adequate notice of the Motion, the Sale, the

Asset Purchase Agreement and the Sale Hearing having been provided to all persons required to

be served in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules

and orders of this Court; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**FOUND, CONCLUDED AND DECLARED THAT:**[3]

A.    This Court has jurisdiction over this matter and over the property of the USEB Debtors, including the Biogas Assets to be sold, transferred and conveyed pursuant to the Sale Documents, and their respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue of these chapter 11 cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    On January [●], 2009 (the "<u>Petition Date</u>"), each of the USEB Debtors filed their respective voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code.  Since the Petition Date, the USEB Debtors have continued in possession and management of their businesses and properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  On January 9, 2008, U.S. Energy Systems, Inc., U.S. Energy Overseas Investments, LLC and  GBGH, LLC (collectively, the "USEY Debtors," and together with the USEB Debtors, the "Debtors") filed with the United States Bankruptcy Court for the Southern District of New York (the "Court") their respective voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

C.    On January [●], 2009, this Court entered the Order (A) Authorizing and Scheduling an Auction for the Sale of Substantially All of the Assets of the U.S. Energy Biogas

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. <u>See</u> Fed. R. Bankr. P. 7052.

3

Corp. Debtors and Debtors-in-Possession; (B) Approving Bidding and Auction Procedures; (C) Approving Bid Protection to the Stalking Horse Bidder; (D) Setting a Date and Time for a Hearing to Approve the Sale Resulting from Auction; (E) Establishing Procedures for Noticing and Determining Cure Amounts and (F) Approving the Acquisition and Dissolution of Certain of the Non-Debtor Subsidiaries (the "Bidding Procedures Order") (Docket No. [•]), authorizing, among other things, the USEB Debtors to proceed with the bidding and auction procedures upon the terms and conditions set forth therein (the "Bidding Procedures").

D.    Proper, timely, adequate and sufficient notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the Sale, as well as the USEB Debtors' intent to assume and assign the Assumed and Assigned Agreements, has been provided in accordance with 11 U.S.C. §§ 102(l), 105, 363 and 365 and Bankruptcy Rules 2002, 6004, 6006 and 9014 and in compliance with the Bidding Procedures Order; such notice was good and sufficient, and appropriate under the particular circumstances; and no other or further notice of the Motion, the Auction, the Sale Hearing, the Sale or the Assumed and Assigned Agreements is or shall be required.

E.    A fair and reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein, as well as the Sale, has been afforded to all interested persons and entities, including: (i) the Office of the United States Trustee for the Southern District of New York, (ii) counsel for the administrative agent for the USEB Debtors' prepetition secured lenders, (iii) the USEB Debtors' known secured creditors, (iv) all entities (or counsel therefor) known to have asserted any rights (including Encumbrances) in or upon the Biogas Assets, (v) all federal, state and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion, (vi) all parties known to

have expressed a bona fide interest in acquiring the Biogas Assets, (vii) the Internal Revenue Service, (viii) all of the USEB Debtors' known unsecured creditors, and (ix) all entities who have filed a notice of appearance and request for service of papers in the Debtors' cases.

F.    As evidenced by the affidavit of publication filed with the Court, notice of the Sale Hearing was published in the national edition of <u>The Wall Street Journal</u> on [•], 2009.

G.    The USEB Debtors have the legal power and authority to convey all of their rights, title and interest in and to the Biogas Assets.

H.    The Debtors and their professionals have actively marketed the Biogas Assets and conducted the sale process in compliance with the Bidding Procedures Order, and have afforded interested potential purchasers a full and fair opportunity to make higher and better offers.

I.    The Purchaser is the Successful Bidder (as defined in the Bidding Procedures), submitted the highest and/or best offer for the Biogas Assets, and its offer is fair and reasonable.

