# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| U.S. ENERGY SYSTEMS, INC., *et al.*, | ) | Case No. 08-10054 (RDD) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

## FIRST AMENDED CHAPTER 11 PLAN OF U.S. ENERGY SYSTEMS, INC.

Peter S. Partee
Scott H. Bernstein
HUNTON & WILLIAMS LLP
200 Park Avenue
New York, New York 10166
(212) 309-1000

-and-

Michael G. Wilson (admitted *pro hac vice*)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
(804) 788-8200

Dated: July 2, 2010
New York, New York

*Attorneys for Debtors and
Debtors-in-Possession*

---

[1]  The other Debtors in the jointly administered cases are the following:  U.S. Energy Overseas Investments, LLC, U.S. Energy Biogas Corp., Biogas Financial Corp., Power Generation (Suffolk), Inc., Resources Generating Systems, Inc., Suffolk Biogas, Inc., USEB Assignee, LLC, ZFC Energy, Inc., ZMG Inc., and Oceanside Energy, Inc.

# TABLE OF CONTENTS

**Page**

ARTICLE I        INTRODUCTION .......................................................................1

ARTICLE II      RULES OF INTERPRETATION, COMPUTATION OF TIME AND
DEFINED TERMS ...................................................................1
    2.1        Rules of Interpretation .............................................................1
    2.2        Computation of Time ...............................................................1
    2.3        Defined Terms ........................................................................1
    2.4        Exhibits .................................................................................9

ARTICLE III     TREATMENT OF UNCLASSIFIED CLAIMS.............................9
    3.1        Administrative Claims ............................................................9
    3.2        Professional Fees ..................................................................10
    3.3        Priority Tax Claims................................................................11

ARTICLE IV     CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS
AND INTERESTS ..................................................................11
    4.1        Classification.........................................................................11
    4.2        Classification and Treatment of Claims and Interests ...................12
    4.3        Full Satisfaction, Settlement and Release ..................................14
    4.4        Miscellaneous ......................................................................14
    4.5        Elimination of Classes ...........................................................14

ARTICLE V      MEANS FOR IMPLEMENTATION OF THIS PLAN...................14
    5.1        Powers.................................................................................14
    5.2        Plan Administrator.................................................................15
    5.3        Investments ..........................................................................17
    5.4        Resignation, Death or Removal of the Plan Administrator .............17
    5.5        Disposition of Assets .............................................................17
    5.6        Release of Liens ....................................................................17
    5.7        Exculpation and Indemnification of the Plan Administrator Exculpated
Parties.................................................................................18
    5.8        Liability of the Plan Administrator ...........................................18
    5.9        Distributions.........................................................................19
    5.10      Closing of the Plan Fund and Establishment of the Unsecured
Distribution Fund ..................................................................19
    5.11      Indemnification of Directors, Officers and Employees of USEY ...................19
    5.12      Insurance Preservation ...........................................................19
    5.13      Cancellation of Existing Agreements and Securities.....................20
    5.14      Dissolution of USEY .............................................................20
    5.15      Corporate Action...................................................................20

ARTICLE VI     PROVISIONS GOVERNING DISTRIBUTIONS .........................20
    6.1        Objections to Claims...............................................................20
    6.2        Estimation of Claims..............................................................21

| | | |
|---|---|---|
| 6.3 | Distribution On Account of Allowed Administrative Claims, Allowed Priority Claims and Allowed Secured Claims | 21 |
| 6.4 | Distributions for Allowed General Unsecured Claims | 21 |
| 6.5 | Delivery of Distributions; Undeliverable, Unclaimed and Returned Distributions | 21 |
| 6.6 | De Minimis Distribution Provisions | 22 |
| 6.7 | Disputed Claims | 23 |
| 6.8 | Prosecution of Objections to Claims | 23 |
| 6.9 | Bar Date for Objections to Claims | 23 |
| 6.10 | Claims Filed After the Confirmation Date | 23 |
| 6.11 | Amendment to Claims After the Confirmation Date | 24 |
| 6.12 | Direction to Parties | 24 |
| 6.13 | Setoffs and Recoupments | 24 |
| 6.14 | No Recourse | 24 |
| 6.15 | Manner of Payment Under Plan | 24 |
| 6.16 | No Distribution in Excess of Allowed Amount of Claim | 25 |
| ARTICLE VII | CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE OF THE PLAN | 25 |
| 7.1 | Condition Precedent to Confirmation | 25 |
| 7.2 | Conditions Precedent to the Occurrence of the Effective Date | 25 |
| 7.3 | Waiver of Conditions | 25 |
| 7.4 | Effect of Non-Occurrence of Conditions Precedent to the Effective Date | 25 |
| ARTICLE VIII | EFFECT OF CONFIRMATION | 26 |
| 8.1 | Binding Effect | 26 |
| 8.2 | Preservation of Causes of Action; Standing of the Plan Administrator | 26 |
| ARTICLE IX | RELEASES, EXCULPATION AND INJUNCTION AGAINST INTERFERENCE WITH THE PLAN | 26 |
| 9.1 | Releases | 26 |
| 9.2 | Exculpation | 27 |
| 9.3 | Injunction | 28 |
| 9.4 | Discharge | 28 |
| ARTICLE X | RETENTION OF JURISDICTION | 28 |
| 10.1 | General Scope of Jurisdiction | 28 |
| 10.2 | Claims and Causes of Action | 28 |
| 10.3 | Specific Jurisdiction | 28 |
| 10.4 | Failure of Bankruptcy Court to Exercise Jurisdiction | 30 |
| ARTICLE XI | MISCELLANEOUS PROVISIONS | 30 |
| 11.1 | Revocation and Withdrawal of this Plan | 30 |
| 11.2 | Governing Law | 31 |

# TABLE OF CONTENTS
(continued)

| | | |
|---|---|---|
| 11.3 | Successors and Assigns | 31 |
| 11.4 | Payment of Statutory Fees | 31 |
| 11.5 | Substantial Consummation | 31 |
| 11.6 | Amendments | 31 |
| 11.7 | Term of Injunctions or Stays | 31 |
| 11.8 | Section 1146 Exemption | 32 |
| 11.9 | Compliance with Tax Requirements | 32 |
| 11.10 | Further Actions | 32 |
| 11.11 | Further Assurances | 32 |
| 11.12 | Severability of Plan Provisions | 32 |
| 11.13 | Service of Documents | 33 |
| 11.14 | Notice of Effective Date | 33 |
| 11.15 | Filing of Additional Documents | 34 |
| ARTICLE XII | REQUEST FOR CONFIRMATION | 34 |

## EXHIBITS

Exhibit 1        Plan Administrator Agreement

# ARTICLE I
## INTRODUCTION

U.S. Energy Systems, Inc. ("<u>USEY</u>" or the "<u>Debtor</u>"), a Delaware corporation and a debtor and debtor-in-possession (and collectively with the other debtors in the above-captioned chapter 11 cases, the "<u>Debtors</u>") in the above-captioned cases, hereby proposes the following as its *First Amended Chapter 11 Plan of U.S. Energy Systems, Inc.* (either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the terms hereof, the Bankruptcy Code (as defined herein), the Bankruptcy Rules (as defined herein) or a Final Order (as defined herein), the "<u>Plan</u>"), pursuant to section 1121(a) of the Bankruptcy Code. Any agreements and/or other documents that are referenced in this Plan, but not attached as exhibits hereof, are available upon reasonable written request to counsel for USEY indicated on the cover page of this Plan. Reference is made to the Disclosure Statement (as defined herein) for a discussion of USEY's history, business, properties, and operations; a summary of and analysis of this Plan; and certain related matters.

# ARTICLE II
## RULES OF INTERPRETATION, COMPUTATION
## OF TIME AND DEFINED TERMS

### 2.1 *Rules of Interpretation*

For purposes of this Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine or neutral gender; (b) any reference in this Plan to a contract, an instrument, a release, an indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or an exhibit Filed (as defined herein), or to be Filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) the words "hereof," "herein," "hereto," and "hereunder" refer to this Plan in its entirety rather than to a particular portion of this Plan; (e) captions and headings to Articles and sections of this Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (f) in the event of any inconsistency between the terms of this Plan and the terms of the Disclosure Statement, the terms of this Plan shall control; and (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the construction of this Plan.

### 2.2 *Computation of Time*

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### 2.3 *Defined Terms*

Terms herein with an initial capital not required by standard capitalization rules are defined terms, and each such term shall have the meaning ascribed to it below. Any capitalized term used in this Plan that is not defined herein but that is defined in the Bankruptcy Code or the

Bankruptcy Rules shall have the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

(a) "Administrative Claim" means all Claims for the costs and expenses of administering the Chapter 11 Case under sections 503(b), 507(a)(2) or 507(b) of the Bankruptcy Code, including without limitation (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the USEY Estate and operating the business of USEY; (ii) compensation for professional services and reimbursements of expenses under sections 328, 329, 330 or 331 of the Bankruptcy Code and other Professional Fees; and (iii) any fees or charges assessed against USEY under 28 U.S.C. §§ 1911 - 1930.

(b) "Administrative Claims Bar Date" means the date that is forty-five (45) calendar days after the Effective Date.

(c) "Administrative Claims Objection Deadline" means, unless extended by a Final Order, the last date for filing an objection with respect to any Administrative Claim shall be the date that is seventy (70) calendar days after the Effective Date.

(d) "Allowed" means with reference to any Claim, except as otherwise provided herein: (i) a Claim that has been scheduled by USEY in its Schedules in an amount other than zero, as other than disputed, contingent or unliquidated, and as to which USEY or another party in interest has not Filed an objection by the Claims Objection Deadline; (ii) a Claim that is not a Disputed Claim or has been allowed pursuant to a Final Order; (iii) an Allowed Claim that is allowed: (a) in any stipulation with USEY as to the amount and nature of such Claim that is executed prior to the Effective Date and approved by the Bankruptcy Court, (b) in any stipulation with the Plan Administrator as to the amount and nature of the Claim that is executed on or after the Effective Date and, to the extent necessary, approved by the Bankruptcy Court, or (c) in any contract, instrument, indenture or other agreement entered into or assumed pursuant to this Plan; (iv) a Claim relating to a rejected executory contract or an unexpired lease that either (a) is not a Disputed Claim or (b) has been allowed pursuant to a Final Order, in either case only if a Proof of Claim has been Filed by the Bar Date or has otherwise been deemed timely Filed under applicable law; or (v) a Claim that is allowed pursuant to the terms of this Plan; provided, however, unless otherwise specified herein or by a Final Order of the Bankruptcy Court, the term "Allowed Claim" shall not, for any purpose under this Plan, include interests, penalties, premiums or late charges on such Claim from and after the Petition Date.

(e) "Allowed . . . Claim" means an allowed Claim in the particular Class described.

(f) "Allowed Interest" means an Interest or any portion thereof, (a) that has been allowed by a Final Order, or (b) as to which, on the Effective Date, (i) no proof of Interest has been Filed and (ii) the liquidated and noncontingent amount of which is listed in the Debtor's books and records, other than an Interest that is listed as zero, in an unknown amount, or disputed, or (c) for which a proof of Interest has been Filed pursuant to the Bankruptcy Code or other applicable bankruptcy law, as to which either (i) no objection to its allowance has been Filed within the periods of limitation fixed by the Bankruptcy Code or other applicable

bankruptcy law, or by any order of the Bankruptcy Court, or (ii) any objection to its allowance has been settled or withdrawn or has been denied by a Final Order.

(g) "Assets" means all of the right, title and interest of USEY in, to and under any and all assets and property, whether tangible, intangible, real or personal, that constitute property of the USEY Estate within the meaning of section 541 of the Bankruptcy Code.

(h) "Ballots" means the ballots accompanying the Disclosure Statement upon which Holders of Impaired Claims entitled to vote on this Plan shall indicate their acceptance or rejection of this Plan.

(i) "Bankruptcy Code" means Title 11 of the United States Code, and applicable portions of Titles 18 and 28 of the United States Code, as such have been, or may be, amended from time to time, to the extent that such amendments are applicable to the Chapter 11 Case.

(j) "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York.

(k) "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended and promulgated under 28 U.S.C. § 2075, and the Local Rules of the Bankruptcy Court, as the same shall be applicable to the Chapter 11 Case.

