Peter S. Partee, Sr.                    **Hearing Date and Time:  10/05/10 at 10:00 a.m. (NYC Time)**
Scott H. Bernstein
Robert A. Rich
HUNTON & WILLIAMS LLP
200 Park Avenue, 53rd Floor
New York, New York 10166-0136
(212) 309-1000

*Attorneys for Debtors and Debtors-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| U.S. ENERGY SYSTEMS, INC., *et al.*, | ) | Case No. 08-10054 (RDD) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF THE FIRST AMENDED CHAPTER 11 PLAN OF U.S. ENERGY SYSTEMS, INC.

---

[1] The other Debtors are U.S. Energy Overseas Investments, LLC, U.S. Energy Biogas Corp., Biogas Financial Corp., Power Generation (Suffolk), Inc., Resources Generating Systems, Inc., Suffolk Biogas, Inc., USEB Assignee, LLC, ZFC Energy, Inc., ZMG Inc., and Oceanside Energy, Inc.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT .................................................................................... 1

FACTS .......................................................................................................................... 3

ARGUMENT ................................................................................................................. 3

I.      THE DEBTOR WILL SATISFY ITS BURDEN OF PROOF UNDER SECTION
1129 OF THE BANKRUPTCY CODE ............................................................. 3

II.     THE PLAN SATISFIES THE REQUIREMENTS UNDER SECTION 1129(a)
OF THE BANKRUPTCY CODE ....................................................................... 4

     A.     11 U.S.C. § 1129(a)(1):  The Plan Complies With All of the Applicable
Provisions of the Bankruptcy Code ......................................................... 4

          (1)     11 U.S.C. § 1122:  Classification of Claims and Interests ......... 4

          (2)     11 U.S.C. § 1123:  Contents of the Plan ................................... 6

               (a)     11 U.S.C. § 1123(a)(1):  Designation of Classes of Claims
and Interests ................................................................................ 6

               (b)     11 U.S.C. §  1123(a)(2):  Classes that are Not Impaired
under the Plan .............................................................................. 7

               (c)     11 U.S.C. § 1123(a)(3):  Treatment of the Classes that are
Impaired under the Plan .............................................................. 7

               (d)     11 U.S.C. § 1123(a)(4):  Equal Treatment Within Each
Class ........................................................................................... 7

               (e)     11 U.S.C. § 1123(a)(5):  Adequate Means for
Implementation ........................................................................... 7

               (f)     11 U.S.C. § 1123(a)(6):  Prohibition on Issuance of
Nonvoting Equity Securities ....................................................... 8

               (g)     11 U.S.C. § 1123(a)(7):  The Plan's Provisions Regarding
Directors, Managers and Officers are Consistent with the
Interests of Creditors and Interest Holders and Public
Policy .......................................................................................... 9

               (h)     11 U.S.C. § 1123(b)(1):  The Plan Impairs Certain Classes
and Leaves Others Unimpaired .................................................. 9

               (i)     11 U.S.C. § 1123(b)(3)(A):  Settlement ................................... 9

               (j)     11 U.S.C. § 1123(b)(6):  Retention of Jurisdiction ................ 17

     B.     11 U.S.C. § 1129(a)(2):  The Debtor Has Complied with the Applicable
Provisions of the Bankruptcy Code ...................................................... 18

     C.     11 U.S.C. § 1129(a)(3):  The Plan Has Been Proposed in Good Faith and
Not by Any Means Forbidden by Law ................................................. 22

D.    11 U.S.C. § 1129(a)(4):  The Plan Provides that Payments by the Debtor for Services or Costs and Expenses are Subject to Court Approval as Reasonable ........................................................................................................23

E.    11 U.S.C. § 1129(a)(5): Disclosure of Identity of Proposed Plan Administrator, Compensation of Insider and Consistency of Employment of Proposed Plan Administrator with the Interests of Creditors and Interest Holders and Public Policy.......................................................................................25

F.    11 U.S.C. § 1129(a)(6):  The Plan Does Not Contain Any Rate Changes Subject to the Jurisdiction of Any Governmental Regulatory Commission..........25

G.    11 U.S.C. § 1129(a)(7):  The Plan is in the Best Interests of The Debtor's Creditors and Interest  Holders .............................................................................26

H.    11 U.S.C. § 1129(a)(8):  The Plan Has Been Accepted by the Impaired Voting Class and the Unimpaired Classes, and, as to such Classes, the Requirements of Section 1129(a)(8) Have Been Satisfied ...................................28

I.    11 U.S.C. §  1129(a)(9):  The Plan Provides for Payment in Full of Allowed Administrative Claims and Allowed Priority Claims ............................29

J.    11 U.S.C. § 1129(a)(10):  At Least One Class of Impaired Claims Has Accepted the Plan ....................................................................................................30

K.    11 U.S.C. §  1129(a)(11):  The Plan is Not Likely to Be Followed by Liquidation or the Need for Further Financial Reorganization .............................31

L.    11 U.S.C. § 1129(a)(12):  All Statutory Fees Have Been or Will be Paid ............32

M.    11 U.S.C. §§ 1129(a)(13), (a)(14), (a)(15) and (a)(16) Are Inapplicable..............33

III.    THE PLAN SATISFIES THE "CRAM DOWN" REQUIREMENTS WITH RESPECT CLASS 4 INTEREST HOLDERS BECAUSE THE PLAN DOES NOT DISCRIMINATE UNFAIRLY AND IS FAIR AND EQUITABLE......................33

A.    The Plan Does Not Discriminate Unfairly.............................................................34

B.    The Plan is Fair and Equitable ..............................................................................35

IV.    CONCLUSION.................................................................................................................36

# TABLE OF AUTHORITIES

**CASES**

*Aetna Cas. & Sur. Co. v. Clerk, United States Bankruptcy Court*
   *(In re Chateaugay Corp.)*,
   89 F.3d 942 (2d Cir. 1996) ................................................................................................ 5

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. Pshp.*,
   526 U.S. 434 (1999) ......................................................................................................... 26

*Crestar Bank v. Walker (In re Walker)*,
   165 B.R. 994 (E.D. Va. 1994) ........................................................................................ 23

*Deutsche Bank A.G., London Branch v. Metromedia Fiber Network, Inc.*
   *(In re Metromedia Fiber Network, Inc.)*,
   416 F.3d 136 (2d Cir. 2005) .................................................................................... 12, 13

*Haskell v. PWS Holding Corp. (In re PWS Holding Corp.)*,
   303 F.3d 308 (3d Cir. 2002) .......................................................................... 11, 15, 16

*Heartland Federal Savings & Loan Ass'n v. Briscoe Enter., Ltd. II*
   *(In re Briscoe Enter., Ltd. II)*,
   994 F.2d 1160 (5th Cir. 1993) ......................................................................................... 3

*In re 11,111, Inc.*,
   117 B.R. 471 (Bankr. D. Minn. 1990) ......................................................................... 34

*In re Adelphia Communications Corp.*,
   368 B.R. 140 (Bankr. S.D.N.Y. 2007) ................................................................... 12, 13

*In re Armstrong World Indus., Inc.*,
   348 B.R. 136 (Bankr. D. Del. 2006) ............................................................................... 6

*In re Bally Total Fitness of Greater New York, Inc.*,
   Case No. 07-12395 (BRL), 2007 WL 2779438
   (Bankr. S.D.N.Y. Sept. 17, 2007) ............................................................................... 15

*In re Buttonwood Partners, Ltd.*,
   111 B.R. 57 (Bankr. S.D.N.Y. 1990) ........................................................................... 34

*In re Calpine Corp.*,
   05-60200 (BRL), 2007 WL 4565223 (Bankr. S.D.N.Y. Dec. 19, 2007) ............... 13, 16

*In re Cellular Information Sys.*,
   171 B.R. 926 (Bankr. S.D.N.Y. 1994) ......................................................................... 31

*In re Conseco, Inc.*,
301 B.R. 525 (Bankr. N.D. Ill. 2003) .................................................................. 13

*In re DBSD North America, Inc.*,
419 B.R. 179 (Bankr. S.D.N.Y. 2009) ........................................................... 13, 14

*In re Drexel Burnham Lambert Group*,
960 F.2d 285 (2d Cir. 1992) ............................................................................... 17

*In re Drexel Burnham Lambert Group*,
138 B.R. 723 (Bankr. S.D.N.Y. 1992) ....................................... 11, 18, 23, 27, 30

*In re Elsinore Shore Assocs.*,
91 B.R. 238 (Bankr. D. N.J. 1988) ...................................................................... 24

*In re Hoosier Hi-Reach, Inc.*,
64 B.R. 34 (Bankr. S.D. Ind. 1986) ..................................................................... 23

*In re Johns-Manville Corp.*,
68 B.R. 618 (Bankr. S.D.N.Y. 1986) ............................................................... 4, 34

*In re Kent Terminal Corp.*,
166 B.R. 555 (Bankr. S.D.N.Y. 1994) ................................................................... 4

*In re Leslie Fay Cos.*,
207 B.R. 764 (Bankr. S.D.N.Y. 1997) ..................................................... 22, 26, 27

*In re Luminent Mortgage Capital, Inc., et al.*,
Case No. 08-21389 (DK) (Bankr. D. Md. June 30, 2009) .................................... 13

*In re Martin*,
66 B.R. 921 (Bankr. D. Mont. 1986) .................................................................... 30

*In re MCorp. Fin. Inc.*, 137 B.R. 219 (Bankr. S.D. Tex. 1992) .................................... 35

*In re One Times Square Assocs. Ltd. P'ship*,
159 B.R. 695 (Bankr. S.D.N.Y. 1993) .................................................................. 31

*In re Oneida Ltd.*,
351 B.R. 79 (Bankr. S.D.N.Y. 2006) .............................................................. 13, 16