J.    Each USEB Debtor has (a) full power and authority to execute the Sale Documents, including the Asset Purchase Agreement, and the sale of the Biogas Assets by the USEB Debtors has been duly and validly authorized by all necessary company action of each of the USEB Debtors, and (b) the necessary power and authority to take all company action necessary to authorize and consummate the transactions contemplated by the Sale Documents. No consents or approvals, other than those expressly provided for in the Asset Purchase Agreement or in the schedules and exhibits attached thereto, are required for the USEB Debtors to close the Sale.

K.     Entry into the Asset Purchase Agreement and consummation of the transactions contemplated by the Sale Documents constitute the USEB Debtors' exercise of sound business judgment and such acts are in the best interests of the USEB Debtors, their estates, and all parties in interest.  The USEB Debtors have demonstrated a sound business purpose and justification for the Sale.

L.     The Asset Purchase Agreement and the transactions contemplated in the Sale Documents were negotiated and have been and are undertaken by the USEB Debtors and Purchaser at arms' length without collusion or fraud, and in good faith within the meaning of Section 363(m) of the Bankruptcy Code.  As a result of the foregoing, the USEB Debtors and Purchaser are entitled to the protections of Section 363(m) of the Bankruptcy Code.  Moreover, neither the USEB Debtors nor Purchaser or other bidders or potential bidders engaged in any conduct that would cause or permit the Asset Purchase Agreement, the consummation of the transactions contemplated in the Sale Documents or the assumption and assignment of the Assumed and Assigned Agreements to be avoided, or costs or damages to be imposed, under Section 363(n) of the Bankruptcy Code.

M.     A portion of the Purchase Price (as defined in the Asset Purchase Agreement) paid by the Purchaser for the Biogas Assets was a credit bid of its secured claims with respect to the USEB Indebtedness (as defined in the Asset Purchase Agreement) and the NPI Indebtedness (as defined in the Asset Purchase Agreement), and because Purchaser expects to be able to pay all allowed claims in full, also the entire amount of the USEO Indebtedness (as defined in the Asset Purchase Agreement, and collectively all such credit bid portions of the Purchase Price shall be referred to as the "Credit Bid"), which Credit Bid was valid and proper pursuant to the Bidding Procedures and Bankruptcy Code Sections 363(b) and 363(k).

N.     The Purchase Price provided by Purchaser for the Biogas Assets is the highest or otherwise best offer received by the USEB Debtors, and the Purchase Price constitutes reasonably equivalent value for the Biogas Assets under Bankruptcy Code and other applicable law.  The Asset Purchase Agreement and the Sale Documents were not entered into the purposes of hindering, delaying or defrauding creditors of the USEB Debtors under the Bankruptcy Code and other applicable law.  Neither the USEB Debtors nor the Purchaser entered into the Sale contemplated by the Sale Documents for the purposes of such statutory and common law fraudulent conveyance and fraudulent transfer claims.

O.     A sale of the Biogas Assets other than one free and clear of Encumbrances (other than Permitted Encumbrances) would impact materially and adversely on the USEB Debtors' bankruptcy estates, will yield substantially less value for the USEB Debtors' estates, with less certainty than the available alternatives and thus the alternative would be of substantially less benefit to the estates of the USEB Debtors.  In reaching this determination, the Court has taken into account both the consideration to be realized directly by the USEB Debtors and the indirect benefits of such Sale for the USEB Debtors' estates.

P.     Purchaser would not have entered into the Asset Purchase Agreement, thus adversely affecting the USEB Debtors, their estates, and their creditors, if the Sale of the Biogas Assets, and the assignment of the Assumed and Assigned Agreements, to Purchaser was not free and clear of all Encumbrances (other than Permitted Encumbrances) or if Purchaser would, or in the future could, be liable for any such Encumbrance.  A sale of the Biogas Assets other than one free and clear of Encumbrances (other than Permitted Encumbrances) would adversely impact the USEB Debtors' estates, and would yield substantially less value for the USEB Debtors' estates, with less certainty than the Sale.  Therefore, the Sale free and clear of

Encumbrances (other than Permitted Encumbrances), as contemplated by the Asset Purchase Agreement, is in the best interests of the USEB Debtors, their estates and creditors, and all other parties in interest.