(l) "Bar Date" means, as set forth in the Bar Date Order: (i) July 1, 2008 for a Person or an Entity (other than a Governmental Unit), other than for a Rejection Claim or Proof of Claim Filed in response to any amendment made to the Schedules; (ii) July 9, 2008, for Governmental Units; (iii) with respect to Proofs of Claim Filed in response to amendments made to the Schedules, thirty (30) calendar days after the date on which notice of the applicable amendment or supplement to the Schedules is served on the Claim Holder; and (iv) with respect to Proofs of Claims Filed for Rejection Claims, thirty (30) calendar days after the entry of an order by the Bankruptcy Court authorizing USEY to reject an executory contract or unexpired lease.

(m) "Bar Date Order" means the *Order (A) Establishing Bar Dates for Filing Proofs of Claim, (B) Approving the Bar Date Notice and the Form and Manner of Notice Thereof, and (C) Authorizing the Debtors to Provide Notice of the Bar Dates* entered by the Bankruptcy Court on May 7, 2008.

(n) "Business Day" means any day other than a Saturday, a Sunday or a "legal holiday" (as such term is defined in Bankruptcy Rule 9006(a)).

(o) "Cash" means lawful currency of the United States of America and equivalents thereof.

(p) "Causes of Action" means all of USEY's actions, causes of actions, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and crossclaims, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, contingent or non-contingent, matured or

unmatured, disputed or undisputed, secured or unsecured, asserted or assertable directly or indirectly or derivatively, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, through and including the Effective Date.

(q)  "Chapter 11" means Chapter 11 of the Bankruptcy Code.

(r)  "Chapter 11 Case" means the case under Chapter 11 commenced by USEY in the Bankruptcy Court by the filing of its Voluntary Petition for Relief under Chapter 11 on January 9, 2008.

(s)  "Claim" shall have the meaning assigned to that term in section 101(5) of the Bankruptcy Code.

(t)  "Claim Holder" means the Holder of a Claim.

(u)  "Claims Objection Deadline" means, unless extended by a Final Order, the last date for Filing an objection with respect to any Claim, except for a Rejection Claim, a Claim asserted in response to any amendment to the Schedules, or an application or a request for payment of an Administrative Claim, shall be the date that is ninety (90) days after the Effective Date.

(v)  "Class" means a category, designated herein, of Claims or Interests that are substantially similar to the other Claims or Interests in such category as specified in Article IV of this Plan.

(w)  "Confirmation" means the confirmation of this Plan by the Bankruptcy Court pursuant to section 1129 of the Bankruptcy Code.

(x)  "Confirmation Date" means the date upon which the Confirmation Order is entered by the Bankruptcy Court in the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

(y)  "Confirmation Hearing" means the hearing held by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider Confirmation of this Plan in accordance with section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

(z)  "Confirmation Order" means an order entered by the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

(aa)  "Creditor" means the Holder of an Allowed Claim against USEY or the USEY Estate.

(bb)  "D&O Released Parties" means all officers, directors, employees, attorneys, financial advisors, investment bankers, agents and representatives of the USEY who served in such capacity at any time from the Petition Date through the Confirmation Date.

4

(cc)  "Debtor" has the meaning given to it in Article I.

(dd)  "Disallowed Claim" means a Disputed Claim (1) that has been disallowed by a Final Order or (2) (A) for which no Proof of Claim was Filed on or before the applicable Bar Date and that USEY (i) listed such Disputed Claim in its Schedules as disputed, contingent, or unliquidated or (ii) did not list such Disputed Claim in its Schedules or (B) that is an Administrative Claim for which no application or request for payment of such Administrative Claim was Filed on or before the Administrative Claims Bar Date.

(ee)  "Disclosure Statement" means the written disclosure statement (including all exhibits and schedules thereto) that relates to this Plan, as the same may be amended, supplemented, revised or modified from time to time, as approved by the Bankruptcy Court pursuant to a Final Order, including without limitation all exhibits, appendices and schedules annexed thereto.

(ff)  "Disputed" means with respect to any Claim, any Claim:  (a) that is listed on the Schedules as unliquidated, disputed or contingent; (b) as to which USEY or any other party in interest has interposed a timely objection or a request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by USEY in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined pursuant to a Final Order; (c) during the period prior to the deadline fixed by this Plan or the Bankruptcy Court for objecting to such Claim, that exceeds the amount listed in the Schedules other than as unliquidated, disputed or contingent, unless such Claim is Allowed pursuant to a Final Order or is Allowed in accordance with clause (iii) of the definition of Allowed or (d) that is neither Allowed or Disallowed.

(gg)  "Distribution" means the distribution of Cash to Holders of Allowed Claims in accordance with this Plan.

(hh)  "Effective Date" means the first Business Day on which all conditions specified in Article VII hereof have been satisfied or, if capable of being waived, have been waived in accordance with section 7.3 hereof.

(ii)  "Entity" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

(jj)  "Face Amount" means with respect to an Allowed Claim, (1) the amount set forth on the Proof of Claim unless the Proof of Claim is Filed in an unliquidated amount, (2) if a Proof of Claim has been Filed in an unliquidated amount, an amount determined in accordance with Article VI hereof, (3) if no Proof of Claim has been Filed, the amount of the Claim listed in the Schedules, or (4) the amount determined by a Final Order of the Bankruptcy Court.

(kk)  "File" or "Filed" means file or filed with the Clerk of the Bankruptcy Court in the Chapter 11 Case.

(ll)  "Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

(mm) "Final Order" means an order of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, that (i) has not been reversed, vacated, modified, amended or reconsidered and (ii) as to which (A) the time to File an appeal or motion to vacate, modify, amend or reconsider has expired and no appeal or motion to vacate, modify, amend or reconsider has been timely Filed, (B) any appeal that has been Filed has been resolved by the highest court to which the order appealed may be taken, or (C) an appeal or motion to vacate, modify, amend or reconsider has been timely Filed, but has not yet been resolved and no stay pending such appeal or such motion to vacate, modify, amend or reconsider has issued.

(nn) "General Unsecured Claim" means any Claim against USEY that is not an Administrative Claim, a Priority Claim, a Secured Claim, or a Professional Fee Claim.

(oo) "Holder" means a Person or an Entity holding an Interest or a Claim.

(pp) "Impaired" means a Claim or an Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

(qq) "Impaired Class" means a Class that is impaired within the meaning of section 1124 of the Bankruptcy Code.

(rr) "Interests" means any stock or other equity ownership interest in USEY and all dividends and distributions with respect to such stock or interest and all rights, options, warrants (regardless of whether exercised), or other rights to acquire any stock or other equity ownership interest in USEY as of the Petition Date.

(ss) "Lien" means a mortgage, a pledge, a judgment lien, an attachment, a security interest, or other encumbrance on any Assets, whether voluntary or involuntary, which is valid, perfected, and enforceable under applicable non-bankruptcy law as of the Confirmation Date.

(tt) "Person" means a person as defined in section 101(41) of the Bankruptcy Code.

(uu) "Petition Date" means January 9, 2008, the date on which USEY filed its Voluntary Petition for Relief commencing the Chapter 11 Case.

(vv) "Plan" has the meaning given to it in Article I.

(ww) "Plan Administrator" means the administrator appointed pursuant to this Plan and the Plan Administrator Agreement.

(xx) "Plan Administrator Agreement" means that certain Plan Administrator Agreement between USEY and the Plan Administrator specifying the duties and responsibilities to be performed by the Plan Administrator under this Plan, in substantially in the form attached hereto as Exhibit 1.

(yy) "Plan Fund" means a segregated, interest-bearing account to be established and maintained by the Plan Administrator on the Effective Date into which account the Plan Administrator shall deposit all Cash in the USEY Estate on the Effective Date. The Plan Fund

shall be used by the Plan Administrator to make Distributions to Holders of (a) all Administrative Claims, Priority Claims and Secured Claims that are not Disputed Claims and (b) Disputed Administrative Claims, Disputed Priority Claims and Disputed Secured Claims that subsequently become Allowed Claims under this Plan in accordance with Article VI hereof.  All amounts on deposit from time to time in the Plan Fund and all dividends, interest, and other earnings thereon, net of any applicable taxes and expenses, shall be held in trust for the benefit of the Holders of Disputed Administrative Claims, Disputed Priority Claims and Disputed Secured Claims that subsequently become Allowed Claims and the Holders of Allowed Administrative Claims, Allowed Priority Claims and Allowed Secured Claims until such time as all Allowed Administrative Claims, Allowed Priority Claims and Allowed Secured Claims have been paid and all Disputed Administrative Claims, Disputed Priority Claims and Disputed Secured Claims have been Allowed or disallowed in accordance with Article VI hereof.  At any time, and from time to time, the Plan Administrator may withdraw such funds as are necessary from the Plan Fund to pay the costs and expenses of the wind-down of the USEY Estate, including but not limited to the post-Effective Date costs and expenses of the Plan Administrator's professionals and employees.  For the avoidance of doubt, the Plan Fund shall not be or become subject to any lien or security interest asserted by any Entity or Person except as provided in the Plan Administrator Agreement.

(zz)  "Priority Claims" means all Priority Non-Tax Claims and all Priority Tax Claims.

(aaa)  "Priority Non-Tax Claims" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

(bbb)  "Priority Tax Claim" means a Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

(ccc)  "Professional Fees" means the compensation and reimbursement of expenses allowed to (a) Professionals pursuant to sections 328, 329, 330 or 331 of the Bankruptcy Code or (b) any Person or Entity making a claim for compensation and reimbursement of expenses under section 503(b) of the Bankruptcy Code.

(ddd)  "Professionals" means an Entity or a Person employed pursuant to a Final Order in accordance with section 327 of the Bankruptcy Code and to be compensated for services rendered and reimbursed for expenses incurred prior to the Effective Date, pursuant to sections 327, 328, 329, 330 or 331 of the Bankruptcy Code.

(eee)  "Proof of Claim" means any written statement filed under oath in the Chapter 11 Case by the Holder of a Claim, other than an Administrative Claim, which statement (1) conforms substantially to Official Form 10, (2) states the amount owed and sufficiently identifies the basis of such Holder's Claim, and (3) attaches or sufficiently identifies all documentation evidencing or otherwise supporting the Claim.

(fff)  "Ratable Portion" means, with reference to any distribution on account of any Allowed Claim in any Class, a distribution equal in amount to the ratio (expressed as a

percentage) that the amount of such Allowed Claim bears to the aggregate amount of Allowed Claims in such Class.

(ggg) "Rejection Claim" means any claim for damages arising as a proximate result of the rejection of an executory contract or an unexpired lease under section 365 of the Bankruptcy Code.

(hhh) "Schedules" means the schedules, if any, of assets and liabilities, schedules of executory contracts, and the statements of financial affairs of USEY Filed pursuant to Bankruptcy Rule 1007(b), as they may be amended by USEY from time to time.

(iii) "Secured Claim" means a Claim that is secured by a Lien on property in which the USEY Estate has an interest, which Lien is valid, perfected and enforceable under applicable law or by reason of a Final Order or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the USEY Estate's interest in such property or to the extent of the amount subject the setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

(jjj) "Unclassified Claim" means a Claim that is not classified under this Plan, viz., Administrative Claims and Priority Tax Claims.

(kkk) "Unimpaired" means a Claim that is not Impaired.

(lll) "Unsecured Distribution Date" means the tenth Business Day after the occurrence of the date on which the Plan Administrator has completed the liquidation of the Assets and the process of allowing or disallowing Claims against USEY and the USEY Estate.

(mmm) "Unsecured Distribution Fund" means a segregated, interest-bearing account to be established and maintained by the Plan Administrator as soon as reasonably practicable after the Effective Date into which account the Plan Administrator shall deposit all Cash remaining in the USEY Estate after all Distributions on account of Administrative Claims, Priority Claims and Secured Claims have been made. The Unsecured Distribution Fund shall be used by the Plan Administrator to make a Distribution, if any, to Holders of (a) all General Unsecured Claims that are not Disputed Claims and (b) all Disputed General Unsecured Claims that become Allowed Claims under the Plan in accordance with Article VI hereof. All amounts on deposit from time to time in the Unsecured Distribution Fund and all dividends, interest, and other earnings thereon, net of any applicable taxes and expenses, shall be held in trust for the benefit of the Holders of Disputed General Unsecured Claims that subsequently become Allowed Claims and the Holders of Allowed General Unsecured Claims, until such time as all Allowed General Unsecured Claims have been paid or the Plan Administrator determines that a Distribution to Holders of Allowed General Unsecured Claims is not feasible. At any time, and from time to time, the Plan Administrator may withdraw such funds as are necessary from the Unsecured Distribution Fund to pay the costs and expenses of the wind-down of the USEY Estate, including but not limited to the post-Effective Date costs and expenses of the Plan Administrator's professionals and employees. For the avoidance of doubt, the Unsecured Distribution Fund shall not be or become subject to any lien or security interest asserted by any Entity or Person except as provided in the Plan Administrator Agreement.