*In re Revco*,
131 B.R. 615 (Bankr. N.D. Ohio 1990) ................................................................ 31

*In re River End Apartments, Ltd.*,
167 B.R. 470 (Bankr. S.D. Ohio 1994) ................................................................. 31

*In re Specialty Equip. Cos., Inc.*,
3 F.3d 1043 (7th Cir. 1993) ......................................................................... 12, 13

*In re Spiegel, Inc.*,
   Case No. 03-11540, 2006 WL 2577825 (Bankr. S.D.N.Y. Aug. 16, 2006) .......................... 12

*In re Sun Country Dev., Inc.*,
   764 F.2d 406 (5th Cir. 1985) ................................................................................. 22

*In re Texaco, Inc.*,
   84 B.R. 893 (Bankr. S.D.N.Y. 1988) .............................................................. 11, 24

*In re Toy & Sports Warehouse, Inc.*,
   37 B.R. 141 (Bankr. S.D.N.Y. 1984) ..................................................................... 18

*In re Winn-Dixie Stores, Inc.*,
   356 B.R. 239 (Bankr. M.D. Fla. 2006) .................................................................. 15

*In re WorldCom, Inc.*,
   Case No. 02-13533 (AJG), 2003 Bankr. LEXIS 1401
   (Bankr. S.D.N.Y. Oct. 31, 2003) .................................................. 3, 11, 15, 22

*Kane v. Johns-Manville Corp.*,
   843 F.2d 636 (2d Cir. 1988) ........................................................................ 4, 22, 31

*Koelbl v. Glessing (In re Koelbl)*,
   751 F.2d 137 (2d Cir. 1984) ................................................................................. 22

*Manati Sugar Co. v. Mock*,
   75 F.2d 284 (2d Cir. 1935) ................................................................................... 22

*Olympia & York Fla. Equity Corp. v. Bank of New York (In re Holywell Corp.)*,
   913 F.2d 873 (11th Cir. 1990) ............................................................................... 5

*Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.)*,
   68 F.3d 26 (2d Cir. 1995) ..................................................................................... 11

*United Sav. Assoc. of Texas v. Timbers of Inwood Forest Assoc. Ltd. (In re Timbers of Inwood Forest Sav. Assocs. Ltd.)*,
   793 F.2d 1380 (5th Cir. 1986) .............................................................................. 35

*Universal Oil Ltd. v. Allfirst Bank (In re Millennium Seacarriers, Inc.)*,
   419 F.3d 83 (2d Cir. 2005) .................................................................................... 17

*Upstream Energy Servs. v. Enron Corp. (In re Enron Corp.)*,
   326 B.R. 497 (S.D.N.Y. 2005) ....................................................................... 15, 16

## STATUTES

11 U.S.C. § 1122(a) .................................................................................................. 5

11 U.S.C. § 1123(a)(1) ............................................................................................. 6

11 U.S.C. § 1123(a)(2) ............................................................................................. 7

11 U.S.C. § 1123(a)(3) ............................................................................................. 7

11 U.S.C. § 1123(a)(4) ............................................................................................. 7

11 U.S.C. § 1123(a)(5) ............................................................................................. 7

11 U.S.C. § 1123(a)(6) ............................................................................................. 8

11 U.S.C. § 1123(a)(7) ............................................................................................. 9

11 U.S.C. § 1123(b)(1) ............................................................................................. 9

11 U.S.C. § 1123(b)(3)(A) .................................................................................... 9, 11

11 U.S.C. § 1123(b)(6) ........................................................................................... 17

11 U.S.C. § 1125(b), (c) ......................................................................................... 19

11 U.S.C. § 1126(a), (f) and (g) ............................................................................. 20

11 U.S.C. § 1126(c) ................................................................................................ 21

11 U.S.C. § 1129(a)(1) ............................................................................................. 4

11 U.S.C. § 1129(a)(10) .......................................................................................... 30

11 U.S.C. § 1129(a)(11) .......................................................................................... 31

11 U.S.C. § 1129(a)(12) .......................................................................................... 32

11 U.S.C. § 1129(a)(13) .......................................................................................... 33

11 U.S.C. § 1129(a)(2) ............................................................................................ 18

11 U.S.C. § 1129(a)(3) ............................................................................................ 22

11 U.S.C. § 1129(a)(4) ............................................................................................ 23

11 U.S.C. § 1129(a)(5)(A)(i) ................................................................................... 25

11 U.S.C. § 1129(a)(6) ............................................................................................ 26

11 U.S.C. § 1129(a)(8) ............................................................................................ 28

11 U.S.C. § 1129(b) ................................................................................................ 21

11 U.S.C. § 1129(b)(1) ............................................................................................... 34

11 U.S.C. § 1129(b)(2)(C) ......................................................................................... 35

11 U.S.C. § 507(a)(2) ................................................................................................ 32

**OTHER AUTHORITIES**

H.R. Rep. No. 95-595 at 412 (1977) ..................................................................... 4, 18

S. Rep. No. 98-989 at 126 (1978) ......................................................................... 4, 18

## PRELIMINARY STATEMENT

1.     U.S. Energy Systems, Inc. (the "Debtor"), one of the debtors and debtors-in-possession in the above-captioned chapter 11 cases (together with the Debtor, the "Debtors"), submits this Memorandum of Law in support of Confirmation of the *First Amended Chapter 11 Plan of U.S. Energy Systems, Inc.* [Docket No. 893] (as amended, modified or supplemented from time to time, the "Plan"), pursuant to section 1129 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code").[2]

2.     On August 10, 2010, after due notice and after the cancellation of the scheduled hearing, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order [Docket No. 891] (the "Disclosure Statement Approval Order") that, among other things, (i) approved the *Disclosure Statement With Respect to the First Amended Chapter 11 Plan of U.S. Energy Systems, Inc.* [Docket No. 854] (including all exhibits thereto and as amended, the "Disclosure Statement") as containing adequate information of a kind and in sufficient detail to enable a hypothetical investor of the relevant voting Class under the Plan to make an informed judgment whether to accept or reject the Plan, (ii) established September 24, 2010 at 5:00 p.m. (prevailing Eastern Time) as the deadline to vote to accept or reject the Plan (the "Voting Deadline"), and (iii) scheduled a hearing for October 5, 2010 at 10:00 a.m. (prevailing Eastern Time) to consider Confirmation of the Plan (the "Confirmation Hearing"). Thereafter, the Debtor commenced its solicitation of votes to accept or reject the Plan.

3.     As evidenced by the *Declaration of Cassandra Murray of Epiq Bankruptcy Solutions, LLC with Respect to the Methodology for the Tabulation of and Results of Solicitation*

---

[2]     Capitalized terms used herein, and not otherwise defined herein, shall have the meanings ascribed to such terms in the Plan.

*on the First Amended Chapter 11 Plan of U.S. Energy Systems, Inc.* [Docket No. 932] (the "Murray Declaration"), and the *Declaration of Robert A. Rich Certifying the Results of Voting on the First Amended Chapter 11 Plan of U.S. Energy Systems, Inc.* [Docket No. 933] (the "Rich Declaration") by the Voting Deadline, the Class of General Unsecured Claims entitled to vote on the Plan have, as a Class, voted to accept the Plan in greater numbers and amounts than required under the Bankruptcy Code without taking into the account the votes of any insiders. The table below summarizes the certified results from the Plan solicitation process as of the Voting Deadline without taking into the account the votes of any insiders:

| CLASS | TOTAL BALLOTS RECEIVED FROM NON-INSIDERS | | | |
|---|---|---|---|---|
| | Accept | | Reject | |
| | AMOUNT | NUMBER | AMOUNT | NUMBER |
| 3 | $671,655.91 (100%) | 6 (100%) | 0 (0%) | 0 (0%) |

4.     Of all the Creditors, Interest Holders and other parties in interest in the Debtor's chapter 11 case (the "Chapter 11 Case"), the Debtor received no objections to Confirmation of the Plan.

5.     For ease of presentation, in addition to this Memorandum of Law, in further support of Confirmation of the Plan, the Debtor has filed the following documents contemporaneously with this Memorandum of Law:

- o   *Proposed Findings of Fact, Conclusions of Law and Order Confirming the First Amended Chapter 11 Plan of U.S. Energy Systems, Inc.* [Docket No. 935] (the "Proposed Confirmation Order");

- o   *Declaration of Richard J. Augustine in Support of Confirmation of the First Amended Chapter 11 Plan of U.S. Energy Systems, Inc.* [Docket No. 934] (the "Augustine Declaration," and together with the Rich Declaration and the Murray Declaration, the "Supporting Declarations");

- o   the Rich Declaration; and

         o    the Murray Declaration.

6.       As discussed below and in the Supporting Declarations, and as will be further demonstrated at the Confirmation Hearing, the Plan satisfies all of the confirmation requirements of the Bankruptcy Code, including sections 1122, 1123, 1125, 1126, and 1129 of the Bankruptcy Code. Therefore, the Plan should be confirmed.

## FACTS

7.       The relevant facts regarding the Chapter 11 Case and the Plan are set forth in the Disclosure Statement, the Plan, the Supporting Declarations, and in the testimony that may be adduced at the Confirmation Hearing. These documents and the testimony that may be adduced at the Confirmation Hearing are hereby expressly incorporated by reference as if set forth fully and at length herein.

## ARGUMENT

### I. THE DEBTOR WILL SATISFY ITS BURDEN OF PROOF UNDER SECTION 1129 OF THE BANKRUPTCY CODE

8.       To obtain Confirmation of the Plan, the Debtor must demonstrate that the Plan satisfies the applicable provisions of section 1129 of the Bankruptcy Code by a preponderance of the evidence. As set forth by the Court of Appeals for the Fifth Circuit:

> The combination of legislative silence, Supreme Court holdings, and the structure of the [Bankruptcy] Code leads this Court to conclude that preponderance of the evidence is the debtor's appropriate standard of proof under both § 1129(a) and in a cramdown.