Q.	The USEB Debtors may sell the Biogas Assets free and clear of all Encumbrances (other than Permitted Encumbrances), because, with respect to each creditor asserting an Encumbrance, one or more of the standards set forth in Bankruptcy Code § 363(f)(1)-(5) has been satisfied. Those holders of Encumbrances who did not object or withdrew objections to the Sale or the Motion are deemed to have consented to the Motion and Sale pursuant to Section 363(f)(2) of the Bankruptcy Code. Those holders of Encumbrances who did object fall within one or more of the other subsections of Section 363(f) Bankruptcy Code.

R.	As part of the USEB Debtors' transfer of the Biogas Assets to Purchaser, Biogas Financial Corp., one of the USEB Debtors and formerly known as Zahren Financial Corporation, will sell and transfer its 10% general partner interest in Biomass Energy Partners I, L.P. to Purchaser free and clear of the Assignment, dated September 1, 1994, by and between Zahren Financial Corporation and ZFC Royalty Trust (the "Zahren Assignment") or any rights created thereunder.

S.	The USEB Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign and sell the Assumed and Assigned Agreements to Purchaser or its designee in connection with the consummation of the Sale, and the assumption, assignment, and sale of the Assumed and Assigned Agreements is in the best interests of the USEB Debtors, their estates, their creditors, and all parties in interest. The Assumed and Assigned Agreements being assigned and sold to Purchaser or its designee are an integral part of the Biogas Assets being purchased by Purchaser, and accordingly, such assumption, assignment,

and sale of the Assumed and Assigned Agreements are reasonable and enhance the value of the USEB Debtors' estates.

T.  The USEB Debtors have provided adequate assurance of cure of any default existing prior to the Closing under any of the Assumed and Assigned Agreements, within the meaning of Section 365(b)(1)(A) of the Bankruptcy Code. The USEB Debtors have provided adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed and Assigned Agreements within the meaning of Section 365(b)(1)(B) of the Bankruptcy Code. The USEB Debtors have satisfied each of the foregoing by the Proposed Purchaser agreeing to pay such amounts on the terms and conditions contained in the Asset Purchase Agreement. Purchaser has provided adequate assurance of its future performance of and under any of the Assumed and Assigned Agreements, within the meaning of Section 365(b)(1)(C) of the Bankruptcy Code.

U.  Immediately prior to the Closing, Purchaser was not an "insider" or "affiliate" of any of the USEB Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders existed between Purchaser and any of the USEB Debtors. Pursuant to the Asset Purchase Agreement, Purchaser is not purchasing all of the USEB Debtors' assets in that Purchaser is not purchasing any of the Excluded Assets, and Purchaser is not holding itself out to the public as a continuation of the USEB Debtors. Those of the Debtors' employees who are to be employed by Buyer pursuant to the Asset Purchase Agreement are being hired under new employment contracts or other arrangements to be entered into or to become effective at the time of the Closing. The Sale and related transactions are not and do not amount to a consolidation, merger or *de facto* merger of Purchaser and the USEB Debtors and/or the USEB Debtors' estates, there is not substantial

continuity between Purchaser and the USEB Debtors, there is no continuity of enterprise between the USEB Debtors and Purchaser, Purchaser is not a mere continuation of the USEB Debtors or the USEB Debtors' estates, and Purchaser does not constitute a successor to the USEB Debtors or the USEB Debtors' estates.

V. The transfer of the Biogas Assets to Purchaser will be a legal, valid, and effective transfer of the Purchased Assets, and will vest Purchaser with all right, title, and interest of the USEB Debtors to the Biogas Assets free and clear of all Encumbrances (except Permitted Encumbrances), including but not limited to all claims arising under doctrines of successor liability.