(nnn) "USEY" has the meaning given to it in Article I.

(ooo) "USEY Estate" means the bankruptcy estate of USEY that was created pursuant to section 541 of the Bankruptcy Code on the Petition Date.

(ppp) "USEY's Advisors" means Hunton & Williams LLP, in its capacity as bankruptcy attorneys for USEY, Eckert Seamans Cherin & Mellott, LLC, in its capacity as Delaware attorneys for USEY, Reed Smith LLP, in its capacity as Corporate Governance attorneys for USEY, and Jefferies & Company, Inc., in its capacity as financial advisors for USEY.

(qqq) "Voting Agent" means Epiq Bankruptcy Solutions, LLC.

(rrr) "Voting Deadline" means the date as determined by an order of the Bankruptcy Court approving the Disclosure Statement by which Ballots must be properly executed, completed and transmitted to the Voting Agent in order to be counted as a vote to accept or reject this Plan, as may be extended by USEY from time to time.

2.4    *Exhibits*

All exhibits to this Plan are incorporated by reference and made a part of this Plan as if set forth in full herein.

**ARTICLE III**
**TREATMENT OF UNCLASSIFIED CLAIMS**

3.1    *Administrative Claims*

Except to the extent that a Holder of an Allowed Administrative Claim agrees to less favorable treatment, each Administrative Claim that is Allowed shall be paid by USEY or the Plan Administrator, as the case may be, out of the Plan Fund, in full, in Cash, in such amount as such Administrative Claim is Allowed by the Bankruptcy Court (a) upon the later of the Effective Date or, if such Claim is Allowed after the Effective Date, as soon as reasonably practicable after the date upon which such Claim becomes an Allowed Administrative Claim, (b) upon such terms of any agreement governing or documents evidencing such Administrative Claim, or (c) as may be agreed upon between the Holder of such Allowed Administrative Claim and USEY or the Plan Administrator.

Unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims must be Filed and served on the Plan Administrator and counsel to the Plan Administrator by the Administrative Claims Bar Date.  Persons and Entities that have provided goods or non-professional services to USEY during the Chapter 11 Case in the ordinary course of USEY's business must File a request for payment of Administrative Claims and serve such request on the Plan Administrator and counsel to the Plan Administrator by the Administrative Claims Bar Date.  Any Person or Entity that is required to File and serve a request for payment of an Administrative Claim and fails to timely File and serve such a request shall be forever barred, estopped and enjoined from asserting such Administrative Claim or participating in Distributions on account thereof.

The Plan Administrator, in his sole and absolute discretion, may settle Administrative Claims in the ordinary course of business without further Bankruptcy Court approval. The Plan Administrator or any other party with standing to object to a request for payment of an Administrative Claim shall have the right to object to any Administrative Claim by the Administrative Claims Objection Deadline, subject to extensions from time to time by the Bankruptcy Court, and must File and serve such an objection on the appropriate parties, including the claimant. Unless the Plan Administrator or another party with standing objects to an Administrative Claim, such Administrative Claim shall be deemed Allowed in the amount requested. In the event that the Plan Administrator or another party with standing objects to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, submit the matter to the Bankruptcy Court for a determination of whether an Administrative Claim should be allowed, and if so, in what amount.

The Distributions to Holders of Allowed Administrative Claims under this section shall be in full and complete satisfaction, settlement and release of, and in exchange for, such Allowed Claims. The Plan Administrator shall pay Allowed Administrative Claims only from the Plan Fund.

3.2     *Professional Fees*

Notwithstanding any other provision of this Plan, any Professional seeking an award by the Bankruptcy Court of an Allowed Administrative Claim on account of Professional Fees incurred through and including the Effective Date under sections 328, 329, 330, 331 or 503(b) of the Bankruptcy Code shall File a final application for allowance of compensation for services rendered and reimbursement of expenses incurred through and including the Effective Date and serve such a final application on the Plan Administrator and counsel to the Plan Administrator no later than the Administrative Claims Bar Date. If the Plan Administrator or any other party with standing objects to such a request, such objecting party shall File and serve on the appropriate parties such objection no later than the Administrative Claims Objection Deadline, and the fee application shall be scheduled for hearing to consider and resolve the objection at the Bankruptcy Court's earliest convenience.

To the extent that an award of Professionals Fees is granted by the Bankruptcy Court, on, or as soon as reasonably practicable after (i) the Effective Date, if such Administrative Claim on account of Professional Fees is an Allowed Administrative Claim as of the Effective Date, or (ii) the date on which such Administrative Claim for Professional Fees becomes an Allowed Administrative Claim, each Holder of an Allowed Administrative Claim for Professional Fees shall receive in full settlement, satisfaction and release of, and in exchange for, such Allowed Administrative Claim, Cash in an amount equal to the unpaid amount of such Allowed Administrative Claim.

The Plan Administrator may pay the charges incurred by USEY's Advisors on or after the Effective Date for Professionals' fees, disbursements, expenses, or related support services (including fees and expenses related to the preparation of the USEY's Advisors' fee applications) without application to, or approval of, the Bankruptcy Court. The Plan Administrator shall pay Allowed Administrative Claims on account of Professional Fees and

Professionals' fees and costs incurred by USEY's Advisors and the Plan Administrator's Advisors on or after the Effective Date only from the Plan Fund.

3.3  *Priority Tax Claims*

At the sole option of USEY or the Plan Administrator, as the case may be, each Holder of an Allowed Priority Tax Claim shall receive (a) the treatment provided by section 1129(a)(9)(C) of the Bankruptcy Code, or (b) such other less favorable treatment as may be agreed upon between the Holder of such an Allowed Priority Tax Claim and USEY or the Plan Administrator. The Distributions and other treatment afforded to Holders of Allowed Priority Tax Claims under this section shall be in full and complete satisfaction, settlement and release of, and exchange for, such Allowed Claims.  The treatment afforded to Holders of Allowed Priority Tax Claims under this section satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.  The Plan Administrator shall pay Allowed Priority Tax Claims only from the Plan Fund.

**ARTICLE IV**
**CLASSIFICATION AND TREATMENT OF**
**CLASSIFIED CLAIMS AND INTERESTS**

4.1  *Classification*

The categories of Claims and Interests below classify Claims and Interests for all purposes, including voting, confirmation and distribution pursuant to this Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  A Claim or an Interest is in a particular Class only to the extent that such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

Summary of Classification and Treatment of Interests

| Class | Claim | Status | Voting Right |
|-------|-------|--------|--------------|
| 1. | Secured Claims | Unimpaired | Deemed to Accept; Not Entitled to Vote |
| 2. | Priority Non-Tax Claims | Unimpaired | Deemed to Accept; Not Entitled to Vote |
| 3. | General Unsecured Claims | Impaired | Entitled to Vote |
| 4. | Interests | Impaired | Deemed to Reject; Not Entitled to Vote |

Claims (except for Administrative Claims and Priority Tax Claims, which are not required to be classified pursuant to section 1123(a)(1) of the Bankruptcy Code) and Interests are classified as follows:

        (i)      Class 1 - Secured Claims

        (ii)     Class 2- Priority Non-Tax Claims

        (iii)    Class 3 - General Unsecured Claims

        (iv)    Class 4 - Interests

4.2    *Classification and Treatment of Claims and Interests*

1.    Class 1 -- Secured Claims (Unimpaired)

(a) *Classification*:  Class 1 consists of Allowed Secured Claims.

(b) *Treatment*:  The legal, equitable and contractual rights of the Holders of Allowed Secured Claims are unaltered by this Plan.  In full and complete satisfaction, settlement and release of, and exchange for, each Allowed Secured Claim, each Holder of an Allowed Secured Claim shall receive, on the Effective Date or as soon thereafter as reasonably practicable, one of the following treatments, at the sole election of USEY or the Plan Administrator:  (A) Cash in the amount of such Allowed Secured Claim, (B) turnover of the Assets that constitute collateral security for such Allowed Secured Claim, or (C) such other, less favorable treatment as is agreed upon by USEY or the Plan Administrator, as applicable, and the Holder of such Allowed Secured Claim.  Distributions to Holders of Allowed Secured Claims shall only be made from the Plan Fund.

(c) *Voting*:  Class 1 is Unimpaired.  The Holders of Allowed Secured Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject this Plan.

2.    Class 2 -- Priority Non-Tax Claims (Unimpaired)

(a) *Classification*:  Class 2 consists of Allowed Priority Non-Tax Claims.

(b) *Treatment*:  The legal, equitable and contractual rights of Holders of Allowed Priority Non-Tax Claims are unaltered by this Plan.  In full and complete satisfaction, settlement and release of, and exchange for, each Allowed Priority Non-Tax Claim, each Holder of an Allowed Priority Non-Tax Claim shall receive one of the following treatments, at the sole election of the Plan Administrator:

(i)    to the extent then due and owing on the Effective Date, such an Allowed Priority Non-Tax Claim shall be paid in full, in Cash, by the Plan Administrator;

(ii)     to the extent not due and owing on the Effective Date, such an Allowed Priority Non-Tax Claim shall be paid in full, in Cash, by the Plan Administrator when and as such Allowed Priority Non-Tax Claim becomes due and owing in the ordinary course of business in accordance with the terms thereof;

(iii)     such an Allowed Priority Non-Tax Claim shall be otherwise treated in any manner such that Class 2 shall not be Impaired; or

(iv)     such other less favorable treatment as is agreed upon by the Plan Administrator and the Holder of such an Allowed Priority Non-Tax Claim.

Distributions to Holders of Allowed Priority Non-Tax Claims shall only be made from the Plan Fund.

(c) *Voting*:  Class 2 is Unimpaired.  The Holders of Allowed Priority Non-Tax Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject this Plan.

3.     Class 3 -- General Unsecured Claims (Impaired)

(a) *Classification*:     Class 3 consists of Allowed General Unsecured Claims.

(b) *Treatment*:  In full and complete satisfaction, settlement and release of, and in exchange for, the Allowed General Unsecured Claims, each Holder of an Allowed General Unsecured Claims shall receive (a) its Ratable Portion of the Unsecured Distribution Fund on the Unsecured Distribution Date to the extent that the Plan Administrator determines there are sufficient funds in the Unsecured Distribution Fund, if ever, to justify a Distribution to Holders of Allowed General Unsecured Claims, or (b) such other less favorable treatment as may be agreed upon by the Holder of such Claim and the Plan Administrator.  Distributions to Holders of Allowed General Unsecured Claims shall be made only from the Unsecured Distribution Fund.

(c) *Voting*:  Class 3 is Impaired.  The Holders of the Allowed General Unsecured Claims are entitled to vote to accept or reject this Plan.

4.     Class 4 -- Interests (Impaired)

(a) *Classification*:  Class 4 consists of Allowed Interests.

(b) *Treatment*:   On the Effective Date, the Allowed Interests shall be indefeasibly canceled.

(c) *Voting*:  Class 4 is Impaired.  The Holders of the Allowed Interests are conclusively presumed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject this Plan.

4.3 *Full Satisfaction, Settlement and Release*

The Distributions and other treatments afforded to Holders of Allowed Claims under this Article IV shall be in full and complete satisfaction, settlement and release of, and in exchange for, such Allowed Claims.

4.4 *Miscellaneous*

(a) Notwithstanding any other provision of this Plan, the Face Amount of any Allowed Claim shall be reduced by the amount, if any, that was paid by USEY to the Holder of such Claim prior to the Effective Date, including pursuant to a Final Order entered by the Bankruptcy Court. Nothing in this Plan shall preclude the Plan Administrator from paying Claims that USEY was authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Effective Date.

(b) Except as otherwise provided in this Plan, the Confirmation Order, any other Final Order of the Bankruptcy Court or any document or agreement entered into and enforceable pursuant to the terms of this Plan, nothing shall affect USEY's or the Plan Administrator's Causes of Action, rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including but not limited to all rights with respect to legal and equitable defenses to, and setoffs and recoupments against Unimpaired Claims and all Causes of Action for the affirmative relief against the Holders thereof.