*Heartland Federal Savings & Loan Ass'n v. Briscoe Enter., Ltd. II (In re Briscoe Enter., Ltd. II)*, 994 F.2d 1160, 1165 (5th Cir. 1993). Courts in this jurisdiction follow this ruling by the Fifth Circuit. *See, e.g.*, *In re WorldCom, Inc.*, Case No. 02-13533 (AJG), 2003 Bankr. LEXIS 1401, * 136 (Bankr. S.D.N.Y. Oct. 31, 2003) ("A debtor, as the proponent of the Plan, bears the burden of proof under section 1129 of the Bankruptcy Code. A debtor must meet this burden by a

preponderance of the evidence"); *In re Kent Terminal Corp.*, 166 B.R. 555, 561 (Bankr. S.D.N.Y. 1994) ("Notwithstanding this time-sensitive evidentiary burden, the final burden of proof at both the relief from stay and confirmation hearings remains a preponderance of the evidence"). Through filings with the Court and testimonial evidence that may be adduced at the Confirmation Hearing, the Debtor will demonstrate, by a preponderance of evidence, that all of the subsections of section 1129 of the Bankruptcy Code, other than subsection (a)(8) of section 1129 of the Bankruptcy Code with respect to Class 4 (Allowed Interests), have been satisfied with respect to the Plan.

## II. THE PLAN SATISFIES THE REQUIREMENTS UNDER SECTION 1129(a) OF THE BANKRUPTCY CODE

### A.    11 U.S.C. § 1129(a)(1):    The Plan Complies With All of the Applicable Provisions of the Bankruptcy Code

9.    Pursuant to section 1129(a)(1) of the Bankruptcy Code, a plan must "compl[y] with the applicable provisions of [the Bankruptcy Code]."   11 U.S.C. § 1129(a)(1).   The legislative history of section 1129(a)(1) of the Bankruptcy Code explains that this provision encompasses the requirements of sections 1122 and 1123 of the Bankruptcy Code which governs classification of claims and contents of a plan, respectively.  *See*, *e.g.*, H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978); *In re Johns-Manville Corp.,* 68 B.R. 618, 629 (Bankr. S.D.N.Y. 1986), *aff'd in part, rev'd in part on other grounds*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd*, *Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988).   As demonstrated below, the Plan complies fully with the requirements of sections 1122 and 1123 of the Bankruptcy Code, as well as with all other applicable provisions of the Bankruptcy Code.

### (1)    11 U.S.C. § 1122:  Classification of Claims and Interests

10.    Section 1122 of the Bankruptcy Code, in pertinent part, provides:

(a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to other claims or interests of such class.

11 U.S.C. § 1122(a). Under this section, a plan may provide for multiple classes of claims or equity security interests as long as each claim or equity security interest within a class is substantially similar to other claims or equity security interests in that class. *See Aetna Cas. & Sur. Co. v. Clerk, United States Bankruptcy Court (In re Chateaugay Corp.)*, 89 F.3d 942, 949 (2d Cir. 1996) ("[C]lassification is constrained by two straight-forward rules: [d]issimilar claims may not be classified together; similar claims may be classified separately only for a legitimate reason"). The Plan provides for the separate classification of Claims and Interests in the Debtor. Collectively, the Plan designates three Classes of Claims and one Class of Interests based upon differences in the legal nature and/or priority of such Claims and Interests. Administrative Claims and Priority Tax Claims (collectively, the "Unclassified Claims") are not classified and are separately treated. The Classes are as follows:

- Class 1: Allowed Secured Claims

- Class 2: Allowed Priority Non-Tax Claims

- Class 3: Allowed General Unsecured Claims

- Class 4: Allowed Interests

11. In light of the foregoing classification scheme, it is indisputable that each of the Claims or Interests in each particular Class under the Plan is substantially similar to the other Claims or Interests in such Class. Accordingly, the Debtor's classification of Claims or Interests does not prejudice the rights of the Holders of such Claims and Interests. *See Olympia & York Fla. Equity Corp. v. Bank of New York (In re Holywell Corp.)*, 913 F.2d 873, 880 (11th Cir. 1990) (holding that the plan proponent is allowed considerable discretion to classify claims and equity security interests according to the facts and circumstances of the case so long as the

classification scheme does not violate priority rights or manipulate class voting). Moreover, no objection has been interposed to the classification scheme provided for in the Plan. The classification of Claims and Interests in the Plan complies with section 1122 of the Bankruptcy Code.

### (2)     11 U.S.C. § 1123:   Contents of the Plan

12.      Section 1123(a) of the Bankruptcy Code sets forth seven requirements that are applicable to the Plan.[3] As demonstrated herein, the Plan complies fully with each such requirement. Section 1123(b) of the Bankruptcy Code sets forth the permissive provisions that may be incorporated into a chapter 11 plan. Each such provision of the Plan is consistent with section 1123(b) of the Bankruptcy Code.

### (a)     11 U.S.C. § 1123(a)(1):   Designation of Classes of Claims and Interests

13.      Section 1123(a)(1) of the Bankruptcy Code requires that the Plan must designate Classes of Claims and Interests subject to section 1122 of the Bankruptcy Code. *See* 11 U.S.C. § 1123(a)(1). As discussed above, Article IV of the Plan designates four Classes of Claims and Interests subject to the requirements of section 1122 of the Bankruptcy Code. Section 1123(a)(1) of the Bankruptcy Code excludes Claims specified in sections 507(a)(2), 507(a)(3) and 507(a)(8) of the Bankruptcy Code from the classification requirement. The Unclassified Claims set forth in Article III of Plan need not be classified. *See In re Armstrong World Indus., Inc.*, 348 B.R. 136, 159 (Bankr. D. Del. 2006) (recognizing that section 1123(a)(1) of the Bankruptcy Code does not require a plan to classify classes of administrative claims and priority tax claims).

---

[3]    The requirement set forth in section 1123(a)(8) of the Bankruptcy Code is only applicable to individual debtors and, therefore, does not apply to the Plan.

Accordingly, the Plan complies with the requirements of section 1123(a)(1) of the Bankruptcy Code.

**(b)**      **11 U.S.C. § 1123(a)(2): Classes that are Not Impaired under the Plan**

14. Section 1123(a)(2) of the Bankruptcy Code requires the Plan to specify which Classes of Claims or Interests are Unimpaired under the Plan. *See* 11 U.S.C. § 1123(a)(2). Article IV of the Plan specifies that Classes 1 and 2 are Unimpaired under the Plan. Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

**(c)**      **11 U.S.C. § 1123(a)(3): Treatment of the Classes that are Impaired under the Plan**

15. Section 1123(a)(3) of the Bankruptcy Code requires that the Plan specify how the Classes of Claims or Interests that are Impaired under the Plan will be treated. *See* 11 U.S.C. § 1123(a)(3). Article IV of the Plan specifies that Classes 3 and 4 are Impaired under the Plan and specifies the treatment of Claims and Interests in those Classes. Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

**(d)**      **11 U.S.C. § 1123(a)(4): Equal Treatment Within Each Class**

16. Section 1123(a)(4) of the Bankruptcy Code requires that the Plan provide the same treatment for each Claim or Interest within a particular Class unless the Holder of such Claim or Interest agrees to less favorable treatment than other Class members. *See* 11 U.S.C. § 1123(a)(4). Under the Plan, the treatment of each Claim or Interest, in each respective Class, is the same as the treatment of each other Claim or Interest in such Class. Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

**(e)**      **11 U.S.C. § 1123(a)(5): Adequate Means for Implementation**

17. Section 1123(a)(5) of the Bankruptcy Code requires that chapter 11 plans provide adequate means for their own implementation. *See* 11 U.S.C. § 1123(a)(5). Article V of the

Plan, together with the Plan Administrator Agreement, provides adequate and proper means for implementation of the Plan, including but not limited to the appointment of a Plan Administrator to administer the terms of the Plan following substantial consummation of the Plan, to complete the full liquidation and disposal of Assets of USEY and the USEY Estate, and to complete Distributions under the Plan out of the Plan Fund and the Unsecured Distribution Fund. Other articles of the Plan set forth means for the implementation of the Plan as well, including resolution of disputed, contingent, and unliquidated Claims (Article VI), distributions under the Plan out of the Plan Fund and the Unsecured Distribution Fund (Article VI), and the continuing jurisdiction over matters arising out of or related to the Chapter 11 Case and the Plan (Article X). Accordingly, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

      (f)        **11 U.S.C. § 1123(a)(6):  Prohibition on Issuance of Nonvoting Equity Securities**

18.      Section 1123(a)(6) of the Bankruptcy Code requires that a plan for a corporate debtor provide for the inclusion in the debtor's charter of "a provision prohibiting the issuance of nonvoting equity securities" and "as to the several classes of securities possessing voting power, an appropriate distribution of such power among such classes."   11 U.S.C. § 1123(a)(6). Pursuant to, and in accordance with, Articles IV and V of the Plan, on the Effective Date, all Interests in USEY shall be indefeasibly extinguished and cancelled and the Plan Administrator shall be deemed the sole shareholder, sole director and sole officer of USEY.   The Plan Administrator shall have no power to issue equity securities.  Thus, the requirements of section 1123(a)(6) of the Bankruptcy Code are satisfied.