W. The releases and discharges substantially in the form of Exhibits B-1 and B-2 to the Asset Purchase Agreement constitute good faith compromises and settlements of the matters covered thereby. Such compromises and settlements are made in exchange for consideration and are in the best interest of the Releasing Parties and the Released Parties, are within the range of possible litigation outcomes, are fair, equitable, and reasonable and are integral elements of the Sale. Each of the discharge, release, indemnification and exculpation provisions set forth in Exhibits B-1 and B-2 to the Asset Purchase Agreement: (i) falls within the jurisdiction of this Court under 28 U.S.C. §§ 1334(a), (b) and (d); (ii) is an essential means of implementing the Sale; (iii) is an integral element of the transactions incorporated into the Sale Documents; (iv) confers material benefit on, and is in the best interest of, the USEB Debtors, their estates and creditors; and (v) is consistent with all applicable provisions of the Bankruptcy Code.

X. The Sale does not constitute a *sub rosa* Chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.

Y.     The Purchaser is assuming those liabilities of the USEB Debtors or their subsidiaries and affiliates expressly set forth in the Sale Documents (the "Assumed Liabilities").

Z.     The Sale must be approved and consummated promptly in order to preserve the value of the Biogas Assets. Therefore, time is of the essence in consummating the Asset Purchase Agreement and the Sale transaction, and the USEB Debtors and the Purchaser intend to close the Sale transaction as soon as possible.

AA.    All findings of fact and conclusions of law made or announced by the Court at the Sale Hearing are incorporated herein; and it is therefore

**ORDERED, ADJUDGED AND DECREED THAT:**

1.     The relief requested in the Motion is GRANTED as set forth below.

2.     All objections and responses concerning the Motion are resolved in accordance with the terms of this Sale Order and as set forth in the record of the Sale Hearing and to the extent any such objection or response was not otherwise withdrawn, waived, or settled, it is overruled on the merits and denied (including all reservations of rights or relief requested therein) with prejudice.

**Approval of Sale**

3.     Pursuant to 11 U.S.C. § 363(b), the Asset Purchase Agreement (including without limitation the Credit Bid), the Sale of the Biogas Assets to the Purchaser free and clear of all Encumbrances (other than Permitted Encumbrances), the Sale Documents and the transactions contemplated thereby are approved in all respects.

4.     The consideration provided by Purchaser for the Biogas Assets under the Asset Purchase Agreement, including the portion of the consideration that consisted of the Credit Bid, is fair and reasonable and shall be deemed for all purposes to constitute reasonably

equivalent value and fair consideration under the Bankruptcy Code and any other applicable law, and the Sale may not be avoided, or costs or damages imposed or awarded, under Section 363(n) or any other provision, of the Bankruptcy Code.

5.　　The Sale transactions are undertaken by Purchaser in good faith, Purchaser is a buyer in good faith of the Biogas Assets as that term is used in Section 363(m) of the Bankruptcy Code, and Purchaser is entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code; accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption, assignment, and sale of any of the Assumed and Assigned Agreements), unless such authorization is duly stayed pending such appeal.

6.　　Pursuant to 11 U.S.C. § 363(b), the USEB Debtors are hereby authorized to and directed to sell the Biogas Assets to the Purchaser and consummate the Sale in accordance with and subject to the terms and conditions of the Sale Documents, and to transfer and assign all right, title and interest (including common law rights) to all property, licenses and rights to be conveyed in accordance with and subject to the terms and conditions of the Sale Documents, and are further authorized and directed to execute and deliver, and are empowered to perform under, consummate and implement, the Sale Documents, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Sale Documents, including without limitation the related documents, exhibits and schedules, and to take all further actions as may be reasonably requested by Purchaser for the purposes of assigning, transferring, granting, conveying and conferring to Purchaser or reducing to possession, the Biogas Assets, or as may be necessary or appropriate to the performance of the USEB Debtors' obligations as contemplated by the Sale Documents.