4.5 *Elimination of Classes*

Any Class of Claims that is not occupied as of the date of commencement of the Confirmation Hearing by an Allowed Claim, or a Claim temporarily Allowed under Bankruptcy Rule 3018, shall be deemed deleted from this Plan for the purposes of (i) voting on the acceptance or rejection of this Plan and (ii) determining acceptance or rejection of this Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

**ARTICLE V**
**MEANS FOR IMPLEMENTATION OF THIS PLAN**

5.1 *Powers*

(a) *USEY*. On the Effective Date, the authority and power of USEY shall terminate and vest in the Plan Administrator.

(b) *Succession by the Plan Administrator*. On the Effective Date, the Plan Administrator shall be appointed and shall succeed to all of USEY's authority and power, and the Plan Administrator shall be authorized to take all steps necessary to wind-down the affairs of USEY and to take such other actions as the Plan Administrator determines is in the best interests of the Claim Holders. On the Effective Date, the Plan Administrator shall establish the Plan Fund in accordance with the terms of this Plan. All other property of the USEY Estate not distributed to Holders of Claims on the Effective Date, including any Cash held in escrow or separate segregated accounts during the pendency of the Chapter 11 Case, shall be managed by the Plan Administrator and shall be held in the name of Plan Administrator. As soon as

reasonably practicable after the Effective Date, the Plan Administrator shall establish the Unsecured Distribution Fund in accordance with the terms of this Plan and only after all Distributions have been made on account of Allowed Administrative Claims, Allowed Priority Claims and Allowed Secured Claims. Distributions shall be funded solely from the Plan Fund and the Unsecured Distribution Fund in accordance with the terms hereof. This Plan shall be administered by the Plan Administrator and actions shall be taken in the name of the Plan Administrator irrespective of the dissolution of USEY.

5.2 *Plan Administrator*

Subject to approval of the Bankruptcy Court pursuant to the Confirmation Order, Richard J. Augustine shall serve as the Plan Administrator. The salient terms of the Plan Administrator's employment are set forth in the Plan Administrator Agreement attached hereto as <u>Exhibit 1</u>. In general, the Plan Administrator shall act for the Claim Holders in a fiduciary capacity as applicable to a board of directors, subject to the provisions hereof. The duties and powers of the Plan Administrator shall include the following, but in all cases shall be subject to and consistent with the terms hereof:

(a) to exercise all power and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced and take all actions that may be or could have been taken by any officer, director or shareholder of USEY with the like effect as if authorized, exercised and taken by unanimous action of such officers, directors and shareholders;

(b) to maintain accounts, make Distributions from the Plan Fund and the Unsecured Distribution Fund, and take other actions consistent with this Plan and the implementation hereof;

(c) to collect and liquidate all Assets pursuant to this Plan and to administer the winding-down of the affairs of USEY;

(d) to object to any Claims, including filing motions to estimate Claims pursuant to section 6.2 hereof, and to compromise or settle any Claims without supervision or approval of the Bankruptcy Court, and free of any restrictions of the Bankruptcy Code and the Bankruptcy Rules;

(e) to make decisions, without further Bankruptcy Court approval, regarding the retention or engagement of professionals, employees and consultants by the Plan Administrator and to pay from Cash on hand, the fees and charges incurred by the Plan Administrator on or after the Effective Date for such professionals, employees and consultants relating to the winding down of USEY and implementation of this Plan without application to the Bankruptcy Court; <u>provided</u>, <u>however</u> that if the Plan Administrator and such professional, employee or consultant cannot agree on such fees and expenses, the Plan Administrator shall apply to the Bankruptcy Court for approval of such fees and expenses;

(f) to seek a determination of tax liability under section 505 of the Bankruptcy Code and to pay taxes, if any, related to USEY;

(g) to take all other actions not inconsistent with the provisions of this Plan which the Plan Administrator deems reasonably necessary or desirable with respect to administrating this Plan;

(h) to make all Distributions to Holders of Allowed Claims provided for or contemplated by this Plan; provided, however that no Distributions shall be made on any Claim not Allowed pursuant to a Final Order until the expiration of the Claims Objection Deadline or the Administrative Claims Objection Deadline, as the case may be;

(i) to invest Cash in accordance with the terms of this Plan;

(j) to enter into any agreement or execute any document required by or consistent with this Plan and perform all of USEY's obligations thereunder;

(k) to abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of the Plan Administrator's choice, any Assets that he concludes are of little or no benefit to the USEY Estate;

(l) to preserve documents of USEY as necessary for the pursuit of Causes of Action and as necessary to wind-down the affairs of USEY, and to abandon and/or destroy documents upon a determination by the Plan Administrator that the retention of the documents are no longer necessary or beneficial to the USEY Estate;

(m) to prosecute and/or settle the Causes of Action and exercise, participate in or initiate any proceedings before the Bankruptcy Court or any other court of competent jurisdiction and participate as a party or otherwise in any administrative, arbitrative or other non-judicial proceeding and to litigate or settle such Causes of Action on behalf of USEY and pursue such actions to settlement or judgment;

(n) to purchase and maintain all insurance policies and pay all insurance premiums and costs he deems necessary or advisable;

(o) to implement and/or enforce all provisions of this Plan; and

(p) to collect and liquidate all Assets pursuant to this Plan, and subject to Bankruptcy Court approval to the extent required herein and/or in the Confirmation Order, and administer the winding-down of the affairs of USEY, including prosecuting the entry of a Final Decree in the Chapter 11 Case.

The Plan Administrator shall be the successor to USEY and the USEY Estate for all purposes under sections 1123, 1129 and 1145 of the Bankruptcy Code and with respect to all Causes of Action and other litigation-related matters. The Plan Administrator shall succeed to the attorney-client privilege of USEY and the USEY Estate with respect to all Causes of Action and other litigation-related matters, and the Plan Administrator may waive the attorney-client privilege with respect any Causes of Action, litigation-related matters, or portion thereof, in the Plan Administrator's discretion. The Plan Administrator shall be substituted as the party litigant in all pending adversary proceedings and contested matters that involve USEY.

5.3  *Investments*

All Cash held by the Plan Administrator shall be invested (a) in accordance with section 345 of the Bankruptcy Code or as otherwise permitted by a Final Order of the Bankruptcy Court and (b) as deemed appropriate by the Plan Administrator.

5.4  *Resignation, Death or Removal of the Plan Administrator*

The Plan Administrator may resign at any time upon providing 30 days' written notice to the Bankruptcy Court.  Any party in interest may move for the removal of the Plan Administrator for cause upon filing a motion in the Bankruptcy Court and providing notice to the Plan Administrator and counsel to the Plan Administrator; provided, however, that if the Plan Administrator or any other party in interest objects to such removal within 20 days of receiving such notice, such removal shall not be effective until approved by the Bankruptcy Court.  No successor Plan Administrator hereunder shall in any event have any liability or responsibility for the acts or omissions of any of his or her predecessors.  Every successor Plan Administrator appointed hereunder shall execute, acknowledge and deliver to the Bankruptcy Court an instrument in writing accepting such appointment hereunder, and thereupon such successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of his or her predecessor.  Notwithstanding any other provision in this Plan, upon the resignation or removal of a Plan Administrator, a Plan Administrator shall continue to serve in such capacity until such time as a successor Plan Administrator is identified and accepts the appointment on substantially the terms as the resigning Plan Administrator and notice is provided to the Bankruptcy Court of such successor Plan Administrator pursuant to this section 5.4; provided, however, upon the death or incapacity of the Plan Administrator, the Bankruptcy Court may appoint a new Plan Administrator.

5.5  *Disposition of Assets*

Subject to the provisions of Article VI hereof, all Assets not previously disposed of shall be sold or otherwise liquidated or, if appropriate in the business judgment of the Plan Administrator, abandoned in any commercially reasonable manner, including to a charitable organization or organizations designated by the Plan Administrator in respect of Assets of inconsequential value.

5.6  *Release of Liens*

On or before the Effective Date, any Person or Entity shall execute and file such document, notice or other public statement as is reasonably necessary or appropriate under applicable law in the relevant jurisdictions to evidence and effect the termination of the Liens formerly held by such parties or any Liens held in favor of such Person or Entity in respect of the Assets.  In addition, the Plan Administrator shall be appointed as attorney-in-fact under the laws of the United States of America for each party whose Lien is terminated pursuant to this Plan, with full power and authority to execute on behalf of such party any notices or other public statements as are necessary or appropriate to evidence the termination of such party's Lien and any financing statement relating to any and all security interests in the Assets.

5.7     *Exculpation and Indemnification of the Plan Administrator Exculpated Parties*

From and after the Effective Date, the Plan Administrator, the Plan Administrator's employees, independent contractors, professionals, agents and representatives (collectively, the "Plan Administrator Exculpated Parties") shall be exculpated by all Persons and Entities including without limitation Holders of Claims and other parties in interest, from any and all claims, causes of action and other assertions of liability arising out of the discharge of the powers and duties conferred upon the Plan Administrator by the Plan Administrator Agreement, this Plan or any Final Order entered pursuant to or in furtherance of this Plan or the Plan Administrator Agreement, or applicable law or otherwise, except only for actions or omissions to act only to the extent determined by Final Order to be due to the respective Plan Administrator Exculpated Parties' gross negligence, willful conduct, fraud or criminal conduct after the Effective Date.  No Claim Holder or any other party in interest shall have or be permitted to pursue any claim or cause of action against the Plan Administrator Exculpated Parties for making Distributions or for implementing the provisions of this Plan and the Plan Administrator Agreement except in cases of gross negligence, willful misconduct, fraud or criminal conduct as determined by Final Order.  The Plan Administrator shall indemnify, defend and hold harmless the Plan Administrator Exculpated Parties from and against any claims, causes of action, liabilities, obligations, damages or expenses, including attorneys' fees and costs (unless determined by Final Order to be due to the respective Plan Administrator Exculpated Parties' own gross negligence, willful misconduct, fraud or criminal conduct after the Effective Date), to the fullest extent permitted by applicable law.  Any action taken or act omitted to be taken with the approval of the Bankruptcy Court shall conclusively be deemed not to constitute gross negligence, willful misconduct, fraud or criminal conduct.

5.8     *Liability of the Plan Administrator*

The Plan Administrator may rely, and shall be fully protected in acting or refraining from acting if the Plan Administrator relies, upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that the Plan Administrator reasonably believes to be genuine and to have been signed or presented by the party or parties properly authorized to do so or, in the case of cables, telecopies and telexes, to have been sent by the proper party or parties, and the Plan Administrator may conclusively rely as to the truth of the statements and correctness of the opinions expressed therein.  The Plan Administrator may consult with counsel and other professionals with respect to matters in their respective areas of expertise, and any advice of counsel shall be full and complete authorization and protection in respect of any action taken or not taken by the Plan Administrator.  The Plan Administrator shall be entitled to rely upon the advice of such professionals in acting or failing to act, and shall not be liable for any act taken or not taken in reliance thereon.  The Plan Administrator shall have the right at any time to seek and rely upon instructions from the Bankruptcy Court concerning the Plan Administrator Agreement, this Plan or any other document executed in connection therewith, and the Plan Administrator shall be entitled to rely upon such instructions in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon.

Persons and Entities dealing with the Plan Administrator shall look only to the Assets, the Plan Fund and the Unsecured Distribution Fund to satisfy any liability incurred by the Plan

Administrator to such Person or Entity in carrying out the terms of the Plan Administrator Agreement and this Plan, and the Plan Administrator shall have no personal obligation to satisfy any such liability, except to the extent such liability or obligation is determined by Final Order to have arisen as a result of gross negligence, willful misconduct, fraud or criminal conduct of the Plan Administrator in which case the Assets, the Plan Fund and the Unsecured Distribution Fund shall not be subject to such claims or liabilities.

5.9     *Distributions*

The Plan Administrator shall be solely responsible for making Distributions out of the Plan Fund and the Unsecured Distribution Fund to all Holders of Allowed Claims that do not receive payment in full on or before the Effective Date. All Cash and other property held by the Plan Administrator for Distribution under this Plan shall be held in trust for the exclusive benefit of Holders of Allowed Claims and shall not be subject to any claim by any Person or Entity except as provided in this Plan and the Plan Administrator Agreement. All Distributions to Holders of Allowed Claims are solely payable out of the Plan Fund and the Unsecured Distribution Fund pursuant to the terms hereof.