**(g)** **11 U.S.C. § 1123(a)(7): The Plan's Provisions Regarding Directors, Managers and Officers are Consistent with the Interests of Creditors and Interest Holders and Public Policy**

19. Section 1123(a)(7) of the Bankruptcy Code provides that chapter 11 plans must set forth provisions for the selection of directors, managers and officers that are consistent with the interests of creditors and equity security holders and public policy. *See* 11 U.S.C. § 1123(a)(7). The provisions of Article V of the Plan and the Plan Administrator Agreement regarding the manner of selection of the Plan Administrator, who will exercise sole authority of the Debtor after the Effective Date, are consistent with the interests of Creditors and Interest Holders and public policy. Other than the Plan Administrator, no other directors, managers or officers will be appointed after the Effective Date. Therefore, the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

**(h)** **11 U.S.C. § 1123(b)(1): The Plan Impairs Certain Classes and Leaves Others Unimpaired**

20. Section 1123(b)(1) of the Bankruptcy Code provides that a plan may "impair or leave unimpaired any class of claims, secured or unsecured, or of interests." 11 U.S.C. § 1123(b)(1). The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code. Article IV of the Plan specifies that Classes 3 and 4 are Impaired and Classes 1 and 2 are Unimpaired.

**(i)** **11 U.S.C. § 1123(b)(3)(A): Settlement**

21. Section 1123(b)(3)(A) of the Bankruptcy Code permits the debtor to settle or adjust any claim or interest belonging to the debtor and its estate. *See* 11 U.S.C. § 1123(b)(3)(A). Consistent with section 1123(b)(3)(A) of the Bankruptcy Code, section 9.1(a) of the Plan provides for releases by the Debtor and the Plan Administrator as the successor to the Debtor (the "Debtor Release"), section 9.1(b) of the Plan provides for releases by Holders of General Unsecured Claims (the "Third-Party Releases"), section 9.2 of the Plan contains an

exculpation provision (the "Exculpation Provision," and together with the Debtor Release and the Third-Party Releases, the "Article IX Provisions"), and section 9.3 of the Plan contains an injunction permanently enjoining Persons and Entities from pursuing Claims or Causes of Action released, subject to exculpation, or settled pursuant to the Plan (the "Injunction").

22.     The Article IX provisions are proper because, among other things, they are the product of arm's-length negotiations, have been critical to obtaining the support of various constituencies for the Plan, and are a part of the Plan that received support from the Holders of General Unsecured Claims in the voting Class. *See* Augustine Declaration, ¶ 39. These Article IX provisions were a critical prerequisite to incentive members of the USEY Estate to devote time and attention to the myriad of activities required in the Chapter 11 Case, culminating in (i) the sale of multiple businesses as going concerns, (ii) the settlement of the corporate governance litigation, and (iii) a feasible Plan that maximizes recoveries for Creditors. *See id.* at ¶ 40. The record of the Chapter 11 Case reflects the numerous consensual and substantial actions among the members of the USEY Estate in furtherance of the Debtor's liquidation efforts. Much of the value to be distributed under the Plan depended on the efforts of the beneficiaries of the Article IX Provisions, including the sales processes, settlement of the corporate governance litigation and Plan formulation. In the opinion of Richard J. Augustine, the Article IX Provisions "were a critical prerequisite to the creation of a feasible plan that maximizes recoveries for Creditors and achieves a consensus among [the Debtor's] principal constituents." *Id.* at ¶ 39.

23.     Accordingly, the Article IX Provisions are fair and equitable, are given for valuable consideration, and are the best interests of the Debtor and the Chapter 11 Case. None of the Article IX Provisions is inconsistent with the Bankruptcy Code, and thus, the requirements of

section 1123(b) of the Bankruptcy Code are satisfied. How the Article IX Provisions satisfy the applicable standards for approval are described below.

### 1. Debtor Release

24. A plan that proposes to release a debtor's claims and causes of actions is considered a settlement for purposes of satisfying section 1123(b)(3)(A) of the Bankruptcy Code. *See, e.g., Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.)*, 68 F.3d 26, 33 (2d Cir. 1995) (settlement of a debtor's causes of actions within a plan was deemed submitted for approval of the court pursuant to section 1123(b)(3)(A) and Bankruptcy Rule 9019(a)); *In re WorldCom, Inc.*, Case No. 02-13533 (AJG), 2003 Bankr. LEXIS 1401, * 143 (Bankr. S.D.N.Y. Oct. 31, 2003) (same).

25. In reviewing a plan settlement and release of a debtor's claims and causes of action pursuant to section 1123(b)(3)(A) of the Bankruptcy Code, the Court should be guided by the "reasonable business judgment" standard of Rule 9019 of the Federal Rules of Bankruptcy Procedure. *See In re WorldCom, Inc.*, Case No. 02-13533 (AJG), 2003 Bankr. LEXIS 1401 at * 116; *see also In re Drexel Burnham Lambert Group*, 138 B.R. 723, 758-59 (Bankr. S.D.N.Y. 1992) (applying cases decided under Bankruptcy Rule 9019). It is also well-established that the releases may include claims and causes of action that may be assertable on behalf of, or derivative of the rights of, the debtor including shareholder derivative actions. *See In re Texaco, Inc.*, 84 B.R. 893, 900 (Bankr. S.D.N.Y. 1988), *appeal dismissed*, 92 B.R. 38 (S.D.N.Y. 1988); *see also Haskell v. PWS Holding Corp. (In re PWS Holding Corp.)*, 303 F.3d 308, 315 (3d Cir. 2002).

26. The Debtor has proposed the Debtor Release based on its sound business judgment and submits that the Debtor Release is reasonable and easily satisfies the standard that courts generally apply when reviewing settlements. The Debtor does not believe that there are

any valuable Claims or Causes of Action against the D&O Released Parties from negligence (and a suit based on gross negligence or willful misconduct is not prohibited under the Debtor Release). *See* Augustine Declaration, ¶ 38. Further, the Debtor submits that even if Claims or Causes of Actions against the D&O Released Parties are arguably available, any litigation costs associated therewith and the likelihood of recovery would militate against pursuing them. *See id*. Accordingly, the Debtor submits that the Debtor Release is well-considered and reasonable and represents a valid exercise of the Debtor's business judgment. The Debtor Release is consistent with applicable law and precedent and represents a valid settlement of whatever Claims or Causes of Action the Debtor may have against the D&O Released Parties pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and applicable law under Bankruptcy Rule 9019 and, for these reasons, should be approved.

## 2. Third-Party Releases By Certain Claim Holders

27. In the Second Circuit and other circuits, consensual third party releases under a debtor's plan of reorganization are frequently approved. *See*, *e.g.*, *Deutsche Bank A.G., London Branch v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 142 (2d Cir. 2005) (noting that "[n]ondebtor releases may [] be tolerated if the affected creditors consent" in a case involving *non-consensual* third party releases); *In re Specialty Equip. Cos., Inc.*, 3 F.3d 1043, 1046 (7th Cir. 1993) (holding that the Bankruptcy Code did not prohibit the inclusion of consensual third-party releases in chapter 11); *In re Adelphia Communications Corp.*, 368 B.R. 140, 268 (Bankr. S.D.N.Y. 2007) ("The Seventh Circuit held in Specialty Equipment that consensual releases are permissible, and the *Metromedia* court did not quarrel with that view"); *In re Spiegel, Inc.*, Case No. 03-11540, 2006 WL 2577825, * 7 (Bankr. S.D.N.Y. Aug. 16, 2006), *appeal dismissed*, Case No. 06-civ-09835, 2007 WL 656902

(S.D.N.Y. Feb. 28, 2007), *aff'd* 269 F. App'x. 56 (2d Cir. 2008) (citing *Metromedia*, 416 F.3d at 142) (holding that nondebtor releases are acceptable if the creditors consent).

28.     Consent exists when a party votes to accept a plan.  *See*, *e.g.*, *In re Specialty Equip. Cos., Inc.*, 3 F.3d at 1047 ("[C]ourts have found releases that are consensual and non-coercive to be in accord with the strictures of the Bankruptcy Code"); *In re Adelphia Communications Corp.*, 368 B.R. at 268 (upholding releases with respect to those who voted in favor of plan); *In re Oneida Ltd.*, 351 B.R. 79, 94 (Bankr. S.D.N.Y. 2006) (holding that non-debtor releases were acceptable because all of the affected creditors had consented by affirmatively checking a box on the plan solicitation ballots indicating their willingness to grant the releases).

29.     Consent also exists when a party had an opportunity to affirmative opt out of a release but chose not to do so.  *See*, *e.g.*, *In re DBSD North America, Inc.*, 419 B.R. 179, 218-19 (Bankr. S.D.N.Y. 2009) (holding that release provision which bound holders of claims except for those who voted against the plan or who abstained and then opted out was consensual and within the scope of releases permitted in the Second Circuit); *In re Calpine Corp.*, 05-60200 (BRL), 2007 WL 4565223, * 10 (Bankr. S.D.N.Y. Dec. 19, 2007) (finding releases consensual with no unresolved objection where "[t]he Ballots explicitly stated that a vote to accept the Plan or abstain from voting without opting out of the releases each constitutes an acceptance and assent to the releases"); *In re Luminent Mortgage Capital, Inc., et al.*, Case No. 08-21389 (DK) (Bankr. D. Md. June 30, 2009) (approving plan provision providing that holders of claims that fail to make the opt out election are deemed to have consented to releases); *In re Conseco, Inc.*, 301 B.R. 525, 528 (Bankr. N.D. Ill. 2003) (holding that a release provision that bound those who

"agreed to be bound, either by voting for the Plan or choosing not to opt out of the release" to be "purely consensual" over an objection).