7.        Except for the Assumed Liabilities, and as expressly provided in the Asset Purchase Agreement, Purchaser is not assuming nor shall it or any affiliate of Purchaser be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the USEB Debtors in any way whatsoever relating to or arising from the USEB Debtors' ownership or use of the Biogas Assets prior to the consummation of the transactions contemplated by the Asset Purchase Agreement or the Sale Documents, or any liabilities calculable by reference to the USEB Debtors or their operations or the Biogas Assets, or relating to continuing or other conditions existing on or prior to the Closing Date, which liabilities, debts, and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against Purchaser or any affiliate of the Purchaser.

8.        From and after the Closing, Purchaser shall assume and agrees to pay, perform and otherwise discharge, the Assumed Liabilities pursuant to Section 1.4 of the Asset Purchase Agreement, with such assumption of liabilities constituting a portion of the Purchase Price paid by Purchaser for the Biogas Assets, and the USEB Debtors shall be relieved of all such Assumed Liabilities.

**Transfer of Assets**

9.        Pursuant to 11 U.S.C. §§ 363(b) and 363(f), upon the Closing Date, under the Asset Purchase Agreement, the Biogas Assets shall be transferred to the Purchaser free and clear of all Encumbrances (other than Permitted Encumbrances), whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise, including

claims otherwise arising under doctrines of successor liability (collectively, the "Interests or Claims"), with all such Interests or Claims in the Encumbrances or the Biogas Assets to attach to the cash proceeds of the Sale in the order of their priority, with the same validity, force and effect which they now have as against the Biogas Assets, subject to any claims and defenses the USEB Debtors may possess with respect thereto. Following the Closing Date, no holder of any Interests or Claims in the Encumbrances or Biogas Assets (other than Permitted Encumbrances) shall interfere with Purchaser's use and enjoyment of the Biogas Assets based on or related to such Interests or Claims, or any actions that the USEB Debtors may take in their chapter 11 cases and no person shall take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the Sale Documents or this Order.

10.     The sale and transfer of Zahren Financial Corporation's 10% general partner interest in Biomass Energy Partners I, L.P. to Purchaser, as part of the Sale, is approved and such transfer shall be to Purchaser free and clear of the Zahren Assignment and the rights created thereunder.

11.     Except for the Assumed Liabilities, and as expressly provided in the Sale Documents, Purchaser is not assuming nor shall it or any affiliate of Purchaser be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the USEB Debtors in any way whatsoever relating to or arising from the USEB Debtors' ownership or use of the Biogas Assets prior to the consummation of the transactions contemplated by the Sale Documents, or any liabilities calculable by reference to the USEB Debtors or their operations or the Biogas Assets, or relating to continuing or other conditions existing on or prior to consummation of the transactions contemplated by the Sale Documents, which liabilities,

debts, and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against Purchaser or any affiliate of the Purchaser.

12.     All persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade and other creditors, holding Interests or Claims in the Encumbrances or Biogas Assets (other than Permitted Encumbrances) arising in any way in connection with any acts, or failure to act, of the USEB Debtors or the USEB Debtors' predecessors or affiliates, claims (as that term is defined in section 101(5) of the Bankruptcy Code), obligations, demands, or guaranties of any kind and nature against or in the USEB Debtors or the Biogas Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the USEB Debtors, the Biogas Assets, the operation of the USEB Debtors' business prior to the Closing Date, or the transfer of the Biogas Assets to the Purchaser and the subsequent assumption and assignment of the Assumed and Assigned Agreements, hereby are, and will be, except as provided for in the Asset Purchase Agreement, (upon consummation of an assumption and assignment of an Assumed and Assigned Agreement) forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successors or assigns, their property, or any designee, such persons' or entities' Interests or Claims in the Encumbrances or Biogas Assets.