5.10     *Closing of the Plan Fund and Establishment of the Unsecured Distribution Fund*

When all Distributions have been made out of the Plan Fund to Holders of Allowed Administrative Claims, Allowed Priority Claims and Allowed Secured Claims, the remaining Cash in the Plan Fund shall be used by the Plan Administrator to fund the Unsecured Distribution Fund.

5.11     *Indemnification of Directors, Officers and Employees of USEY*

The obligations of USEY to indemnify any Person serving at any time on or prior to the Effective Date as one of its directors, officers or employees by reason of such Person's service in such capacity, or as a director, an officer, a partner, a trustee, an employee or an agent of USEY to the extent provided in USEY's constituent documents, by a written agreement with USEY or applicable state law, each as applicable, shall be deemed and treated as executory contracts that are assumed by USEY pursuant to this Plan and section 365 of the Bankruptcy Code as of the Effective Date. Accordingly, such indemnification obligations shall survive unimpaired and unaffected by the Confirmation Order, irrespective of whether such indemnification is owed for an act or an event occurring before or after the Petition Date, except if such claim or liability is determined by a Final Order to have resulted from gross negligence, willful misconduct, fraud or criminal conduct of such indemnified Person.

5.12     *Insurance Preservation*

Nothing in this Plan, including any releases, shall diminish or impair the enforceability of the insurance policies of USEY that may cover Claims against USEY or any other Person or Entity.

5.13    *Cancellation of Existing Agreements and Securities*

Except for the purposes of evidencing a right to receive a Distribution under this Plan or as otherwise provided hereunder, on the Effective Date, all the agreements or other documents evidencing any Claims or rights of any Holder of a Claim against USEY, including all indentures, credit agreements, security agreements and notes evidencing such Claims, and any Interests, options or warrants (regardless of whether exercised) to purchase Interests, shall be deemed cancelled, surrendered to USEY, and of no further force or effect.  On the Effective Date, USEY shall be deemed to have no authorized Interests.

5.14    *Dissolution of USEY*

As of the Effective Date, the existing officers and directors of USEY shall cease to serve in their current capacities.  The terms of the board of directors of USEY shall be deemed to expire and the positions of each officer of USEY shall terminate on the Effective Date.  The Plan Administrator shall succeed to the right to act in such capacities as may be necessary to implement this Plan.  The Plan Administrator shall prepare or cause to be prepared and filed on behalf of USEY the final tax returns and shall pay any taxes due with respect to the final tax returns consistent with the terms of this Plan and the Plan Administrator Agreement.  After the final tax returns have been prepared and filed and any taxes due with respect to the final tax returns have been paid, the Plan Administrator shall cause to be prepared and filed on behalf of USEY a certificate of dissolution with the Office of the Secretary of State of Delaware.  As soon as reasonably practicable after the Effective Date, the Plan Administrator shall also cause to be prepared and filed a Form 15 certifying to and notifying the United States Securities and Exchange Commission of the termination of the registration under the Exchange Act of 1934 of the Interests.  The Plan Administrator shall pay all reasonable costs and expenses in connection with the dissolution of USEY and the termination of the registration under the Exchange Act of 1934 of its Interests, including the costs of preparing and filing any necessary paperwork or documentation, out of the Plan Fund and the Unsecured Distribution Fund  After the Effective Date, USEY shall have no authorization to implement the provisions of this Plan.

5.15    *Corporate Action*

On the Effective Date, all actions contemplated by this Plan shall be deemed authorized and approved in all respects (subject to the provisions of this Plan and the Confirmation Order).  All matters provided for in this Plan involving the corporate structure of USEY and any corporate action required by USEY in connection with this Plan or the Confirmation Order, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Holders of Interests or the directors of USEY.

## ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTIONS

6.1    *Objections to Claims*

All objections to Claims shall be filed by the Claims Objection Deadline or the Administrative Claims Objection Deadline, as the case may be, or shall be forever barred.

6.2 *Estimation of Claims*

USEY (prior to the Effective Date) or the Plan Administrator (after the Effective Date) may, at any time, and from time to time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to such objection. In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount shall constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim asserted by any Person or Entity, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, USEY (prior to the Effective Date) or the Plan Administrator (after the Effective Date), may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. All of the objection, estimation, settlement and resolution procedures set forth in this Plan are cumulative and not necessarily exclusive of one another. Claims may be estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code and subsequently compromised, objected to, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

The Holder of a Disputed Claim that is estimated by the Bankruptcy Court pursuant to this section 6.2 shall not be entitled to any subsequent reconsideration or upward adjustment of the maximum allowable amount of such Claim as a result of any subsequent adjudication or an actual determination of the Allowed amount of such a Disputed Claim or otherwise, and the Holder of such a Claim shall <u>not</u> have recourse to USEY, the Plan Administrator, or any of the assets of the foregoing in the event the allowed amount of the Holder's Claim is at any time later determined to exceed the estimated maximum allowable amount.

6.3 *Distribution On Account of Allowed Administrative Claims, Allowed Priority Claims and Allowed Secured Claims*

Except as provided in this Plan or as may be ordered by the Bankruptcy Court, the Plan Administrator shall make Distributions on account of Allowed Administrative Claims, Allowed Priority Claims and Allowed Secured Claims as soon as practicable after the later of (i) the Effective Date with respect to such Claims that are Allowed Claims on the Effective Date, and (ii) the date upon which any such Claim becomes an Allowed Claim.

6.4 *Distributions for Allowed General Unsecured Claims*

Distributions on account of Allowed General Unsecured Claims shall be made on the Unsecured Distribution Date by the Plan Administrator and such Distributions shall be solely payable out of the Unsecured Distribution Fund.

6.5 *Delivery of Distributions; Undeliverable, Unclaimed and Returned Distributions*

(a) In order to determine the actual names, addresses and tax identification numbers of the Claim Holders, the Plan Administrator shall be entitled to conclusively rely on the names, addresses and tax identification numbers set forth in the most recent Proof of Claim, request for

Administrative Claim, pleading, notice of appearance, or written change of address Filed. If a Claim Holder has not Filed any of the foregoing documents, the Plan Administrator shall be entitled to rely on the names, addresses and tax identification numbers reflected in the applicable Schedules or, if more recent, contained in the Debtor's records.

(b) If any Distribution or payment to a Holder of an Allowed Claim is returned to USEY or the Plan Administrator as undeliverable, no further Distributions or payments shall be made to such Holder, and such Holder shall not be entitled to any further Distributions or payments, unless and until the Plan Administrator is notified in writing of such Holder's then current address. If any check issued to a Holder in respect of a Distribution remains outstanding for more than ninety (90) days following the date of mailing of such check, no further Distributions or payments shall be made to such Claim Holder, the check shall be voided by USEY or the Plan Administrator, as applicable, and such Claim Holder shall not be entitled to any further Distributions or payments. Nothing contained in the Plan Administrator Agreement or this Plan shall require the Debtor, the Plan Administrator or any of their respective agents, employees, attorneys or professionals to attempt to locate any Holder.

(c) Notwithstanding anything in the Plan Administrator Agreement or this Plan to the contrary, any beneficiary of an undeliverable Distribution who does not assert an entitlement to such Distribution before ninety (90) days after the late of (i) the Effective Date, and (ii) the date of the mailing of the undeliverable Distribution shall (a) forfeit its undeliverable Distribution, (b) have its remaining unpaid Claim disallowed and released, and (c) be forever barred from asserting such Claim against the Debtor, the USEY Estate, the Plan Administrator and each of their respective professionals, representatives, agents and employees.

(d) If any party fails to provide the Debtor or the Plan Administrator with a requested taxpayer identification number within sixty (60) days of the date of mailing of such request, such failure shall (i) be deemed a waiver of such party's right to Distributions under this Plan, (ii) result in such party's remaining unpaid Claim being disallowed and released, and (iii) result in such party being forever barred from asserting any such Claim against the Debtor, the USEY Estate, the Plan Administrator and each of their respective professionals, representatives, agents and employees. Proceeds of the liquidation of the USEY Estate that would have been distributed to such a party shall be distributed to other Holders of Allowed Claims in accordance with the terms of this Plan.

6.6     *De Minimis Distribution Provisions*

Notwithstanding anything to the contrary contained in this Plan, the Plan Administrator shall not be required to distribute, and shall not distribute, Cash to the Holder of an Allowed Claim if the amount of Cash to be distributed on account of such Claim is less than $50.00. Any Holder of an Allowed Claim on account of which the amount of Cash to be distributed is less than $50.00 shall have such Claim disallowed and released and shall be forever barred from asserting any such Claim against USEY, the Plan Administrator or any of their respective property. Any Cash not distributed pursuant to this provision shall be placed in the Unsecured Distribution Fund, free of any restrictions thereon, pending a final Distribution or disposition pursuant to the terms hereof.

6.7    *Disputed Claims*

No Distribution shall be made on account of a Disputed Claim, even if a portion of the Claim is not disputed, unless and until such Disputed Claim becomes an Allowed Claim and the amount and nature of such Allowed Claim is determined by a Final Order, by a stipulation between USEY and the Holder of the Claim that is executed prior to the Effective Date and that has been approved by the Bankruptcy Court, or by a stipulation between the Plan Administrator and the Holder of the Claim that is executed after the Effective Date. No Distribution shall be made on account of a Disallowed Claim at any time.

6.8    *Prosecution of Objections to Claims*

After the Effective Date, the Plan Administrator shall have the exclusive authority to File, settle, compromise, withdraw or litigate to judgment objections to any Claims, and may settle or compromise any Disputed Claim without the approval of the Bankruptcy Court. All Disputed Claims shall be determined, resolved or adjudicated in the manner in which such Claims would have been determined, resolved or adjudicated if the Chapter 11 Case had not been commenced, unless USEY or the Plan Administrator, as the case may be, by its election, choose to determine, resolve or adjudicate in the Bankruptcy Court any Disputed Claims arising in the Chapter 11 Case.

6.9    *Bar Date for Objections to Claims*

Unless a different time is set by a Final Order of the Bankruptcy Court, all objections to Claims must be Filed by the Claims Objection Deadline or the Administrative Claims Objection Deadline, as the case may be; provided, however, that no such objections may be Filed against any Claim after the Bankruptcy Court has determined that such a Claim is an Allowed Claim unless the order which allows such Claim(s) is vacated, modified or reversed, on appeal or otherwise, or reserves the right to assert subsequent objections. The failure by any party in interest, including USEY, to object to any Claim prior to the commencement of the Confirmation Hearing shall not be deemed a waiver of the right of any such party's right to object thereafter to such Claim, in whole or in part, or to thereafter seek estimation of such Claim for any purpose.

6.10    *Claims Filed After the Confirmation Date*

Any Claim Filed after the Confirmation Date, other than Claims for Professional Fees, Administrative Claims, Claims Filed in response to amendments to the Schedules that were not required to be Filed prior to the Confirmation Date, or Rejection Claims that were not required to be Filed prior to the Confirmation Date, shall be deemed disallowed and expunged without any action on the part of the Plan Administrator, unless the post-Confirmation Date filing of such Claim has been authorized by a Final Order and the filing of such Claim is in compliance with such order. In the event of a post-Confirmation Date filing that is duly authorized and timely, the Plan Administrator shall have until (a) the date set forth in the Final Order for objecting to such Claim, (b) the later of one hundred and eighty (180) days following the Effective Date or forty-five (45) days following the date on which the Claim was Filed, or (c) such later date as may be requested for cause shown and authorized by a Final Order to object to such Claim.

6.11    *Amendment to Claims After the Confirmation Date*

After the Confirmation Date, a Claim may not be amended without the authorization of the Bankruptcy Court.  Even with such Bankruptcy Court authorization, a Claim may be amended by the Holder of such Claim solely to decrease, but not to increase, the amount or priority.  Unless otherwise provided herein, any amended Claim that is Filed after the Confirmation Date that does not comply with the terms herein shall be deemed disallowed and expunged without any action on the part of the Plan Administrator.

6.12    *Direction to Parties*

From and after the Confirmation Date, USEY or the Plan Administrator may apply to the Bankruptcy Court for an order directing any necessary party to execute or deliver, or to join in the execution or delivery, of any instrument required to effect a transfer of property required under this Plan, and to perform any other act, including the satisfaction of any Lien, that is necessary for the consummation of this Plan, pursuant to section 1142(b) of the Bankruptcy Code.