30.     The Debtor submits that the Third-Party Releases provided under the Plan are purely consensual.  The Plan provides that the only Holders of General Unsecured Claims who release the D&O Released Parties are those who are entitled to vote on the Plan and either (i) vote to accept the Plan or (ii) abstain from voting and do not opt out of providing the Third-Party Releases.  In both the Plan and the Disclosure Statement, the Third-Party Releases (as well as the injunction enforcing the Third-Party Releases) are italicized, and, in soliciting votes on the Plan, the Debtor sent ballots to all Holders of General Unsecured Claims entitled to vote, unambiguously providing in bold and all capital letters that such persons and entities may elect to "opt out" of providing the Third Party Releases and the effect of electing to "opt out" of the Third-Party Releases.  *See In re DBSD North America, Inc.*, 419 B.R. at 218 (finding release provisions consensual where "set off in bold font, and the ballots set forth in both capitalized and bold text the effect of consenting to the Plan or abstaining without opting out of the release").  The ballots contained a box for Holders of General Unsecured Claims to check in the event they wished to opt out of providing the Third-Party Releases.  Thus, pursuant to the Plan and the Court-approved solicitation procedures, the Third-Party Releases are purely consensual.

31.     The purely consensual Third-Party Releases are warranted because of the unique circumstances in the Chapter 11 Case, and, therefore, are consistent with Second Circuit precedent.  Indeed, there can be no dispute that the D&O Released Parties have supplied integral services without which the Debtor could have not proposed its confirmable Plan.  *See* Augustine Declaration, ¶ 40.  For the reasons described in Augustine Declaration, each of the persons and entities designated as D&O Released Parties under the Plan was responsible for assisting the

Debtor throughout the reorganization process and, as such, is an appropriate recipient of the consensual Third-Party Releases. Thus, the circumstances in the Chapter 11 Case qualify as unique and render the Third-Party Releases provided under the Plan fully consistent with applicable law. Therefore, the Court should approve the Third-Party Releases.

### 3. Exculpation

32. Courts evaluate exculpation provisions based upon a number of factors, including whether the provision is integral to the Plan and whether protection from liability was necessary for plan negotiations. *See In re Bally Total Fitness of Greater New York, Inc.*, Case No. 07-12395 (BRL), 2007 WL 2779438, * 8 (Bankr. S.D.N.Y. Sept. 17, 2007) (finding exculpation, release and injunction provisions appropriate because they were fair and equitable, necessary to successful reorganization; and integral to the plan); *Upstream Energy Servs. v. Enron Corp. (In re Enron Corp.)*, 326 B.R. 497, 501-03 (S.D.N.Y. 2005) (affirming bankruptcy court's approval of an exculpation provision where it was necessary to effectuate the plan and excluded gross negligence and willful misconduct); *In re WorldCom, Inc.*, Case No. 02-13533 (AJG), 2003 Bankr. LEXIS 1401 at * 84 (approving an exculpation provision where it "was an essential element of the Plan formulation process and negotiations"); *In re Winn-Dixie Stores, Inc.*, 356 B.R. 239, 261 (Bankr. M.D. Fla. 2006) (approving an exculpation provision where the beneficiaries made significant contributions and expected that an exculpation provision would be included in the plan).

33. Generally speaking, the effect of an appropriate exculpation provision is to set a standard of care of gross negligence or willful misconduct in future litigation for acts arising out of the restructuring. *See*, *e.g., Haskell v. PWS Holding Corp. (In re PWS Holding Corp.)*, 228 F.3d at 246-47 (reasoning that an exculpation provision did not affect third party liability but rather "set[] forth the appropriate standard of liability" for the exculpated parties); *In re Calpine*

*Corp.*, 05-60200, 2007 WL 4565223 at * 10 (finding that an exculpation provision that did not relieve any party for liability for gross negligence or willful misconduct was appropriate); *Upstream Energy Servs. v. Enron Corp. (In re Enron Corp.)*, 326 B.R. at 501 (holding that an exculpation provision was appropriate where such provision excluded gross negligence and willful misconduct).  Additionally, where a court finds that a plan has been proposed in good faith and meets the other requirements of confirmation, approval of an exculpation provision is appropriate as well, to set the standard of liability for those involved in negotiation and formulation of the plan.  *See Haskell v. PWS Holding Corp. (In re PWS Holding Corp.)*, 228 F.3d at 246-47 (observing that creditors providing services to the debtors are entitled to a "limited grant of immunity . . . for actions within the scope of their duties").  Accordingly, exculpation provisions appropriately prevent collateral attacks against parties that have made a substantial contribution to a debtor's reorganization.

34.     Here, the Exculpation Provision is vital to the Chapter 11 Case and appropriate under applicable law.  As set forth in the Augustine Declaration, the Debtor formulated the Plan after negotiating with numerous parties in good faith.  *See* Augustine Declaration, ¶ 11. Negotiation and compromise were crucial to the formulation of a feasible Plan and could not have occurred without the protection from liability that the Exculpation Provision provides to the constituents involved.  *See id.* at ¶ 39.  Further, the Exculpation Provision, including its carve-out for gross negligence and willful misconduct, is entirely consistent with established practice in this jurisdiction and others.  *See In re Oneida Ltd.*, 351 B.R. at 94 n. 22 (approving exculpation provision that, *inter alia*, covered debtors, prepetition lenders, DIP lenders, creditor committees and their members, and the respective professionals, officers, directors, employees and affiliates of each except in cases of gross negligence, willful misconduct, fraud, or criminal conduct over

an objection that was raised but "not pursue[d] at the confirmation hearing" and noting that the language "generally follows the text that has become standard in this district, is sufficiently narrow to be unexceptional").

35.     Moreover, the Exculpated Parties are among those parties the Court has deemed to be appropriate for exculpation because the Exculpated Parties are parties that have contributed substantially to the Chapter 11 Case.  The Debtor's officers and directors, and their advisors, worked tirelessly -- at times around the clock -- to formulate a consensual Plan.  For all of these reasons, the Court should approve the Exculpation Provision set forth in the Plan.

### 4.     Injunction

36.     The Injunction provision is necessary to preserve and enforce the Debtor Release, the Third-Party Releases and the Exculpation Provision, and is narrowly tailored to achieve that purpose.  Further, the injunction provision is a key component of the ultimate reorganization. *See In re Drexel Burnham Lambert Group*, 960 F.2d 285, 293 (2d Cir. 1992) (citations omitted). Thus, the Court should approve the Injunction provision to the same extent it approves the Debtor Release, the Third Party Releases, the Exculpation Provision, and the settlement, treatment and satisfaction of Claims in accordance with the provisions of the Plan.

### (j)     11 U.S.C. § 1123(b)(6):  Retention of Jurisdiction

37.     Article X of the Plan provides that, among other things, the Court shall retain jurisdiction as to all matters involving the Plan and the Claims allowance and disallowance process.  Article X of the Plan is appropriate because the Court would have otherwise had jurisdiction over all of these matters during the pendency of the Chapter 11 Case.  Moreover, case law establishes that a bankruptcy court may retain jurisdiction over the debtor or property of the estate following confirmation of a chapter 11 plan. *See Universal Oil Ltd. v. Allfirst Bank (In re Millennium Seacarriers, Inc.)*, 419 F.3d 83, 96 (2d Cir. 2005) (holding that "a bankruptcy

court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization") (internal quotation marks and citation omitted). Accordingly, the continuing jurisdiction of the Court is consistent with applicable law and therefore permissible under section 1123(b)(6) of the Bankruptcy Code.

38. Based upon the foregoing, the Plan complies fully with the requirements of sections 1122 and 1123 of the Bankruptcy Code, as well all other provisions of the Bankruptcy Code and thus satisfies the requirement of section 1129(a)(1) of the Bankruptcy Code.

**B.** **11 U.S.C. § 1129(a)(2): The Debtor Has Complied with the Applicable Provisions of the Bankruptcy Code**

39. Section 1129(a)(2) of the Bankruptcy Code requires that the plan proponent comply "with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(2). The legislative history to section 1129(a)(2) of the Bankruptcy Code reflects that this provision is intended to encompass the disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code. *See* H.R. Rep. No. 95-595 at 412 (1977); S. Rep. No. 98-989 at 126 (1978) ("Paragraph 2 of [§ 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure"); *see also In re Drexel Burnham Lambert Group*, 138 B.R. at 759 (stating that the "legislative history to § 1129(a)(2) explains that this provision embodies the disclosure and solicitation requirements under §§ 1125 and 1126"); *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984) (same). The Debtor has complied with the applicable provisions of the Bankruptcy Code, including the provisions of sections 1125 and 1126 regarding disclosure and plan solicitation.

**1.** **Compliance with 11 U.S.C. § 1125**

40. Section 1125 of the Bankruptcy Code, in pertinent part, provides:

(b)     An acceptance or rejection of a plan may not be solicited after the commencement of the case under [the Bankruptcy Code] from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information. . . .

(c)     The same disclosure statement shall be transmitted to each holder of a claim or interest of a particular class, but there may be transmitted different disclosure statements, differing in amount, detail, or kind of information, as between classes.

11 U.S.C. § 1125(b), (c).

41.     On August 9, 2010, the Court, in the Disclosure Statement Approval Order, approved the Disclosure Statement pursuant to section 1125(b) of the Bankruptcy Code as containing "adequate information" of a kind and in sufficient detail to enable hypothetical, reasonable investors typical of the Debtor's Creditors in Class 3 to make an informed judgment whether to accept or reject the Plan.  *See* Disclosure Statement Approval Order, ¶ 2.