13.     Purchaser shall not be deemed a successor of or to the USEB Debtors or the USEB Debtors' estates with respect to the Interests or Claims in the Encumbrances against the USEB Debtors or the Biogas Assets, and Purchaser shall not be liable in any way for any such Interests or Claims in the Encumbrances, including, without limitation, the Excluded Liabilities or Excluded Assets.  Upon Closing the Sale, all creditors, employees and other parties

in interest of the USEB Debtors are permanently and forever barred, restrained and enjoined from (a) asserting any claims or enforcing remedies, or commencing or continuing in any manner any action or other proceeding of any kind, or commencing or continuing in any manner any action or other proceeding of any kind, against Purchaser or the Biogas Assets on account of any of the Interests or Claims in the Encumbrances, Excluded Liabilities or Excluded Assets, or (b) asserting any claims or enforcing remedies under any theory of successor liability, *de facto* merger, substantial continuity or similar theory.

14.     Subject to the terms and conditions of this Sale Order, the transfer of the Biogas Assets to Purchaser pursuant to the Sale Documents does not require any consents other than as specifically provided for in the Sale Documents and constitutes a legal, valid, and effective transfer of the Biogas Assets, and shall vest Purchaser with all right, title, and interest of the USEB Debtors in and to the Biogas Assets free and clear of all Interests or Claims in the Biogas Assets or any Encumbrances of any kind or nature whatsoever (other than Permitted Encumbrances).

15.     This Order clarifies and confirms that the Debtors will not transfer to the Purchaser any Excluded Assets as more fully set forth in the Asset Purchase Agreement.

**Assumption and Assignment of the Assumed and Assigned Agreements**

16.     The USEB Debtors are hereby authorized, effective only as of the Closing and in accordance with Sections 105(a), 363, 365(b)(1) and (f)(2) of the Bankruptcy Code, to: (A) assume the Assumed and Assigned Agreements; (B) sell, assign and transfer to Purchaser each of the Assumed and Assigned Agreements in each case free and clear of all Encumbrances (other than Permitted Encumbrances); and (C) execute and deliver to Purchaser, such assignment

documents as may be necessary to sell, assign and transfer the Assumed and Assigned Agreements.

17.     The Assumed and Assigned Agreements, upon assignment and sale to Purchaser, shall be deemed valid and binding, in full force and effect in accordance with their terms.  Upon the Closing, in accordance with Sections 363 and 365 of the Bankruptcy Code, Purchaser shall be fully and irrevocably vested in all right, title and interest of the USEB Debtors in, to or under each Assumed and Assigned Agreement.

18.     All defaults or other obligations of the USEB Debtors under the Assumed and Assigned Agreements arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in Section 365(b)(2) of the Bankruptcy Code) shall be deemed cured by the payment or other satisfaction of the Cure Costs in the amounts set forth on <u>Exhibit B</u> to this Order (the "<u>Cure Amounts</u>").  The Cure Amounts are hereby fixed at the amounts set forth on <u>Exhibit B</u> and the non-USEB Debtor parties to the Assumed and Assigned Agreements are hereby forever bound by such Cure Amounts.  Except for the Cure Amounts, there are no other defaults existing under the Assumed and Assigned Agreements. The Cure Amounts are not subject to further dispute or audit, including based on performance prior to the assumption, assignment and sale thereof, irrespective of whether such Assumed and Assigned Agreement contains an audit or similar clause.

19.     Purchaser shall pay or otherwise satisfy the Cure Amounts as soon as reasonably practicable following the Closing Date.

20.     Except for Purchaser's obligation to pay or otherwise satisfy the Cure Amounts or as provided for in the Asset Purchase Agreement, each non-USEB Debtor party to a

Assumed and Assigned Agreement is hereby forever barred, estopped, and permanently enjoined from asserting against Purchaser or the Biogas Assets any default, additional amounts or other claims existing as of the Closing Date related to any Assumed and Assigned Agreements, whether declared or undeclared or known or unknown, and such non-USEB Debtor parties to the Assumed and Assigned Agreements are also forever barred, estopped, and permanently enjoined from asserting against Purchaser any counterclaim, defense or setoff, or any other claim, lien or interest, asserted or assertable against the USEB Debtors related to any Assumed and Assigned Agreement.