6.13    *Setoffs and Recoupments*

USEY or the Plan Administrator may, to extent permitted under applicable law, setoff or recoup against any Allowed Claim and the Distribution on account of such Allowed Claim (before any Distribution is made on account of such Claim), the claims, rights and Causes of Action of any nature that USEY or the Plan Administrator may hold against the Holder of such Allowed Claim; provided however, that neither the failure to effect a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or a release by USEY or the Plan Administrator of any such claims, rights and Causes of Action that USEY or the Plan Administrator may possess against such Holder.

6.14    *No Recourse*

No Holder of any Disputed Claim that becomes an Allowed Claim in any applicable Class shall have recourse against the disbursing agent, USEY, the Plan Administrator or any other Holder of an Allowed Claim or any of their respective professionals, consultants, agents, advisors, officers, directors or members or their successors or assigns, or any of their respective property, if the Cash allocated to such Class and not previously distributed is insufficient to provide a Distribution to such Holder in the same proportion to that received by other Holders of Allowed Claims in such Class.  However, nothing in this Plan shall modify any right of a Holder of a Claim under section 502(j) of the Bankruptcy Code.

6.15    *Manner of Payment Under Plan*

At the option of USEY or the Plan Administrator, as the case may be, any Distribution to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

6.16 *No Distribution in Excess of Allowed Amount of Claim*

Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim shall receive in respect of any such Claim any Distribution in excess of the Allowed amount of such Claim.

## ARTICLE VII
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND EFFECTIVE DATE OF THE PLAN

7.1 *Condition Precedent to Confirmation*

It shall be a condition to Confirmation of this Plan that all provisions, terms and conditions of this Plan shall have been approved in the Confirmation Order or waived pursuant to the provisions of section 7.3 below.

7.2 *Conditions Precedent to the Occurrence of the Effective Date*

Unless otherwise waived pursuant to the provisions of section 7.3 below, the following are conditions to the occurrence of the Effective Date:

(a) the Confirmation Order shall have been approved by the Bankruptcy Court and duly entered on the docket for the Chapter 11 Case by the Clerk of the Bankruptcy Court, shall not have been modified without the consent of USEY, shall not be subject to a pending motion Filed pursuant to section 1144 of the Bankruptcy Code and shall have become a Final Order;

(b) there shall not be in effect any order, law or regulation staying, restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by this Plan; and

(c) all other actions and documents necessary to implement the provisions of this Plan on the Effective Date shall have been, respectively, effected or duly executed and delivered.

7.3 *Waiver of Conditions*

USEY may waive the condition precedent to Confirmation of this Plan set forth in section 7.1 above and the conditions precedent to occurrence of the Effective Date set forth in section 7.2 above, at any time, without notice, without leave or an order of the Bankruptcy Court.

7.4 *Effect of Non-Occurrence of Conditions Precedent to the Effective Date*

If the conditions precedent to occurrence of the Effective Date have not been satisfied or waived in accordance with this Article VII on or before the first Business Day that is more than sixty (60) days after the Confirmation Date or by such later date as is approved by the Bankruptcy Court after notice and a hearing, then on a motion by USEY made, prior to the time that all of the conditions precedent have been satisfied or waived, the Bankruptcy Court may vacate the Confirmation Order and the Confirmation Order shall be of no force and effect. Notwithstanding the foregoing, the Confirmation Order shall not be vacated if all of the

conditions to the occurrence of the Effective Date set forth in this Article VII are either satisfied or waived, in accordance with the terms hereof, prior to the entry by the Bankruptcy Court of an order granting the relief requested in such motion.

If the Confirmation Order is vacated, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall: (a) constitute a waiver or a release of any Claims by or against USEY or any Interests in USEY; (b) prejudice in any manner the rights of USEY; or (c) constitute an admission, an acknowledgement, an offer or an undertaking by USEY in any respect.

## ARTICLE VIII
## EFFECT OF CONFIRMATION

8.1    *Binding Effect*

On and after the Confirmation Date, and subject to the occurrence of the Effective Date, the provisions of this Plan shall bind any Holder of a Claim against, or Interests in, USEY and their respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under this Plan, whether or not such Holder has voted to accept this Plan, and whether or not such Holder will receive a Distribution.

8.2    *Preservation of Causes of Action*; *Standing of the Plan Administrator*

Except as otherwise provided in this Plan or in any contract, instrument, release, indenture or other agreement entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Plan Administrator shall retain and may exclusively enforce any Claims, rights and Causes of Action, including all Causes of Action under chapter 5 of the Bankruptcy Code, that USEY or the USEY Estate may hold against any Person or Entity. The Plan Administrator may pursue such retained claims, rights or Causes of Action, as appropriate, in accordance with the best interests of Creditors.

## ARTICLE IX
## RELEASES, EXCULPATION AND INJUNCTION
## AGAINST INTERFERENCE WITH THE PLAN

9.1    *Releases*

**In consideration of the contributions of certain parties to the Chapter 11 Case, this Plan provides for certain waivers, exculpations, releases and injunctions.**

(a) ***Releases by the Debtor and the Plan Administrator as the successor to the Debtor under this Plan.*** *Except as otherwise provided in this Plan or the Confirmation Order, as of the Effective Date, for good and valuable consideration including but not limited to the service of the D&O Released Parties in facilitating the reorganization of the Debtor, each of the Debtor and the Plan Administrator as the successor to the Debtor under this Plan hereby irrevocably and absolutely releases all D&O Released Parties from any and all Claims and Causes of Actions that the Debtor or the Plan Administrator would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any*

*Claim or Interest or other Entity or Person, based in whole or in part upon any act of omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date arising out of or in any way related to the Debtor, the Plan Administrator or the Chapter 11 Case; provided, however, that there shall be no such release on account of Claims or liabilities in respect of any contractual obligation owed by such Entity or Person to the Debtor or the Plan Administrator; provided, further, that the foregoing provisions of this section 9.1(a) shall have no effect on the liability of any of the D&O Released Parties for gross negligence, willful misconduct, fraud or criminal conduct as determined by a Final Order.*

(b) **Releases by Holders of Claims.** *Except as otherwise provided in this Plan or the Confirmation Order, on and after the Effective Date, in exchange for their Distributions, each Holder of a Class 3 General Unsecured Claim who (i) has voted to accept this Plan or abstained from voting and (ii) has not opted out from the release provided herein shall be deemed to have released irrevocably and absolutely each of the D&O Released Parties from any and all claims or causes of action based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date arising out of or in any way related to the Debtor, the Plan Administrator or the Chapter 11 Case; provided, however, that the foregoing provisions of this section 9.1(b) shall have no effect on the liability of the D&O Released Parties for gross negligence, willful misconduct, fraud or criminal conduct as determined by a Final Order.*

9.2     *Exculpation*

*The Debtor, the Plan Administrator, the D&O Released Parties and each of the foregoing Entities' or Persons' respective members, partners, officers, directors, employees and agents (including any attorneys, accountants, financial advisors, investment bankers and other representatives or professionals retained by such Entities or Persons) (collectively, the "Exculpated Parties"), and the property of each of the foregoing Entities or Persons shall not have and shall not incur liability to any Holder of a Claim or Interest for any action or omission arising out of or in connection with the Debtor's restructuring or the Chapter 11 Case, including without limitation the commencement of the Chapter 11 Case, the negotiation, execution and performance of this Plan, the Disclosure Statement, the solicitation of votes for and the pursuit of Confirmation of this Plan, the Effective Date of this Plan, the consummation of this Plan or the administration of this Plan or the property to be distributed under this Plan; provided, however, that the foregoing provisions of this section 9.2 shall have no effect on the liability of any of the Exculpated Parties for gross negligence, willful misconduct, fraud or criminal conduct as determined by a Final Order (collectively, the "Exculpated Acts"). The Exculpated Parties by this section 9.2 shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under and in connection with this Plan.*

*The Plan Administrator shall, from and after the Effective Date, indemnify, hold harmless and reimburse (on an as-incurred basis) each of the Exculpated Parties and the property of each of the Exculpated Parties, from, against and for any and all losses, claims, damages, liabilities, costs and/or expenses (collectively, the "Damages") arising from, related to or that are in any manner connected with any Exculpated Act, including without limitation, any Damages arising or resulting from or that are in any manner connected with (i) any cause of action, suit, investigation or any other proceeding and (ii) the defense of any Exculpated Person (or the*

*involvement or participation of any Exculpated Person) in any cause of action, suit, investigation or any other proceeding.*

9.3     *Injunction*

*Except as otherwise provided in this Plan or the Confirmation Order, the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, directly, derivatively or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released or exculpated pursuant to this Plan, including without limitation the claims and causes of action released in sections 9.1 and 9.2 hereof.*

9.4     *Discharge*

Pursuant to section 1141(d)(3) of the Bankruptcy Code, Confirmation shall not discharge any of the Claims against USEY; provided, however, that no Claim Holder may on account of such Claim seek to receive any payment or other treatment from, or seek recourse against USEY or the Plan Administrator or their respective property, except as expressly provided herein.

**ARTICLE X**
**RETENTION OF JURISDICTION**

10.1    *General Scope of Jurisdiction*

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, this Plan, the Confirmation Order, the Plan Administrator Agreement and the Chapter 11 Case to the fullest extent permitted by law, including without limitation such jurisdiction as is necessary to ensure that the purposes and intent of this Plan are carried out.

10.2    *Claims and Causes of Action*

The Bankruptcy Court shall retain jurisdiction (a) to classify, resolve objections to, determine the allowance or disallowance, or estimate pursuant to section 502(c) of the Bankruptcy Code all Claims against, and Interests in, USEY and (b) to adjudicate and enforce all Causes of Action owned by USEY or the Plan Administrator.

10.3    *Specific Jurisdiction*

Without in any way limiting the scope of the Bankruptcy Court's retention of jurisdiction over the Chapter 11 Case as otherwise set forth herein, the Bankruptcy Court shall retain jurisdiction for the following specific purposes:

(a)  to hear and determine any applications or motions pending on the Effective Date for the rejection, assumption or assumption and assignment of any executory contract and to hear and determine, and, if need be, the allowance or disallowance of Claims resulting therefrom;

(b)  to hear and determine any motion, adversary proceeding, application, contested matter, and other litigated matter arising in or related to the Chapter 11 Case pending on or commenced after the Confirmation Date;

(c)  to ensure that Distributions to Holders of Allowed Claims are accomplished as provided herein;

(d)  to hear and determine objections to Claims, including ruling on any and all motions to estimate Claims that are Filed pursuant to Article VI hereof;

(e)  to allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Interests;

(f)  to enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(g)  to enter and enforce any order for the sale of Assets pursuant to sections 363, 1123 or 1146(a) of the Bankruptcy Code;

(h)  to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the consummation, implementation or enforcement of this Plan, the Confirmation Order or any other order of the Bankruptcy Court;

(i)  to hear and determine any application to modify this Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(j)  to hear and determine any and all applications for allowances and payment of Professional Fees and the reasonableness of any Professional Fees authorized to be paid or reimbursed under the Bankruptcy Code or this Plan for periods ending on or before the Effective Date;

(k)  to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of this Plan, the Plan Administrator Agreement, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(l)  to take any action and issue such orders as may be necessary to construe, enforce, implement, execute and consummate this Plan or maintain the integrity of this Plan following consummation of this Plan;

(m)  to hear and determine other matters and for such other purposes as may be provided in the Confirmation Order;

(n) to hear and determine all matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code Filed, or to be Filed, with respect to tax returns for any and all applicable periods);

(o) to issue such orders in aid of execution of this Plan as may be authorized by section 1142 of the Bankruptcy Code;

(p) to adjudicate all claims or controversies to a security or ownership interest in the Assets or in any proceeds thereof;

(q) to resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in Article IX hereof and to enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

(r) to consider and act on the compromise and settlement of any Claim against or Cause of Action by or against USEY arising under or in connection with this Plan;

(s) to determine such other matters or proceedings as may be provided for under the Bankruptcy Code, the Bankruptcy Rules, other applicable law, this Plan or in any order or orders of the Bankruptcy Court, including but not limited to the Confirmation Order or any order which may arise in connection with this Plan or the Confirmation Order;

(t) to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code;

(u) to recover all Assets, wherever located; and

(v) to enter a Final Decree closing the Chapter 11 Case.