42.     Thereafter, the Debtor commenced its solicitation of votes to accept or reject the Plan.  The manner in which votes were solicited in respect of the Plan is described in the Affidavit of Service, dated August 20, 2010 [Docket No. 917] (the "Solicitation Affidavit") prepared by Epiq Bankruptcy Solutions, LLC.  Specifically, the Solicitation Affidavit states that the Disclosure Statement (which includes as an exhibit a copy of the Plan), together with the additional solicitation materials approved by the Court in the Disclosure Statement Approval Order, were transmitted to each Creditor entitled to vote to accept or reject the Plan (the "Solicitation Package").  As set forth in the Solicitation Affidavit, certain non-voting materials approved by the Court in the Disclosure Statement Approval Order were provided to Holders of Claims and Interests that are not entitled to vote to accept or reject the Plan, in compliance with

the Disclosure Statement Approval Order. The Debtor did not solicit acceptances of the Plan by any Creditor prior to the transmission of the Solicitation Packages.

### 2.     <u>Compliance with 11 U.S.C. § 1126</u>

43.     Section 1126 of the Bankruptcy Code specifies the requirement for acceptance of a plan of reorganization. Under section 1126 of the Bankruptcy Code, only Holders of Allowed General Unsecured Claims in Class 3 that will receive or retain property under the Plan on account of such Impaired Claims may vote to accept or reject the Plan. As set forth in section 1126:

    (a)     The holder of a claim or interest allowed under section 502 of [the Bankruptcy Code] may accept or reject a plan . . .

    (f)     Notwithstanding any other provision of this section, a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required.

    (g)     Notwithstanding any other provision of this section, a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests.

11 U.S.C. § 1126(a), (f) and (g).

44.     As set forth in the Murray Declaration, in accordance with the Disclosure Statement Approval Order and section 1126 of the Bankruptcy Code, the Debtor solicited acceptances of the Plan from Holders of Allowed General Unsecured Claims against the Debtor in the sole Class of Impaired Claims that is to receive distributions under the Plan. Class 3 is the sole Impaired Class entitled to vote on the Plan. The Plan reflects that (i) Classes 1 and 2 are Unimpaired, and thus, are conclusively presumed to have accepted the Plan, and (ii) Class 4 is Impaired and the members thereof will not receive or retain any interest in property or property

under the Plan, and thus, are deemed to have rejected the Plan. Consequently, Classes 1, 2 and 4 are not entitled to vote to accept or reject the Plan. Based upon the foregoing, the Debtor has satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code as they relate to the nonvoting Classes.

45.     As to the Impaired Class of General Unsecured Claims entitled to vote to accept or reject the Plan, section 1126(c) of the Bankruptcy Code specifies the requirements for acceptance of the Plan by such a Class:

> (c)     A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c).

46.     As evidenced in the Murray Declaration, the Plan has been accepted by Creditors holding in excess of two-thirds in amount and one-half in number of the Allowed Claims voted in Class 3 against the Debtor. As provided in the Murray Declaration, 100% in number of non-insider Creditors and 100% in dollar amount of all Allowed Claims (other than Claims held by Insiders) that were voted on the Plan voted to accept the Plan.

47.     As set forth above, Holders of Allowed Class 4 Interests will receive no recoveries under, and thus are deemed to have rejected, the Plan. Nevertheless, as set forth below, pursuant to section 1129(b) of the Bankruptcy Code, the Plan may be confirmed over the deemed rejection of Class 4 because the Plan does not discriminate unfairly and is fair and equitable with respect to Class 4. *See* 11 U.S.C. § 1129(b).

48.     Based upon the foregoing, the Debtor submits that the requirements of section 1129(a)(2) of the Bankruptcy Code have been satisfied.

### C. 11 U.S.C. § 1129(a)(3): The Plan Has Been Proposed in Good Faith and Not by Any Means Forbidden by Law

49.     Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3).  The Second Circuit has defined the good-faith standard as requiring a showing that "the plan was proposed with 'honesty and good intentions' and with a 'basis for expecting that a reorganization can be effected.'"  *Kane v. Johns-Manville Corp.*, 843 F.2d at 649 (quoting *Koelbl v. Glessing (In re Koelbl)*, 751 F.2d 137, 139 (2d Cir. 1984)) (quoting *Manati Sugar Co. v. Mock*, 75 F.2d 284, 285 (2d Cir. 1935)).  "In the context of a chapter 11 plan, courts have held that a plan is proposed in good faith if there is a likelihood that the plan will achieve a result consistent with the standards prescribed under the [Bankruptcy] Code."  *In re WorldCom., Inc.*, Case No. 02-13533 (AJG), 2003 Bankr. LEXIS 1401 at *151 (internal quotation marks and citations omitted).  Moreover, "[w]here the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirement of section 1129(a)(3) is satisfied."  *In re Sun Country Dev., Inc.*, 764 F.2d 406, 408 (5th Cir. 1985) (citation omitted).  "The requirement of good faith must be viewed in light of the totality of the circumstances surrounding the establishment of a chapter 11 plan."  *In re Leslie Fay Cos.*, 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997).

50.     The Debtor, as the proponent of the Plan, has met its good faith obligation under the Bankruptcy Code.  The Chapter 11 Case was filed and the Plan was proposed with the legitimate and honest purpose of liquidating the Assets of USEY, efficiently winding-down the USEY Estate, and expeditiously making distributions to USEY's Creditors in accordance with the distribution priorities of the Bankruptcy Code.  USEY and its officers, directors, agents, attorneys and advisors, through their participation in arm's-length negotiations and preparation

of the Plan and related documents, including the Disclosure Statement, have participated in the Chapter 11 Case in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

51. Moreover, the Plan achieves two of the primary objectives underlying a chapter 11 bankruptcy -- the resolution of disputes and distribution of value to creditors for amounts owing. *See In re Hoosier Hi-Reach, Inc.*, 64 B.R. 34, 38 (Bankr. S.D. Ind. 1986) (stating that among the objectives of the Bankruptcy Code are "the expeditious resolution of disputes and speedy payment of creditors"); *see also Crestar Bank v. Walker (In re Walker)*, 165 B.R. 994, 1001 (E.D. Va. 1994) (recognizing that the "prompt payment of creditors is a primary objective of a [c]hapter 11 reorganization").

52. The Plan accomplishes these objectives by providing the means through which the Debtor may effectuate a prompt distribution to Creditors. Inasmuch as the Plan promotes the objectives and purposes of the Bankruptcy Code and has garnered the unanimous support of all of the Creditors voting on the Plan, the Plan has been filed in good faith and the Debtor has satisfied its obligations under section 1129(a)(3) of the Bankruptcy Code.

**D.  11 U.S.C. § 1129(a)(4):  The Plan Provides that Payments by the Debtor for Services or Costs and Expenses are Subject to Court Approval as Reasonable**

53. Section 1129(a)(4) of the Bankruptcy Code requires that certain professional fees and expenses paid by the plan proponent, by the debtor, or by a person receiving distributions of property under the plan, be subject to approval of the Court as reasonable. *See* 11 U.S.C. § 1129(a)(4). Section 1129(a)(4) of the Bankruptcy Code has been construed to require that all payments of professionals' fees and expenses that are made from estate assets be subject to review and approval as to their reasonableness by the Court. *See In re Drexel Burnham Lambert Group*, 138 B.R. at 760.

54.     Pursuant to the interim application procedures [Docket No. 74] established in the Chapter 11 Case and section 331 of the Bankruptcy Code, the Court has authorized and approved the payment of certain fees and expenses of professionals retained by the Debtor during the Chapter 11 Case.  All such fees and expenses, as well as all other accrued fees and expenses of retained professionals through the Effective Date, remain subject to final review by the Court for reasonableness under section 330 of the Bankruptcy Code.  In addition, pursuant to subsections (b)(3) and (b)(4) of section 503 the Bankruptcy Code, the Court must review any application for substantial contribution to ensure compliance with the statutory requirements and that the fees requested are reasonable.

55.     Section 3.2 of the of the Plan requires that all Persons and Entities seeking an award of compensation or reimbursement through the Effective Date pursuant to sections 328, 329, 330, 331 or 503(b) of the Bankruptcy Code for services rendered or reimbursement of expenses incurred through and including the Effective Date must file their final applications for allowance of compensation or reimbursement of expenses no later than the first Business Day that is forty-five (45) days after the Effective Date.

56.     The foregoing procedures for the Court's review and ultimate determination of the professionals' fees and expenses to be paid by the Debtor satisfy the requirements of section 1129(a)(4) of the Bankruptcy Code.  *See In re Elsinore Shore Assocs.*, 91 B.R. 238, 268 (Bankr. D. N.J. 1988) (holding that requirements of section 1129(a)(4) of the Bankruptcy Code are satisfied where plan provided for payment of only "allowed" administrative expenses and such payments were subject to court approval); *see also In re Texaco, Inc.*, 84 B.R. at 903 (holding that requirements of section 1129(a)(4) of the Bankruptcy Code are satisfied where final applications for payment of fees and expenses are subject to court approval).

**E.    11 U.S.C. § 1129(a)(5): Disclosure of Identity of Proposed Plan Administrator, Compensation of Insider and Consistency of Employment of Proposed Plan Administrator with the Interests of Creditors and Interest Holders and Public Policy**

57.    Section 1129(a)(5) of the Bankruptcy Code requires that (i) the plan proponent disclose the identity and affiliations of the proposed directors and officers of the reorganized debtor; (ii) that the appointment or continuance of such directors and officers be consistent with the interests of creditors and equity security holders and public policy; and (iii) that there be disclosure of the identity and the nature of the compensation of any insiders to be retained or employed by the reorganized debtor. *See* 11 U.S.C. § 1129(a)(5)(A)(i).