21. There shall be no rent accelerations, assignment fees, increases or any other fees charged or chargeable to Purchaser as a result of the assumption, assignment and sale of the Assumed and Assigned Agreements. Any provisions in any Assumed and Assigned Agreement that prohibit or condition the assignment of such Assumed and Assigned Agreement, allow the party to such Assumed and Assigned Agreement to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assumed and Assigned Agreement, constitute unenforceable anti-assignment provisions, and are void and of no force and effect. The validity of the assumption, assignment and sale of the Assumed and Assigned Agreements to Purchaser shall not be affected by any existing dispute between any of the USEB Debtors and any non-USEB Debtor party to such Assumed and Assigned Agreement. Any party that may have had the right to consent to the assignment of its Assumed and Assigned Agreement is determined to have consented for the purposes of Section 365(e)(2)(A)(ii) of the Bankruptcy Code.

22.     The designation of an agreement as a Assumed and Assigned Agreement to be assumed and assigned shall not be a determination that such agreement is an executory contract within the meaning of Section 365 of the Bankruptcy Code.

**Additional Provisions**

23.     On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of all of the Biogas Assets or a bill of sale transferring good and marketable title in such Biogas Assets to Purchaser, on the Closing Date pursuant to the terms of the Sale Documents.

24.     Except as otherwise provided herein or in the Sale Documents, on the Closing Date, each of the USEB Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release their respective Interests or Claims in the Encumbrances or the Biogas Assets (other than Permitted Encumbrances), if any, as may have been recorded or may otherwise exist.

25.     Each and every federal, state and governmental agency or department, and any other person or entity is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

26.     If any person or entity that has filed financing statement, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Interests or Claims against or in the Encumbrances or Biogas Assets (other than Permitted Encumbrances) shall not have delivered to the USEB Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfactions, releases of all such Interests or Claims that the person or entity has with respect to the Biogas Assets, or otherwise, then (a) the USEB Debtors are hereby authorized and directed to execute and file such

statements, instruments, releases and other documents on behalf of the person or entity with respect to the USEB Assets and (b) the Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests or Claims in the Encumbrances or Biogas Assets of any kind or nature.

27. All entities who are presently, or on the Closing may be, in possession of some or all of the Biogas Assets to be sold, transferred or conveyed pursuant to the Sale Documents are hereby directed to surrender possession of the Biogas Assets to the Purchaser on the Closing Date.

28. The consideration paid by Purchaser in the Sale for the Biogas Assets under the Sale Documents is fair and reasonable, and may not be avoided or otherwise challenged under 11 U.S.C. § 363(n).

29. Other than the Assumed Liabilities, the sale, transfer, assignment and delivery of the Biogas Assets pursuant to the Sale Documents shall not be subject to any Interests or Claims in the Encumbrances or the Biogas Assets (other than Permitted Encumbrances), and such Interests or Claims of any kind or nature whatsoever shall attach only to the net proceeds of the Sale in their order of priority. All persons holding Interests or Claims against the Encumbrances or Biogas Assets of any kind or nature whatsoever (other than persons holding Assumed Liabilities) shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Interests or Claims of any kind or nature whatsoever against Purchaser, its property, its successors and assigns, its affiliates or the Biogas Assets, with respect to any Interests or Claims of any kind or nature whatsoever such person or entity had, has, or may have against or in the USEB Debtors, their estates, or the

Biogas Assets. Following the Closing Date, no holder of an Interest or Claim (other than holders of Assumed Liabilities) against the USEB Debtors shall interfere with Purchaser's title to or use and enjoyment of the Biogas Assets based on or related to such Interests or Claims in the Encumbrances or Biogas Assets and all such Interests and Claims, if any, shall be and hereby are channeled, transferred and attached solely and exclusively to the proceeds of the Sale in their order of priority.