10.4    *Failure of Bankruptcy Court to Exercise Jurisdiction*

If the Bankruptcy Court abstains from exercising, declines to exercise, or is otherwise without jurisdiction over any matter arising out of the Chapter 11 Case, including the matters set forth in this Article X, this Article X shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

### ARTICLE XI
### MISCELLANEOUS PROVISIONS

11.1    *Revocation and Withdrawal of this Plan*

USEY reserves the right to revoke or withdraw this Plan at any time before entry of the Confirmation Order.  If USEY revokes or withdraws this Plan prior to the Confirmation Hearing, or if Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed to be null and void as to the USEY Estate.  In such event, nothing contained in this Plan or in any document relating to this Plan shall be deemed to constitute an admission of validity, waiver or

release of any Claims by or against USEY or any Person or any Entity or to prejudice in any manner the rights of USEY or any Person or any Entity in any proceeding involving USEY.

### 11.2 *Governing Law*

Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, notwithstanding any conflicts of law principles, rules or laws to the contrary.

### 11.3 *Successors and Assigns*

The rights, benefits and obligations of any Person or Entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the heir, executor, administrator, successor or assign of such Person or Entity.

### 11.4 *Payment of Statutory Fees*

On the Effective Date, and thereafter, as may be required until the entry of a Final Decree, USEY or the Plan Administrator, as the case may be, shall pay all fees payable pursuant to section 1930 of Title 28 of the United States Code (the "UST Fees"). The UST Fees are solely payable out of the Plan Fund and the Unsecured Distribution Fund. In addition, the Plan Administrator shall file post-confirmation quarterly reports in conformity with the U.S. Trustee guidelines until the entry of a Final Decree.

### 11.5 *Substantial Consummation*

On the Effective Date, this Plan shall be deemed substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 11.6 *Amendments*

This Plan may be amended, modified, or supplemented by USEY or the Plan Administrator in the manner provided in section 1127 of the Bankruptcy Code or as otherwise permitted under applicable law without additional disclosure pursuant to section 1125 of the Bankruptcy Code. In addition, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of Holders of Claims or Interests under this Plan, USEY or the Plan Administrator may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of this Plan.

### 11.7 *Term of Injunctions or Stays*

Unless otherwise provided in this Plan or an applicable order of the Bankruptcy Court, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the Effective Date.

11.8    *Section 1146 Exemption*

Pursuant to section 1146(a) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale or assignments executed in connection with any disposition of the Assets contemplated by this Plan (including real and personal property) shall not be subject to any stamp, real estate transfer, mortgage recording sales, use or similar tax.

11.9    *Compliance with Tax Requirements*

In connection with this Plan, to the extent required by law, USEY, the Plan Administrator or any agent thereof making Distributions shall deduct any federal, state or local withholding taxes from the Distributions and shall remit such taxes to the appropriate Governmental Unit on a timely basis. All Holders of Allowed Claims shall be required to provide any information reasonably requested in writing to effect the withholding of such taxes, and USEY, the Plan Administrator or any disbursement agent thereof may withhold any Distribution absent the provision of such information or further order of the Bankruptcy Court. USEY, the Plan Administrator and or any agent thereof shall reasonably cooperate with Claim Holders in demonstrating an exemption from any applicable withholding taxes. If the Holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirement of any Governmental Unit within sixty (60) days after the date of the first written notification by USEY, the Plan Administrator or any disbursement agent to the Holder of the Claim of the need for such information, then such Holder's Distribution shall be treated as an unclaimed Distribution in accordance with section 6.5 hereof.

11.10    *Further Actions*

Each of USEY and the Plan Administrator shall be authorized to execute, deliver, file or record such documents, contracts, instruments, releases and other agreements and take such other action as may be necessary to effectuate and further evidence the terms and conditions of this Plan.

11.11    *Further Assurances*

USEY, the Plan Administrator and all Holders of Claims and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

11.12    *Severability of Plan Provisions*

If, prior to entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of USEY, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then shall be applicable as altered or interpreted. Notwithstanding any such holding, alternation, or

interpretation, the remainder of the terms of this Plan shall remain in full force and effect and in no way shall be affected, impaired or invalidated by such holding, alternation or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 11.13  *Service of Documents*

Any pleading, notice or other document required by this Plan to be served on or delivered to USEY or the Plan Administrator shall be sent by first class mail, postage prepaid or reliable overnight courier (e.g. Federal Express) to each of the following:

<u>USEY or the Plan Administrator</u>:

> U.S. Energy Systems, Inc.
> 40 Tower Lane
> Avon, Connecticut 06001
> Attn:  Richard J. Augustine
>
> -with copies to-
>
> Hunton & Williams LLP
> 200 Park Avenue
> New York, New York 10166
> Attn:    Peter S. Partee, Esq.
>              Scott H. Bernstein, Esq.
>
> -and-
>
> Riverfront Plaza, East Tower
> 951 East Byrd Street
> Richmond, Virginia 23219
> Attn:  Michael G. Wilson, Esq.

<u>The United States Trustee</u>:

> Office of the United States Trustee for the
> Southern District of New York
> 33 Whitehall Street
> New York, New York 10004
> Attn:  Richard C. Morrissey, Esq.

### 11.14  *Notice of Effective Date*

No later than five (5) calendar days after the occurrence of the Effective Date, the Plan Administrator shall File a notice of the occurrence of the Effective Date and mail such a notice via first class mail, postage prepaid, to all parties that Filed a request to receive notices pursuant to Bankruptcy Rule 2002 in the Chapter 11 Case.

11.15  *Filing of Additional Documents*

On or before the Effective Date, USEY or the Plan Administer may File such agreements and documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

## ARTICLE XII
## REQUEST FOR CONFIRMATION

USEY requests confirmation of this Plan under subsections (a) and (b) of section 1129 of the Bankruptcy Code.

**U.S. ENERGY SYSTEMS, INC.**


By:  ____*/s/ Richard Augustine*_____
      Name: Richard Augustine
      Tile:    Chief Accounting Officer

67544.000015 EMF_US 27606576v6

**EXHIBIT 1**

**PLAN ADMINISTRATOR AGREEMENT**

**PLAN ADMINISTRATOR AGREEMENT**

**BETWEEN**

**U.S. ENERGY SYSTEMS, INC.**

**AND**

**RICHARD J. AUGUSTINE**

**DATED AS OF _____ __, 2010**

# TABLE OF CONTENTS

ARTICLE I  ACCEPTANCE OF POSITION; EFFECTIVE DATE ...................................... 1
    Section 1.1    Acceptance .............................................................................. 1
    Section 1.2    Effective Date ......................................................................... 1

ARTICLE II  OBLIGATIONS OF THE PLAN ADMINISTRATOR .................................... 1
    Section 2.1    Compliance with Plan ............................................................ 1
    Section 2.2    Transactions with Related Persons and Entities .................... 2
    Section 2.3    Treatment of Accounts ........................................................... 2
    Section 2.4    Use of Assets .......................................................................... 2
    Section 2.5    Books, Records and Tax Returns ............................................ 2
    Section 2.6    Reports to be Filed by the Plan Administrator ....................... 2
    Section 2.7    Final Decree ........................................................................... 2
    Section 2.8    No Other Duties ..................................................................... 2

ARTICLE III  POWERS AND RIGHTS OF THE PLAN ADMINISTRATOR ..................... 3
    Section 3.1    Powers and Rights of the Plan Administrator ........................ 3

ARTICLE IV  THE PLAN ADMINISTRATOR ........................................................ 3
    Section 4.1    Resignation; Death or Removal .............................................. 3
    Section 4.2    Compensation ......................................................................... 3
    Section 4.3    First Priority Lien on Assets .................................................. 3
    Section 4.4    Reliance by Plan Administrator .............................................. 4
    Section 4.5    Exculpation and Indemnification of the Plan Administrator
                        Exculpated Parties ................................................................. 4
    Section 4.6    Identification of Beneficiaries ................................................ 5

ARTICLE V  TERMINATION ................................................................................ 5
    Section 5.1    Termination ............................................................................. 5

ARTICLE VI  MISCELLANEOUS PROVISIONS .................................................... 6
    Section 6.1    Descriptive Headings ............................................................. 6
    Section 6.2    Amendment Waiver and Modification ................................... 6
    Section 6.3    Governing Law ....................................................................... 6
    Section 6.4    Counterparts; Effectiveness ................................................... 6
    Section 6.5    Severability; Validity ............................................................. 6
    Section 6.6    Relationship to Plan ............................................................... 6
    Section 6.7    Retention of Jurisdiction ........................................................ 6
    Section 6.8    No Third Party Beneficiaries ................................................. 6
    Section 6.9    Successors and Assigns .......................................................... 7

# PLAN ADMINISTRATOR AGREEMENT

This Plan Administrator Agreement (the "Agreement") is made this __<sup>th</sup> day of _____ 2010, by and among U.S. Energy Systems, Inc. (the "Debtor"), and Richard J. Augustine (the "Plan Administrator," and together with the Debtor, the "Parties"). Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the *First Amended Chapter 11 Plan of U.S. Energy Systems, Inc.*, dated _____ __, 2010, as the same may be amended, modified or supplement from time to time (the "Plan").

## RECITALS

WHEREAS, on January 9, 2008, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, §§ 101-1532 (as may be amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court");

WHEREAS, on _____ __, 2010, the Debtor filed the Plan with the Bankruptcy Court;

WHEREAS, on _____ __, 2010, the Bankruptcy Court entered an order confirming the Plan;

NOW, THEREFORE, in consideration of the foregoing and the covenants and agreements set forth herein, the Parties hereto agree as follows:

## ARTICLE I
## ACCEPTANCE OF POSITION; EFFECTIVE DATE

Section 1.1    Acceptance.  Richard J. Augustine (a) accepts employment as the Plan Administrator and (b) agrees to observe and perform all duties and obligations imposed upon the Plan Administrator under this Agreement, the Plan and orders of the Bankruptcy Court.

Section 1.2    Effective Date.  This Agreement shall be effective as of the Effective Date of the Plan.

## ARTICLE II
## OBLIGATIONS OF THE PLAN ADMINISTRATOR

Section 2.1    Compliance with Plan.  The Plan Administrator agrees to carry out, observe and perform all duties and obligations imposed by the Plan, orders of the Bankruptcy Court and applicable law, including causing the payment of Distributions and other payments in accordance with the terms and conditions of the Plan, this Agreement and orders of the Bankruptcy Court.  All Distributions and other payments that are made in accordance with the terms and conditions of the Plan, this Agreement and orders of the Bankruptcy Court are solely payable out of the Plan Fund and the Unsecured Distribution Fund pursuant to the terms of the Plan.

Section 2.2    Transactions with Related Persons and Entities.  Notwithstanding any other provisions of this Agreement, the Plan Administrator shall not knowingly, directly or indirectly, sell or otherwise transfer all or any part of the Assets of the USEY Estate to, or contract, with, (a) any relative of, Person or Entity employed by or agent of (acting in their individual capacities) the Plan Administrator or (b) any Person  or Entity of which the Plan Administrator or any employee or agent of the Plan Administrator is an affiliate by reason of being a trustee, director, officer, partner or direct or indirect beneficial owner of five percent (5%) or more of the outstanding capital stock, shares or other equity interest of such Persons or Entities unless, in each such case, such transaction is approved by the Bankruptcy Court after full disclosure of such interest or affiliation.

Section 2.3    Treatment of Accounts.  For purposes of this Agreement, unless otherwise ordered by the Bankruptcy Court, the Plan Administrator may pool for investment purposes any Cash which may or which is required to be segregated or placed into separate escrows, funds or accounts under the Plan or this Agreement; provided, however, that the Plan Administrator shall treat such funds as segregated accounts in the Plan Administrator's books and records.  In addition, notwithstanding any requirement that Distributions to any Holder of an Allowed Claim be made from a specified escrow, fund or account, disbursements may be made as a single aggregate to such Holder of an Allowed Claim; provided, further, that the Plan Administrator shall treat the funds so distributed as having been distributed from the appropriate escrow, fund or account in the Plan Administrator's books and records.

Section 2.4    Use of Assets.  All Cash or other property held or collected by the Plan Administrator shall be used solely for the purposes contemplated by the Plan and this Agreement.

Section 2.5    Books, Records and Tax Returns.  The Plan Administrator shall maintain books and records and prepare and file such tax forms and returns as are required to be filed by the Debtor under applicable law.

Section 2.6    Reports to be Filed by the Plan Administrator.  At least once each calendar year, the Plan Administrator shall File with the Bankruptcy Court a report covering the immediately preceding calendar year (a) itemizing the receipt and disposition of all funds by the Plan Administrator (including all payments in respect of professionals' fees and expenses), (b) listing or summarizing all unresolved or outstanding Disputed Claims, (c) describing the status of any pending objection or other litigation with respect to the unresolved Disputed Claims, (d) setting forth the amounts (if any) of the Cash that is held by the Plan Administrator, and (e) listing the non-Cash Assets of the USEY Estate remaining to be liquidated.

Section 2.7    Final Decree.  It shall be the duty of the Plan Administrator to seek and obtain a Final Decree from the Bankruptcy Court upon the full administration of the USEY Estate.

Section 2.8    No Other Duties.  Other than the duties and obligations of the Plan Administrator specifically set forth in this Agreement, the orders of the Bankruptcy Court or under the Plan, the Plan Administrator shall have no duties or obligations of any kind with respect to the Plan Administrator's employment or position as such.

## ARTICLE III
## POWERS AND RIGHTS OF THE PLAN ADMINISTRATOR

Section 3.1    <u>Powers and Rights of the Plan Administrator</u>.    The Plan Administrator shall have all of the powers and rights conferred upon the Plan Administrator by the Plan, including but not limited to sections 5.1 and 5.2 of the Plan, and this Agreement.

## ARTICLE IV
## THE PLAN ADMINISTRATOR

Section 4.1    <u>Resignation; Death or Removal</u>.    The Plan Administrator may resign at any time upon 30 days' written notice to the Bankruptcy Court.  Any party in interest may move for the removal the Plan Administrator for cause pursuant to the terms of the Plan; <u>provided</u>, <u>however</u>, that if the Plan Administrator or any other party in interest shall object to such removal within 20 days of receiving such notice, such removal shall not be effective until approved by the Bankruptcy Court.  Notwithstanding any other provision in the Plan, upon the resignation or removal of a Plan Administrator, a Plan Administrator shall continue to serve in such capacity until such time as a successor Plan Administrator is identified and accepts the appointment on substantially the terms as the resigning or removed Plan Administrator and notice is provided to the Bankruptcy Court of such successor Plan Administrator pursuant to the terms of the Plan; <u>provided</u>, <u>however</u>, that a removed or resigning Plan Administrator shall, nevertheless, when requested in writing by the successor Plan Administrator, execute and deliver an instrument or instruments conveying and transferring to such successor Plan Administrator all of the estates, properties, rights, powers and trusts of such predecessor Plan Administrator.  Upon the death or incapacity of the Plan Administrator, the Bankruptcy Court may appoint a new Plan Administrator.  Following the acceptance of appointment by the successor Plan Administrator, the prior Plan Administrator shall have no liability for acts taken by the successor Plan Administrator or for events occurring after the appointment of the successor Plan Administrator. No successor Plan Administrator appointed pursuant to the terms of this Agreement shall in any event have any liability or responsibility for the acts or omissions of any of his or her predecessors

Section 4.2    <u>Compensation</u>.  The Plan Administrator shall be compensated for services performed by the Plan Administrator in connection with this Agreement and in carrying out the Plan at the rate of $12,000 per year.  The Plan Administrator shall maintain a descriptive log of each hour worked of each day for which compensation is sought.  The Plan Administrator shall be entitled to payment out of the Plan Fund and the Unsecured Distribution Fund on the last day of each month until all Distributions have been made under the Plan and the wind-down of the USEY Estate has been completed.  The Plan Administrator also shall be reimbursed out of the Plan Fund and the Unsecured Distribution Fund for all reasonable out-of-pocket expenses incurred by the Plan Administrator in connection with performing the duties provided hereunder and in carrying out the Plan.

Section 4.3    <u>First Priority Lien on Assets</u>.  The Plan Administrator shall be, and hereby is, granted a first-priority lien on and security interest in the Assets of the USEY Estate, the Plan Fund and the Unsecured Distribution Fund, to secure the payment of all amounts owed to, accrued or reserved on account of the Plan Administrator or to be retained by the Plan

Administrator hereunder or otherwise due under the Plan.

Section 4.4    Reliance by Plan Administrator.  The Plan Administrator may rely, and shall be fully protected in acting or refraining from acting if the Plan Administrator relies, upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that the Plan Administrator reasonably believes to be genuine and to have been signed or presented by the party or parties properly authorized to do so or, in the case of cables, telecopies and telexes, to have been sent by the proper party or parties, and the Plan Administrator may conclusively rely as to the truth of the statements and correctness of the opinions expressed therein.  The Plan Administrator may consult with counsel and other professionals with respect to matters in their respective areas of expertise, and any advice of counsel shall be full and complete authorization and protection in respect of any action taken or not taken by the Plan Administrator.  The Plan Administrator shall be entitled to rely upon the advice of such professionals in acting or failing to act, and shall not be liable for any act taken or not taken in reliance thereon.  The Plan Administrator shall have the right at any time to seek and rely upon instructions from the Bankruptcy Court concerning this Agreement, the Plan or any other document executed in connection therewith, and the Plan Administrator shall be entitled to rely upon such instructions in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon.

Persons and Entities dealing with the Plan Administrator shall look only to the Assets of the USEY Estate, the Plan Fund and the Unsecured Distribution Fund to satisfy any liability incurred by the Plan Administrator to such Person or Entity in carrying out the terms of this Agreement and the Plan, and the Plan Administrator shall have no personal obligation to satisfy any such liability, except to the extent such liability or obligation is determined by Final Order to have arisen as a result of gross negligence, willful misconduct, fraud or criminal conduct of the Plan Administrator in which case the Assets of the USEY Estate, the Plan Fund and the Unsecured Distribution Fund will not be subject to such claims or liabilities.

Section 4.5    Exculpation and Indemnification of the Plan Administrator Exculpated Parties.  From and after the Effective Date, the Plan Administrator, the Plan Administrator's employees, independent contractors, professionals, agents and representatives (collectively, the "Plan Administrator Exculpated Parties") shall be, and hereby are, exculpated by all Persons and Entities including without limitation Holders of Claims and other parties in interest, from any and all claims, causes of action and other assertions of liability arising out of the discharge of the powers and duties conferred upon the Plan Administrator by this Agreement, the Plan or any Final Order entered pursuant to or in furtherance of the Plan or this Agreement, or applicable law or otherwise, except only for actions or omissions to act only to the extent determined by Final Order to be due to the respective Plan Administrator Exculpated Parties' gross negligence, willful conduct, fraud or criminal conduct after the Effective Date.  No Claim Holder or any other party in interest will have or be permitted to pursue any claim or cause of action against the Plan Administrator Exculpated Parties for making Distributions or for implementing the provisions of the Plan and this Agreement except in cases of gross negligence, willful misconduct, fraud or criminal conduct as determined by Final Order.   The Plan Administrator shall indemnify, defend and hold harmless the Plan Administrator Exculpated Parties from and against any claims, causes of action, liabilities, obligations, damages or expenses, including attorneys' fees and costs (unless determined by Final Order to be due to the

respective Plan Administrator Exculpated Parties' own gross negligence, willful misconduct, fraud or criminal conduct after the Effective Date), to the fullest extent permitted by applicable law. Any action taken or action omitted to be taken with the approval of the Bankruptcy Court will conclusively be deemed not to constitute gross negligence, willful misconduct, fraud or criminal conduct.

Section 4.6    Identification of Beneficiaries.  In order to determine the actual names, addresses and tax identification numbers of the Claim Holders, the Plan Administrator shall be entitled to conclusively rely on the names, addresses and tax identification numbers set forth in the most recent Proof of Claim, request for Administrative Claim, pleading, notice of appearance, or written change of address Filed.  If a Claim Holder has not Filed any of the foregoing documents, the Plan Administrator shall be entitled to rely on the names, addresses and tax identification numbers reflected in the applicable Schedules or, if more recent, contained in the Debtor's records.  The Plan Administrator shall not be required to record any transfer in favor of any transferee who, in the sole discretion of the Plan Administrator, is or might be construed to be ambiguous, or create uncertainty as to who the proper Claim Holder is, and in so doing the Plan Administrator shall be fully protected and incur no liability to any Person or Entity pursuant to sections 4.4 and 4.5 hereof.  Until a transfer is in fact recorded on the books and records maintained by the Plan Administrator for the purpose of identifying the Claim Holders, the Plan Administrator, whether or not in receipt of documents of transfer or other documents relating to the transfer, may nevertheless make Distributions and send communications to Claim Holders, as though he has no notice of any such transfer, and in so doing the Plan Administrator shall be fully protected and incur no liability to any purported transferee or any other Person or Entity pursuant to sections 4.4 and 4.5 hereof.

**ARTICLE V**
**TERMINATION**

Section 5.1    Termination.  As soon as practicable after the Plan Administrator liquidates and distributes the Assets of the USEY Estate pursuant to and in accordance with the Plan and has complied with and fulfilled the Plan Administrator's obligations under this Agreement, the Plan Administrator shall, at the expense of the USEY Estate, (a) provide for the retention and storage of any books, records and files that are required to be retained under applicable law until such time as all such books, records and files are no longer required to be retained, and file a certificate informing the Bankruptcy Court of the location at which any such books, records and files are being stored, and (b) file a certification stating that the Assets of the USEY Estate have been liquidated and final Distributions have been made under the Plan.  Upon the Plan Administrator's completion of the actions specified in the preceding sentence and the entry of a Final Decree by the Bankruptcy Court, this Agreement shall terminate.

Except as otherwise specifically provided herein, after the termination of this Agreement pursuant to this Section 5.1, the Plan Administrator shall have no further duties or obligations hereunder.

## ARTICLE VI
## MISCELLANEOUS PROVISIONS

Section 6.1      Descriptive Headings.  The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of the Agreement.

Section 6.2      Amendment Waiver and Modification.  This Agreement may not be amended except by an instrument executed by the Plan Administrator and approved by order of the Bankruptcy Court.

Section 6.3      Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to the rules of conflict of laws of the State of New York or any other jurisdiction.

Section 6.4      Counterparts; Effectiveness.  This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the same agreement.  This Agreement shall become effective when each party hereto shall have received counterparts thereof signed by all the other parties hereto.

Section 6.5      Severability; Validity.  If any provision of this Agreement or the application thereof to any Person, Entity or circumstance is held invalid or unenforceable, the remainder of this Agreement, and the application of such provision to other Persons, Entities or circumstances, shall not be affected thereby, and to such end, the provisions of the Agreement are agreed to be severable.

Section 6.6      Relationship to Plan.  The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates by reference and is subject to the provisions of the Plan.  To that end, the Plan Administrator shall have full power and authority to take any action consistent with the purposes and provisions of the Plan.  In the event that the provisions of this Agreement are found to be inconsistent with the provisions of the Plan, the provisions of the Plan shall control; provided, however, that provisions of this Agreement adopted by amendment and approved by the Bankruptcy Court following substantial consummation (as such term is used in section 1127(b) of the Bankruptcy Code) of the Plan shall control over provisions of the Plan.

Section 6.7      Retention of Jurisdiction.  As provided in the Plan, the Bankruptcy Court shall retain jurisdiction over the USEY Estate to the fullest extent permitted by law, including for the purposes of interpreting and implementing the provisions of this Agreement; provided, however, that the retention of jurisdiction shall not require the retention of, or payment of compensation to, professionals employed by the Plan Administrator after the Effective Date of the Plan to be approved by the Bankruptcy Court.

Section 6.8      No Third Party Beneficiaries.  Except for the Holders of Allowed Claims, USEY and the Plan Administrator, nothing in this Agreement is intended to confer upon any Person or Entity any rights or remedies hereunder.

Section 6.9     <u>Successors and Assigns</u>.    The terms of this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

IN WITNESS WHEREOF, the Parties have either executed and acknowledged this Agreement or caused it to be executed and acknowledged on their behalf by their duly authorized officers at of the date first above written.

U.S. ENERGY SYSTEMS, INC.


By: _____
Name:
Title:



Richard J. Augustine, as Plan
Administrator



By: _____
Name:  Richard J. Augustine