58.    The Debtor has complied with section 1129(a)(5) of the Bankruptcy Code because its has disclosed the identity and affiliation of the individual proposed to serve, after Confirmation of the Plan and the occurrence of the Effective Date, as the initial Plan Administrator.  The service of Richard Augustine as the initial Plan Administrator is consistent with the interests of Creditors and Interest Holders and public policy.  Indeed, the continued employment of Mr. Augustine is essential to the orderly wind-down of the USEY Estate.  Mr. Augustine is intimately familiar with the assets and liabilities of the Debtor and is best positioned to preside over the wind-down of the Debtor and the USEY Estate.  The Debtor has disclosed that there are no current insiders that will be employed or retained by the Debtor after the Effective Date other than Richard J. Augustine (the current Chief Accounting Officer of the Debtor) who will serve as the initial Plan Administrator and the Debtor has disclosed the powers and compensation of the Plan Administrator.

**F.    11 U.S.C. § 1129(a)(6):  The Plan Does Not Contain Any Rate Changes Subject to the Jurisdiction of Any Governmental Regulatory Commission**

59.    Section 1129(a)(6) of the Bankruptcy Code requires that any regulatory commission having jurisdiction over rates charges by a debtor in the operation of its business

approve any rate change provided for in the plan.  *See* 11 U.S.C. § 1129(a)(6).  This provision is inapplicable to the Debtor, which does not have rates subject to the jurisdiction of any governmental regulatory agency.

**G.**     **11 U.S.C. § 1129(a)(7):  The Plan is in the Best Interests of The Debtor's Creditors and Interest  Holders**

60.     Section 1129(a)(7) of the Bankruptcy Code requires that a plan be in the best interests of creditors and equity security interest holders.  Specifically, section 1129(a)(7) of the Bankruptcy Code provides:

> With respect to each impaired class of claims or interests - (A) each holder of a claim or interest of such class --
>
> (i) has accepted the plan; or
>
> (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date . . .

11 U.S.C. § 1129(a)(7)(A).  This section is often referred to as the best interests test.  *See In re Leslie Fay Cos.*, 207 B.R. at 787.

61.     The best interests test requires that each holder of a claim or equity security interest either accept the plan or receive or retain property having a present value, as of the effective date of the plan, not less than the amount such holder would receive or retain if the debtor were liquidated in a hypothetical liquidation under chapter 7 of the Bankruptcy Code.  *See In re Leslie Fay Cos.*, 207 B.R. at 787.

62.     Under the best interests test, the court must find that each non-accepting creditor or equity security interest holder under a chapter 11 plan will receive or retain value that is "not less than the amount that such holder would receive . . . if the debtor were liquidated."  *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. Pshp.*, 526 U.S. 434, 441-42 n. 13 (1999); *see*

*also In re Leslie Fay Cos.*, 207 B.R. at 787. The best interests test concerns individual creditors and equity security interest holders rather than classes of claims or equity security interests. *See In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. at 761.

63. Under the Plan, Classes 1 and 2 are Unimpaired and deemed to accept the Plan. The best interests test, therefore, is inapplicable to members of Classes 1 and 2. Under the Plan, Class 3 is Impaired and all of the voting members of Class 3 voted to accept the Plan. The best interests test, therefore, is inapplicable to members of Class 3. The best interests test is, however, applicable to Holders of Class 4 Interests that are Impaired and will receive no distribution of property or interest in property under the Plan, and, as a result, are deemed to have rejected the Plan.

64. Holders of Allowed Class 4 Interests, who will not receive any Distribution under the Plan, would do no better under a hypothetical dissolution of the USEY Estate under chapter 7 of the Bankruptcy Code. The value of the Assets is less than the total value of the Debtor's debts and liabilities and a chapter 7 liquidation would not increase the value of the Assets available for distribution to Creditors. The Debtor will request at the Confirmation Hearing that the Court make a finding that Allowed Interests have no value for purposes of the "best interest" test under section 1129(a)(7) of the Bankruptcy Code.

65. Based on the foregoing, the Debtor believes that Holders of Allowed Interests in the Debtor will receive equal or greater value as of the Effective Date than such Holders would receive in a liquidation under chapter 7 of the Bankruptcy Code and that the Plan therefore meets the "best interests" test provided in section 1129(a)(7) of the Bankruptcy Code. Accordingly, the Debtor submits that the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

**H.** **11 U.S.C. § 1129(a)(8): The Plan Has Been Accepted by the Impaired Voting Class and the Unimpaired Classes, and, as to such Classes, the Requirements of Section 1129(a)(8) Have Been Satisfied**

66.     Section 1129(a)(8) of the Bankruptcy Code requires that each class of impaired claims or equity security interests accept the plan. *See* 11 U.S.C. § 1129(a)(8) ("With respect to each class of claims or interests - (A) such class has accepted the plan; or (B) such class is not impaired under the plan"). Holders of Claims in Classes 1 and 2 are Unimpaired under the Plan, and, pursuant to section 1126(f) of the Bankruptcy Code, are collectively presumed to have voted to accept the Plan. Thus, the requirements of section 1129(a)(8) of the Bankruptcy Code are satisfied with respect to Classes 1 and 2.

67.     As to the Impaired Class of General Unsecured Claims entitled to vote to accept or reject the Plan, section 1126(c) of the Bankruptcy Code specifies the requirements for acceptance or rejection of the Plan by the Class of General Unsecured Claims. Class 3 is the sole Impaired Class of Claims eligible to vote on the Plan. As set forth above, the Holders of Allowed Claims in Class 3 affirmatively have voted to accept the Plan.

68.     The tabulation of votes is discussed in more detail in the Murray Declaration. As to the Unimpaired Classes and the sole Impaired and accepting Class, the requirements of section 1129(a)(8) of the Bankruptcy Code have been satisfied.

69.     As previously stated, Holders of Interests in Class 4, will not receive any distributions under the Plan and therefore are deemed to have rejected the Plan. Because the requirements of section 1129(a)(8) of the Bankruptcy Code have not been satisfied in connection with Class 4, the application of section 1129(b) of the Bankruptcy Code applies. Nonetheless, as set forth below, as to Class 4, the Plan may be confirmed under the "cram down" provisions of section 1129(b) of the Bankruptcy Code.

**I.  11 U.S.C. § 1129(a)(9):  The Plan Provides for Payment in Full of Allowed Administrative Claims and Allowed Priority Claims**

70.     Section 1129(a)(9) of the Bankruptcy Code requires that entities holding allowed claims entitled to priority under section 507(a)(1) -- (8) receive specified treatment under a plan. Here, the Plan provides the treatment required by section 1129(a)(9) for each of the various claims specified in section 507(a)(1) -- (8).

71.     In accordance with sections 1129(a)(9)(A) and (B) of the Bankruptcy Code, Article III of the Plan provides that all Allowed Administrative Claims under section 503(b) of the Bankruptcy Code, including Allowed Administrative Claims relating to ordinary course of business transactions, unless the Holder of such Claim agrees to less favorable treatment, will be paid in full in Cash on the later of (i) the Effective Date or, if such Claim is Allowed after the Effective Date, as soon as reasonably practicable after the date upon which such Claim becomes an Allowed Administrative Claim, (ii) upon such terms of any agreement governing or documents evidencing such Administrative Claim, or (iii) as may be agreed upon between the Holder of such Allowed Administrative Claim and the Debtor or the Plan Administrator.

72.     In accordance with sections 1129(a)(9)(A) and (B) of the Bankruptcy Code, Article III of the Plan provides that all Allowed Priority Tax Claims, unless the Holder of such Claim agrees to less favorable treatment, will be paid in full in Cash on the later of (i) the Effective Date or, if such Claim is Allowed after the Effective Date, as soon as reasonably practicable after the date upon which such Claim becomes an Allowed Priority Tax Claim, (ii) upon such terms of any agreement governing or documents evidencing such Priority Tax Claim, or (iii) as may be agreed upon between the Holder of such Allowed Priority Tax Claim and the Debtor or the Plan Administrator.

73. Allowed Administrative Claims relating to compensation of professionals retained by the Debtor unless otherwise agreed by the claimant, will be paid in full, in Cash, on, or as soon as reasonably practicable after (i) the Effective Date, if such Administrative Claim on account of Professional Fees is an Allowed Administrative Claim as of the Effective Date, or (ii) the date on which such Administrative Claim for Professional Fees becomes an Allowed Administrative Claim. Thus, the Debtor submits that Article III of the Plan satisfies the requirements of sections 1129(a)(9)(A) and (B) of the Bankruptcy Code.

**J.      11 U.S.C. § 1129(a)(10):      At Least One Class of Impaired Claims Has Accepted the Plan**

74. Section 1129(a)(10) of the Bankruptcy Code requires the affirmative acceptance of the Plan by at least one class of impaired claims, " . . . determined without including any acceptance of the plan by any insider."  11 U.S.C. § 1129(a)(10); *see also In re Martin*, 66 B.R. 921, 924 (Bankr. D. Mont. 1986) (holding that where three classes of impaired claims accepted the plan, exclusive of insiders, requirements of 11 U.S.C. § 1129(a)(10) are satisfied); *see also In re Drexel Burnham Lambert Group*, 138 B.R. at 771 (holding that the plan satisfied section 1129(a)(10) of the Bankruptcy Code where at least one class of claims, exclusive of insiders, had accepted the plan).  As demonstrated below, the Plan satisfies this requirement.

75. As discussed above, the Plan impairs the members of Class 3 (Allowed General Unsecured Claims) and Class 4 (Allowed Interests), however, only Holders of General Unsecured Claims in Class 3 were entitled to vote to accept or reject the Plan.  The members of Class 3 received ballots that enabled eligible voters to vote on the Plan.  The voting results demonstrate that, despite their impairment under the Plan, Class 3 has voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code.  Class 3, therefore, qualifies as an

Impaired accepting Class and satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

### K. 11 U.S.C. § 1129(a)(11): The Plan is Not Likely to Be Followed by Liquidation or the Need for Further Financial Reorganization

76. Section 1129(a)(11) of the Bankruptcy Code requires that, as a condition precedent to Confirmation, the Court determine that the Plan is feasible, meaning:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

11 U.S.C. § 1129(a)(11). As described below, and as will be demonstrated at the Confirmation Hearing, the Plan is feasible within the meaning of this provision. The feasibility test set forth in section 1129(a)(11) of the Bankruptcy Code requires the Court to determine whether the Plan is workable and has a reasonable likelihood of success. *See In re River End Apartments, Ltd.*, 167 B.R. 470, 476 (Bankr. S.D. Ohio 1994) ("To establish feasibility under § 1129(a)(11), a proponent must demonstrate that its plan offers a reasonable prospect of success and is workable") (internal quotation marks and citation omitted). A plan of liquidation is feasible if it provides the means for liquidation. *See*, *e.g.*, *In re Cellular Information Sys.*, 171 B.R. 926, 945 (Bankr. S.D.N.Y. 1994) ("[T]he plain language of section 1129(a)(11) provides that a plan is feasible if it includes a means for liquidating a debtor's property)"; *In re Revco*, 131 B.R. 615, 622 (Bankr. N.D. Ohio 1990) (holding that "[s]ection 1129(a)(11) is satisfied as the plan provides that the property of [the] Debtors shall be liquidated").

77. The Second Circuit has stated that the "feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed." *Kane v. Johns-Manville Corp.*, 843 F.2d at 649; *see also In re One Times Square Assocs. Ltd. P'ship*, 159 B.R. 695, 709 (Bankr. S.D.N.Y. 1993) ("It is not necessary that the success be guaranteed, but only

that the plan present a workable scheme of reorganization and operation from which there may be a reasonable expectation of success") (internal quotation marks and citation omitted).

78.     Here, the Debtor has already substantially liquidated all of the Assets.  Thus, no further financial restructuring of the Debtor will be necessary.  Since the Plan provides for the liquidation of the Debtor, the Court will find the Plan feasible if it determines that the Debtor will be able to satisfy the conditions precedent to the Effective Date and otherwise have sufficient Cash to meet its post-Confirmation Date obligations to pay for the costs of administering and fully consummating the Plan and closing the Chapter 11 Case.  The Debtor submits that adequate source of Cash exist to implement the Plan, fund the wind-down of the Debtor, and make all distributions contemplated by the Plan.  *See* Augustine Declaration, ¶ 23; *see also* Exhibits B and C to the Disclosure Statement.

79.     Thus, because the Plan is workable, has a reasonable likelihood of success and provides for the liquidation of the Debtor, the feasibility requirement of section 1129(a)(11) of the Bankruptcy Code is satisfied.

**L.     11 U.S.C. § 1129(a)(12):  All Statutory Fees Have Been or Will be Paid**

80.     Section 1129(a)(12) of the Bankruptcy Code requires the payment of "[a]ll fees payable under section 1930 [title 28, the United States Code], as determined by the court at the hearing on confirmation of the plan. . . ."  11 U.S.C. § 1129(a)(12).  Section 507 of the Bankruptcy Code provides that "any fees and charges assessed against the estate under [section 1930,] chapter 123 of title 28" are afforded priority as administrative expenses. 11 U.S.C. § 507(a)(2).  In accordance with sections 507 and 1129(a)(12) of the Bankruptcy Code, section 11.4 of the Plan provides that all such fees and charges payable have been or will be paid in Cash on the Effective Date and thereafter as may be required until the entry of a final

decree and order closing the Chapter 11 Case.   Thus, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

### M.   11 U.S.C. §§ 1129(a)(13), (a)(14), (a)(15) and (a)(16) Are Inapplicable

81.   Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for retiree benefits at levels established pursuant to section 1114 of the Bankruptcy Code.   *See* 11 U.S.C. § 1129(a)(13).   The Debtor is not obligated now, nor will it become obligated in the future, to pay retiree benefits as described in section 1129(a)(13) of the Bankruptcy Code.   Accordingly, section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Plan.   Likewise, section 1129(a)(14) of the Bankruptcy Code is inapplicable because the Debtor is not required by a judicial or administrative order, or by statute, to pay a domestic support obligation.   Moreover, section 1129(a)(15) of the Bankruptcy Code is inapplicable because the Debtor is not an individual.   Finally, since the Debtor is commercial corporation, section 1129(a)(16) of the Bankruptcy Code is inapplicable to the Plan.

### III. THE PLAN SATISFIES THE "CRAM DOWN" REQUIREMENTS WITH RESPECT CLASS 4 INTEREST HOLDERS BECAUSE THE PLAN DOES NOT DISCRIMINATE UNFAIRLY AND IS FAIR AND EQUITABLE

82.   Section 1129(b) of the Bankruptcy Code provides a mechanism for confirmation of a plan in circumstances where the plan is not accepted by all impaired classes of claims and equity security interests.   This mechanism is commonly referred to as "cram down."   Section 1129(b) of the Bankruptcy Code provides in pertinent part:

> Notwithstanding section 510(a) of [the Bankruptcy Code], if all of the applicable requirements of [section 1129(a) of the Bankruptcy Code] other than [the requirement contained in section 1129(a)(8) that a plan must be accepted by all impaired classes] are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph *if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.*

11 U.S.C. § 1129(b)(1) (emphasis added).

83.     Thus, under section 1129(b) of the Bankruptcy Code, a bankruptcy court may "cram down" a plan over the deemed rejection by impaired classes of claims or equity security interests that receive no distribution under the plan as long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to such classes.

### A.     The Plan Does Not Discriminate Unfairly

84.     Section 1129(b)(1) of the Bankruptcy Code does not prohibit discrimination between classes; it prohibits only discrimination that is unfair.  *See In re 11,111, Inc.*, 117 B.R. 471, 478 (Bankr. D. Minn. 1990).  The weight of judicial authority holds that a plan unfairly discriminates in violation of section 1129(b) of the Bankruptcy Code only if similar classes are treated differently without a reasonable basis for the disparate treatment.  *See In re Buttonwood Partners, Ltd.*, 111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990); *see also In re Johns-Manville Corp.*, 68 B.R. at 618.  Accordingly, as between two classes of claims or two classes of equity security interests, there is no unfair discrimination if (i) the classes are compromised of dissimilar claims or equity security interests, or (ii) taking into account the particular facts and circumstances of the case, there is a reasonable basis for the disparate treatment.  *See*, *e.g.*, *In re Johns-Manville Corp.*, 68 B.R. at 636 (approving classes comprised of dissimilar claims and interests); *In re Buttonwood Partners, Ltd.*, 111 B.R. at 63 (approving providing disparate treatment where there is a reasonable basis).

85.     Class 4 consists of Allowed Interests in the Debtor.  Because the value of the Assets is less then the total value of its debts and liabilities, it is not anticipated that the Holders of Allowed Interests in Class 4 will receive any distributions on account of Allowed Interests.  However, this is not unfair discrimination.  There are no classes of similarly situated equity security interests that are receiving distributions under the Plan. *See In re Johns-Manville Corp.*,

68 B.R. at 636 (holding that because equity security interests are unlike legal interests of claims holders, they may be accorded different treatment).

86.     Under the foregoing standards, the Plan does not discriminate -- let alone "unfairly" -- with respect to Class 4, which is deemed to have rejected the Plan, because the Classes under the Plan are compromised of dissimilar Claims and Interests.

## B.     The Plan is Fair and Equitable

87.     Section 1129(b) of the Bankruptcy Code defines the phrase "fair and equitable" as follows:

(C)     With respect to a class of interests --

(i)     the plan provides that each holder of an interest  of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or

(ii)     the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

11 U.S.C. § 1129(b)(2)(C).  In the instant case, the "fair and equitable" rule is satisfied as to the Holders of Allowed Interests in Class 4.

88.     In addition to the requirements enumerated in section 1129 of the Bankruptcy Code, cases have interpreted the phrase "fair and equitable" standard to include the requirement that no class senior to the dissenting class receive more than a 100% recovery on its allowed claims.  *See United Sav. Assoc. of Texas v. Timbers of Inwood Forest Assoc. Ltd. (In re Timbers of Inwood Forest Sav. Assocs. Ltd.)*, 793 F.2d 1380, 1410 (5th Cir. 1986), *aff'd on reh'g*, 808 F.2d 363 (5th Cir. 1987), *aff'd*, 484 U.S. 365 (1988); *see also In re MCorp. Fin. Inc.*, 137 B.R. 219, 235 (Bankr. S.D. Tex. 1992).

89. The "fair and equitable" rule is satisfied to each Holder of an Allowed Interest in Class 4. Under the Plan, the Holders of Allowed Class 3 General Unsecured Claims will not be paid in full. Allowed Interests in Class 4 are afforded the lowest priorities in distribution from the USEY Estate and will receive no distribution under the Plan. There are no Interest Holders junior to Class 4. Consequently, there is no more junior class to Class 4 that will receive or retain any property under the Plan. Accordingly, the Plan satisfies the absolute priority rule of sections 1129(b)(2)(C) of the Bankruptcy Code with respect to Holders of Allowed Class 4 Interest, and is "fair and equitable" in all respects.

## IV. CONCLUSION

90. For the foregoing reasons, the Plan complies with and satisfies all applicable requirements of section 1129 of the Bankruptcy Code, and thus, should be confirmed.

Dated: New York, New York
September 29, 2010

Respectfully submitted,

HUNTON & WILLIAMS LLP

*/s/ Scott H. Bernstein*
Peter S. Partee, Sr.
Scott H. Bernstein
Robert A. Rich
200 Park Avenue, 53rd Floor
New York, New York 10166-0136
(212) 309-1000

*Attorneys for Debtors and Debtors-in-Possession*

67544.000015 EMF_US 32505333v4