30. Except as otherwise expressly provided in the Sale Documents, no person or entity, including, without limitation, any federal, state or local governmental agency, department or instrumentality, shall assert by suit or otherwise against the Purchaser or its successors in interest any claim that they had, have or may have against the USEB Debtors, or any liability, debt or obligation relating to or arising from the Biogas Assets, or the USEB Debtors' operation of its business or use of the Biogas Assets, including, without limitation, any liabilities calculable by reference to the USEB Debtors or their assets or operations, and all persons and entities are hereby enjoined from asserting against the Purchaser in any way any such claims, liabilities, debts or obligations.

31. The Releases given by the Releasing Parties to the Released Parties, and the Releases given by the Released Parties to the Releasing Parties, in substantially the form attached to the Asset Purchase Agreement as Exhibits B-1 and B-2, are hereby approved in all respects.

32. The USEB Debtors, including but not limited to their respective officers, employees and agents, are hereby authorized to execute such documents and do such acts as are necessary or desirable to carry out the transactions contemplated by the terms and conditions of

the Sale Documents and this Sale Order. The USEB Debtors shall be, and they hereby are, authorized to take all such actions as may be necessary to effectuate the terms of this Sale Order.

33. To the extent applicable, the automatic stay pursuant to 11 U.S.C. § 362 is hereby lifted with respect to the USEB Debtors to the extent necessary, without further order of the Court (i) to allow the Purchaser to give the USEB Debtors any notice provided for in the Asset Purchase Agreement, and (ii) to allow the Purchaser to take any and all actions permitted by the Sale Documents in accordance with the terms and conditions thereof.

34. This Sale Order and the Sale Documents shall be binding in all respects upon all creditors (whether known or unknown) of any USEB Debtor, all successors and assigns of the Purchaser, the USEB Debtors and their affiliates and subsidiaries, and any subsequent trustees appointed in the USEB Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code and shall not be subject to rejection. To the extent any provision of this Sale Order is inconsistent with the terms of the Asset Purchase Agreement, this Sale Order shall govern.

35. The terms and provisions of the Sale Documents and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the USEB Debtors, their estates, and their creditors, Purchaser, and its respective affiliates, successors, and assigns, and any affected third parties, including, but not limited to, all persons asserting a Claim or Interest in the Biogas Assets to be sold to Purchaser pursuant to the Sale Documents, notwithstanding any subsequent appointment of any trustee(s), party, entity, or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee(s), party, entity, or other fiduciary such terms and provisions likewise shall be binding.

36.     To the extent applicable and permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Biogas Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale.

37.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Sale Order.

38.     Any provision in any agreement to which any of the USEB Debtors is a party that purports to declare a breach or default as a result of a change of control in respect of the sale or transfer of the Biogas Assets is hereby deemed unenforceable and all such agreements shall remain in full force and effect.

39.     The failure specifically to include or to reference any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

40.     The Sale Documents and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court; provided that any such modification, amendment, or supplement does not have a material adverse effect on the USEB Debtors' estates.

41.     The provisions of this Sale Order are nonseverable and mutually dependent.

42.     Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in the Chapter 11 Cases, or in any subsequent or

converted cases of the USEB Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the Sale Documents or the terms of this Sale Order.

43.     Nothing in this Sale Order shall alter or amend the Asset Purchase Agreement and the obligations of the USEB Debtors and Purchaser thereunder.

44.     This Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Sale Order, the Sale Documents in all respects, and to decide any disputes arising between the USEB Debtors, the Purchaser, and/or their respective successors and assigns, with respect thereto, including, but not limited to, interpretation of the terms, conditions and provisions thereof, and the status, nature and extent of the Biogas Assets, and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the Biogas Assets free and clear of Interests or Claims.

45.     Notwithstanding Bankruptcy Rules 6004(g), 6006(d) and 7062, this Sale Order shall be effective and enforceable immediately upon entry.

Dated: New York, New York
_____

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE